April 20, 2020

The Honorable Judge Donna Ryu
U.S. District Court for the Northern District of California
Oakland Courthouse, Courtroom 4 – 3rd Floor
1301 Clay Street, Oakland, CA 94612

Re:     *Uniloc U.S.A., Inc, et al. v. Apple Inc., Case No. 5:18-cv-00358-WHA (N.D. Cal.)*

JOINT DISCOVERY LETTER BRIEF

Your Honor:

Defendant, Apple Inc. ("Apple"), and Plaintiffs, Uniloc U.S.A., Inc. and Uniloc Luxembourg, S.A. (collectively, "Uniloc"), submit this joint letter in compliance with the Court's Order Re: Discovery Procedures. (Dkt. No. 138.) The parties have conferred by telephone regarding all issues in this letter. There are no case management deadlines, such as discovery cutoffs, motion deadlines, claim construction deadlines, or pretrial or trial dates.

**Background**

Apple's Position: The discovery at issue relates to an issue of Article III standing that Apple raised in related cases between the parties. *See* Case Nos. 3:18-cv-00360-WHA, -363, -365, and -572. In those cases, Apple filed a motion to dismiss for lack of subject-matter jurisdiction. (-360 Dkt. No. 135.) Apple argued that Uniloc had defaulted on the terms of a Revenue Sharing Agreement ("RSA") with its lender, Fortress Investment Group ("Fortress"). (*Id.* at 1, 3–5, 11–14.) Apple further argued that this default gave Fortress an unfettered right to sublicense Uniloc's patents. (*Id.*) As a result, Apple argued, Uniloc lacked the right to exclude Apple and thus lacked Article III standing. (*Id.*)

Judge Alsup initially denied Apple's motion, finding that Uniloc had "cured" its default. (-360 Dkt. No. 158 at 6.) After Apple moved for reconsideration, Judge Alsup permitted discovery from "plaintiffs and Fortress on the issues of default and cure and those parties' understandings of the agreement, including its drafting history." (-360 Dkt. No. 204 at 2.) This discovery in the related cases has not yet occurred because the cases are stayed pending *inter partes* review proceedings.

While the parties litigated the jurisdictional issue in the related cases, this case was on appeal to the Federal Circuit following Judge Alsup's judgment holding the patent-in-suit invalid. The Federal Circuit determined that Judge Alsup's orders in the related cases left open the question of subject-matter jurisdiction in this case and remanded for the purpose of resolving it. (Dkt. No. 118 at 8.) On remand, Judge Alsup permitted Apple to take written discovery on (1) "[d]rafts of Uniloc's agreement with Fortress . . ." and (2) "[t]he circumstances, communications, and actions regarding Uniloc's default and purported cure . . . ." (Dkt. No. 133 at 2–3.)

Uniloc's Position: This action was remanded by the Federal Circuit "for the purpose of supplementing the record with the documents pertaining to" jurisdictional issues Apple had raised during the appeal and "resolving the presented jurisdictional issues in the first instance." Dkt.

Hon. Donna M. Ryu                              - 2 -                              April 20, 2020

No.118 at 8. Judge Alsup then issued an Order Granting Written Discovery, Dkt. No. 133; Apple served requests for production; and Uniloc served a written response, and produced documents. See Ex. A. A dispute has arisen as to the production, which Judge Alsup referred to Your Honor.

## Issue 1: Draft Agreements and Related Communications (Request Nos. 57 – 59)

Apple's Position: Uniloc should be compelled to produce (1) all drafts of the agreements between Uniloc and Fortress and (2) all communications about those drafts. (Ex. A, Request Nos. 57–59). Uniloc put these drafts and communications at issue by arguing that neither Uniloc nor Fortress viewed Uniloc's contractually-mandated revenue targets as significant, despite contractual language defining the failure to meet those targets as a default. And Judge Alsup made clear that "the contracting parties' understanding of their obligations under the agreement is relevant." (Dkt. No. 133 at 2.) Yet Uniloc did not produce a single communication and produced only an incomplete set of drafts. Further still, Uniloc appears to be withholding documents on a nebulous claim of privilege that it has not properly asserted and never tried to substantiate.

As to drafts, the handful of drafts that Uniloc did produce suggest there are many drafts it did not. For the Revenue Sharing Agreement ("RSA")—which specifies the conditions for default and cure—Uniloc produced only drafts numbered 6, 8, 9, 11 and an unnumbered version. For the Third Amendment to the RSA, which Uniloc claims cured its default, Uniloc produced drafts numbered 11, 13, 14, and an unnumbered version. Uniloc represents that it has produced all drafts exchanged between Uniloc and Fortress, but it concedes that it withheld drafts created by Uniloc that were not sent to Fortress. Uniloc claims these drafts are not relevant to interpret the agreements. But that is not why these drafts are relevant. Rather, all drafts—including those drafts internal to one party or the other—are relevant to test Uniloc's arguments about the significance that each party placed on the terms within them. *See Chevron U.S.A. Inc. v. El-Khoury*, 285 F.3d 1159, 1165 (9th Cir. 2002).

As to communications about the drafts, Uniloc produced none. Apple's requests sought communications exchanged between Uniloc and Fortress, as well as those exchanged internally at Uniloc, that attach or discuss the drafts. These communications are relevant for the same reason as the drafts themselves: their substance would reflect the parties' understanding of their agreements. (Dkt. No. 133 at 2); *cf. Barnes & Noble, Inc. v. LSI Corp.*, No. C 11-02709 EMC LB, 2012 WL 6697660, at *4 (N.D. Cal. Dec. 23, 2012) (ordering patentee to produce both "draft licenses" and "licensing communications" related to those drafts because each was relevant to damages). These communications are also relevant to understanding whether all drafts have been produced, when they were created or exchanged, who made which changes, and why they made them.

Moreover, Uniloc has apparently refused to search for documents exchanged within Uniloc, or between Uniloc and its transaction counsel, based on an oral claim of attorney-client privilege. Based on the few drafts Uniloc has produced to date, Apple believes that at least some of Uniloc's withheld documents do not reflect legal advice, but rather business discussions related to the negotiation of specific revenue targets. Despite Apple's repeated requests, however, Uniloc never substantiated its privilege claim with a log. Its claim should be deemed waived. *First*, Uniloc failed to properly assert privilege. Uniloc never asserted a specific claim in writing, obscuring which documents Uniloc has withheld or refused to search for, and on what basis. Uniloc asserted only a general objection to "producing documents subject to attorney-client privilege" (*id.* at 2), which is not sufficient to assert privilege. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of*

Hon. Donna M. Ryu                                         - 3 -                                         April 20, 2020

*Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). **Second**, Uniloc waived privilege because it failed to provide a log. Uniloc did not even tell Apple that it had withheld or refused to search for documents on privilege grounds until after discovery closed. Even now—nearly two months after its production deadline—Uniloc has still refused to provide a log. Uniloc is in violation of this Court's order regarding privilege claims, which makes clear that failure to provide a log "may be deemed a waiver of the privilege." (Dkt. No. 138 at 4, 5.) **Third**, Uniloc has not provided even the most basic information necessary to substantiate a privilege claim. Uniloc never disclosed how many documents it withheld, what types of documents those are, who sent or received them or when, etc. Uniloc's failure to substantiate its privilege claim is tantamount to asserting no claim at all.[1]

Uniloc should be compelled to produce all drafts of the Fortress agreements, and all communications (both external and internal) regarding those drafts. Uniloc's improper and belated privilege claim should also be deemed waived. In the alternative, and as a compromise only, Uniloc should be compelled to make the same production, subject to a claim of privilege for which it will provide a privilege log identifying each draft and communication withheld.

Uniloc's Position: Judge Alsup permitted written discovery of "drafts of the Fortress agreement," referring to a revenue sharing agreement between Uniloc and Fortress. Uniloc asked the law firm that represented it in that transaction to produce all drafts of that agreement that were exchanged between the parties, whether they originated with Uniloc or Fortress, and it did so. All such drafts were produced. For good measure, although not ordered to do so, Uniloc also produced all exchanged drafts of certain other agreements related to the revenue sharing agreement. Uniloc has not claimed privilege with respect to any of those drafts.

Uniloc did not "withhold" any drafts, as Apple states, nor would it have. When Apple later pointed out that there were gaps in the version numbers, Uniloc explained that attorneys for a party to a contract may prepare an initial draft but then revise that draft, perhaps several times, before it is ready to be sent to the attorneys for the other party. Uniloc questioned the relevance of drafts that were never exchanged, as those drafts could never be used to interpret the contract.

As to "communications" about the drafts, Judge Alsup's limited order did not grant discovery beyond the drafts themselves. Nevertheless, Uniloc, as a compromise, offered to produce communications between Uniloc and Fortress that discuss the language of the portions of the revenue sharing agreement on which Apple has relied.

Apple's lengthy discussion above with respect to privilege puzzles, as Uniloc has not claimed privilege with respect to, nor withheld production of, any drafts on grounds of privilege, or withheld on privilege grounds any communications between Uniloc or its attorneys, on the one hand, and Fortress and its attorneys, on the other. Apple's statement that Uniloc "withheld drafts and communications on based on an oral claim of attorney-client privilege" is wrong. In discussions as to the extent of Uniloc's document review for production, Apple was told Uniloc has not reviewed communications solely between Uniloc and its outside legal counsel, as those would obviously be privileged. Apple gives no reason now, nor did it then, as to why it would be entitled to inspect

---

[1] Apple agrees with Uniloc that no privilege log is required for *post-complaint* communications with *litigation* counsel. But this is irrelevant here—the only potentially-privileged matter at issue is *pre-complaint* communications with *transaction* counsel, which Uniloc is required to log.

Hon. Donna M. Ryu                              - 4 -                              April 20, 2020

those obviously privileged communications. Nor does Apple attempt to justify a demand that Uniloc prepare a privilege log[2] for communications solely between Uniloc and its outside legal counsel. Apple itself, in other actions between the parties, has never produced a privilege log of communications solely with outside counsel.

## Issue 2: Performance, Default, and Cure (Request Nos. 55 and 56)

Apple's Position: As stated in Judge Alsup's Order, a key question for standing is "[w]hether or not Uniloc defaulted and cured its obligations to Fortress." (Dkt. No. 133 at 2.) Apple served requests directed to this question, including requests for all documents "related to Uniloc's compliance with and performance under any revenue target" required by the Fortress agreements. (Ex. A, Request No. 56). Uniloc agreed to produce such documents, but then produced none.

Uniloc claims it has no responsive materials because it has no documents that use the words "default," "cure," or "waiver." Uniloc's view of relevance is improperly narrow and excludes at least three categories of relevant documents. **First**, Uniloc should produce all communications exchanged between the parties regarding their understanding of the meaning and effect of the Third Amendment to the RSA. Fortress employee James Palmer asserted in a November 2019 declaration that it was Uniloc's and Fortress's intent in May 2017 for the Third Amendment to the RSA to "wip[e] the slate clean." (-360 Dkt. No. 141-1 ¶ 12.) To date, however, Uniloc has not produced a single contemporaneous document that could corroborate or refute Mr. Palmer's declaration. Even if these communications did not use the words "cure," "waiver," or "default," they would still be relevant—perhaps even more so. Evidence that the parties discussed other changes they intended to make, while saying nothing about "cure" or "waiver," would undermine Mr. Palmer's declaration that the parties intended to effect a waiver or cure. **Second**, Uniloc should produce all communications with Fortress regarding Uniloc's financial performance. These communications are not only relevant to show default, but also relevant to show Fortress's knowledge of, and response to, that default. Uniloc's sole defense is to claim that no such communications exist because Uniloc did not give any formal notices or reports to Fortress. But Mr. Palmer stated in his declaration that Uniloc "faithfully" provided "regular updates to Fortress" and consulted with Fortress as to Uniloc's activities. *Id.* ¶ 8. Documents reflecting these updates and consultations should be produced, even if, as Uniloc claims, they are not formal "notices" or "reports." **Third**, Uniloc should produce records and communications regarding the transfer of money between Fortress and Uniloc in connection with Uniloc's monetization efforts. Uniloc has already confirmed that such transfers occurred. And while Uniloc has produced annual reports reflecting the revenue of one Uniloc entity, it has not produced records and communications to show who at Fortress knew of Uniloc's revenue shortfalls, when they knew it, and how they responded to it.

Thus, Uniloc must be compelled to produce all documents and communications related to its performance under the RSA (including but not limited to any defaults caused by a revenue shortfall) as well as its purported "cure" of executing the Third Amendment to the RSA.

---

[2] Apple miscites *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). That case rejected a per se waiver rule as to a failure to provide a privilege log within 30 days in favor of a case-by-case approach, using a "holistic reasonableness analysis."

Hon. Donna M. Ryu                                  - 5 -                                  April 20, 2020

Uniloc's Position:

Apple's statement misleads. Uniloc does not claim it has no documents related to its performance under its agreement with Fortress. In related litigation between the parties, Uniloc made extensive production of documents related to its performance under the Fortress agreement, following which Apple deposed witnesses for both Uniloc and Fortress. But none of those documents used the words "default," "cure," or "waiver." In depositions, the Fortress and Uniloc witnesses explained to Apple neither had perceived any default, and thus there was nothing to be waived or cured.

Apple misrepresents the Palmer declaration as saying the "parties intended to effect a waiver or cure." Here is what Palmer actually said:

> In the weeks following March 31, 2017, Uniloc and Fortress finalized the May 15, 2017 Agreement, with Fortress completely aware of the Actual Monetization Revenues numbers. To the extent Apple argues the shortfall created an "Event of Default" before May 15, 2017, even though Fortress did not view it that way, there is no dispute Fortress's signature to the May 15 Agreement establishes Uniloc had cured that ostensible "Event of Default" to Fortress's satisfaction. And, to the extent there had been minimum monetization revenue requirements for the period prior to May 15, 2017, Fortress viewed the May 15, 2017 Agreement as wiping the slate clean

He reiterated Fortress did not view Uniloc as having defaulted, and so there was thus no need to "cure" anything. The "wiping the slate clean" language was with reference to *Apple's* current argument, with which he did not agree, that a shortfall created an "event of default."

But regardless of whether there was a default, the issue now is whether there are any documents to be produced, and there are none. Apple is praying someone from Uniloc or Fortress was contemporaneously discussing "default," "waiver," or "cure," but no one was. There are no documents discussing "wiping the slate clean." For that reason, there are no documents regarding either Uniloc's or Fortress's understanding of the meaning and effect of the relevant language in the Third Amendment to the revenue sharing agreement.

Apple's statement that Uniloc did not produce a single document reflecting "regular updates to Fortress" misleads. Uniloc informed Apple, in an email of March 24:

> The Uniloc entities did not prepare and send formal monetization reports each month because this information was always in the possession of Fortress on an ongoing basis via their control of the bank account for monetization proceeds and their control of the computations regarding the application of proceeds to the loan and their control and active effort required to initiate wire transfers from that account back to Uniloc USA after the receipt of monetization proceeds into that account. Otherwise, there were no notices, reports, or requests under Sections 6.5 or 6.6 of the RSA.

Apple has already received, in the related litigation, complete information about monetization proceeds. As the above makes clear, no one disputes Fortress's contemporary knowledge of monetization proceeds.

Hon. Donna M. Ryu                                    - 6 -                                    April 20, 2020

Respectfully submitted,


/s/ James J. Foster                          /s/ Michael T. Pieja
James J. Foster                              Michael T. Pieja (CA Bar No. 250351)
Aaron S. Jacobs                              Alan E. Littmann (*pro hac vice*)
PRINCE LOBEL TYE LLP                         Jennifer Greenblatt (*pro hac vice*)
One International Place, Suite 3700           Doug Winnard (CA Bar No. 275420)
Boston, MA 02110                             Andrew J. Rima (*pro hac vice*)
Tel: (617) 456-8000                          Emma C. Ross (*pro hac vice*)
jfoster@princelobel.com                      Lauren Abendshien (*pro hac vice*)
                                             GOLDMAN ISMAIL TOMASELLI
ajacobs@princelobel.com                      BRENNAN & BAUM LLP
                                             200 S. Wacker Dr., 22nd Floor
                                             Chicago, IL 60606
                                             Tel: (312) 681-6000
Counsel for Plaintiffs Uniloc USA, Inc.      Fax: (312) 881-5191
and Uniloc Luxembourg S.A.                   mpieja@goldmanismail.com
                                             alittmann@goldmanismail.com
                                             jgreenblatt@goldmanismail.com
                                             dwinnard@goldmanismail.com
                                             arima@goldmanismail.com
                                             eross@goldmanismail.com
                                             labendshien@goldmanismail.com

                                             Kenneth Baum (CA Bar No. 250719)
                                             GOLDMAN ISMAIL TOMASELLI
                                             BRENNAN & BAUM LLP
                                             429 Santa Monica Boulevard, Suite 710
                                             Santa Monica, CA 90401
                                             Tel: (310) 576-6900
                                             Fax: (310) 382-9974
                                             kbaum@goldmanismail.com

                                             *Counsel for Defendant Apple Inc.*

Hon. Donna M. Ryu                              - 7 -                              April 20, 2020

**<u>PROOF OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of **JOINT DISCOVERY LETTER BRIEF** has been served on April 20, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil L.R. 5-1(h)(1).


                                              */s/ Michael T. Pieja*
                                              Michael T. Pieja (CA Bar No. 250351)