July 2, 2020

The Honorable Judge Donna Ryu
U.S. District Court for the Northern District of California
Oakland Courthouse, Courtroom 4 – 3rd Floor
1301 Clay Street, Oakland, CA 94612

Re:   *Uniloc U.S.A., Inc, et al. v. Apple Inc.*, Case No. 5:18-cv-00358-WHA (N.D. Cal.)

JOINT DISCOVERY LETTER BRIEF

Your Honor:

Apple Inc. ("Apple"), and Uniloc USA, Inc. and Uniloc Luxembourg, S.A. (collectively, "Uniloc"), and Fortress Investment Group, LLC ("Fortress") submit this joint letter in compliance with the Court's Order of June 5. (-358 Dkt. No. 145.)

**Background**

Apple's Position: On June 5, this Court ordered Uniloc and Fortress to produce, by June 19, several categories of documents regarding the Revenue Sharing Agreement (RSA), such as: (1) "all documents and communications regarding Plaintiffs' compliance with any revenue target set forth in the RSA," (2) "all . . . communications internal to Plaintiffs or Fortress that discuss . . . Fortress's need for protection in order to give Plaintiffs additional financing, and (3) "all communications between Plaintiffs and Fortress discussing any of the RSA provisions identified by Apple." (*Id.*) As of June 19, Uniloc produced 17 pages, and Fortress produced none. On June 21, Fortress produced four pages from a larger document, and between June 24 and the morning of June 26, Uniloc produced 28 pages, some of which were duplicative.

These few documents support Apple's theory and shows that more documents should have been produced. One email explains the parties' view that Fortress's rights were "springing" and triggered "automatically" in the event of a default—just as Apple has argued. The single, partial document Fortress produced shows that it viewed the value of the collateral—Uniloc's patents—as the "downside protection" it needed, but Fortress redacted nearly the entirety of that document on "relevance grounds" even though it admits that it discusses that protection. And the drafts exchanged between the parties include revisions to the revenue requirement and Fortress's requirement that the loan be used solely to purchase collateral that Fortress could seize, such as in the event of a default, but Uniloc and Fortress have not produced a single communication about any of those revisions, either. The Court's Order has not been satisfied.

Uniloc's and Fortress's Position:

Uniloc and Fortress have provided the discovery this Court ordered. The quantity of documents turned out to be not large, for the reasons explained below. But to obtain more documents, Apple now raises "new arguments or disputes."

To review, Apple had asked Judge Alsup to dismiss the action on jurisdictional grounds, claiming the patent owner (Uniloc) did not have standing because at the time the action was filed a third-

party (Fortress) had a nonexclusive right to sublicense the patent. (There are legal problems with Apple's argument, see Dkt. No. 122, which Judge Alsup has yet to resolve.) In related cases, Apple had taken depositions of Uniloc and Fortress, and received a large quantity of documents, as to the factual issue of whether Fortress actually had a right to sublicense. As discussed below, that discovery failed to support Apple's position. The current discovery supplements an already substantial corpus of documents.

Apple had argued Uniloc's failure to meet certain monetization targets in the 2014 RSA constituted an event of default, and that default gave Fortress a right to sublicense. In depositions, Fortress denied it ever believed it had such a right, as did Uniloc. On the extensive record submitted, Judge Alsup denied Apple's motion to dismiss, stating "Even assuming that the above-mentioned occurrences did constitute events of default, this order finds that they were annulled under Section 7.3 of the Revenue Sharing Agreement." *Uniloc USA, Inc. et al v. Apple Inc.*, N.D. Cal. Case No. 3:18-cv-00360-WHA, slip op. at 1 (Jan. 19, 2019); see also -360 Case, Dkt. No. 205 (redacted version). That provision of the RSA provided an event of default would continue until Uniloc "shall have cured such Event of Default to [Fortress's] reasonable satisfaction." Judge Alsup found that Fortress's executing the third amendment to the RSA on May 15, 2017, despite knowledge of the discrepancy between the actual and the target revenues, indicated that Uniloc had cured the purported default to Fortress's reasonable satisfaction.

Apple moved for reconsideration, which Judge Alsup denied, with a caveat: "[D]iscovery will be allowed from plaintiffs and Fortress on the issues of default and cure and those parties' understandings of the agreement, including its drafting history. -360 Case, Dkt. No. 204 (Aug. 7, 2019). Judge Alsup subsequently allowed written discovery on drafts of the Fortress agreement. Dkt. No. 133. That discovery has now been completed. It turns out that none of the actual or proposed revisions to the drafts were relevant to Apple's argument.

Judge Alsup also allowed discovery as to the "circumstances, communications, and actions regarding Uniloc's default and purported cure." As it turns out, not a single document in either Uniloc's or Fortress's possession discusses the issue of compliance with the monetization revenue provisions, nor does any document discuss considering or taking any action in that respect. The reason for that, as witnesses have testified, was no one regarded Uniloc as in default. To the contrary, the communications between Uniloc and Fortress, which have been provided to Apple, richly document Fortress's satisfaction with the Uniloc relationship, and thoroughly support Judge Alsup's conclusion that Uniloc cured any "purported" default to Fortress's reasonable satisfaction.

**Issue No. 1: The Palmer Declaration**

Apple's Position: On June 5, this Court ordered that "Counsel for Plaintiffs/Fortress shall immediately investigate" the inconsistency between (1) Mr. Palmer's statement in his November 2018 declaration that Uniloc provided regular updates to Fortress, (-360 Dkt. 142-1 ¶ 8), and (2) Uniloc's contrary representation that no regular updates were provided, (Dkt. 139). (Dkt. 145 at 2.) On June 11, Uniloc's counsel confirmed that no such updates were ever provided.

While counsel's statement is consistent with Plaintiffs/Fortress not producing any updates, the inconsistency with Mr. Palmer's declaration remains, and remains unexplained. Uniloc represented that Mr. Palmer would "testify, if necessary" that he views his statement that regular updates were

provided as "consistent" with the fact that no notices, reports, or updates were provided because Fortress had access to Uniloc's bank account. But this Court already found these representations to be inconsistent: "Palmer says, 'Uniloc provided regular updates to Fortress.' He didn't say, Fortress had access to our bank accounts, and they knew what was going on." (Hearing Tr. 37:11–15.) Because Judge Alsup's order did not specifically permit a deposition of Mr. Palmer, Apple asks for leave to depose him after completion of the written discovery at issue here.

Fortress's Position:

Apple misstates the issue. What Palmer said in his declaration, -360 Dkt. No. 142-1, ¶ 8, was that paragraph 6.2 of the RSA required Uniloc "to provide regular updates to Fortress, . . . which Uniloc did faithfully." He did not characterize how those updates were provided. Neither Uniloc nor Fortress has ever claimed there were formal reports. To the contrary, Fortress has acknowledged being at all times aware of the actual monetization revenues, from having been provided the data on an ongoing basis via Fortress's control of the bank account for monetization proceeds and from its control of the computations regarding the application of those proceeds.

Whether Fortress received "formal" monetization reports, on top of reviewing and working with the same data on an ongoing basis, would seem irrelevant to any issue before the Court. But, in any event, there is no remaining discovery dispute. This Court ordered counsel for Uniloc to investigate the accuracy of Uniloc's statement that the Uniloc did not prepare and send "formal" monetization reports each month, and to communicate the results of the investigation to Apple. Counsel did the investigation, confirmed the statement was accurate, and so informed Apple. Apple's request for a deposition is new, and beyond the scope of Judge Alsup's order.

**Issue No. 2: Documents Regarding Compliance with Monetization Revenue Targets**

Apple's Position: The Court orderd Uniloc and Fortress to produce "all documents and communications regarding Plaintiffs' compliance with any revenue target set forth in the RSA." They produced none for the months before and after the critical March 31, 2017 date. Uniloc has argued that Fortress's knowledge of the state of Uniloc's compliance with the revenue targets cured any default. Thus, what Fortress knew of Uniloc's defaulting revenue situation at the relevant times, and when it knew it, bears directly on that argument, and communications with or within Fortress about Uniloc's revenue generation in that timeframe would be responsive. But no communications or documents have been produced. Given this, Apple proposed that Uniloc/Fortress stipulate that they will not produce or rely on any unproduced documents to support a "cure" argument based on what Fortress knew and when. Uniloc/Fortress declined. They should thus be required to produce such documents as exist.

Uniloc/Fortress's Position:

This is another new argument or dispute. This Court had ordered production of "all communications (unbounded by date) regarding [Uniloc's] failure to comply with monetization revenue targets for the time period March 2016 through May 2017, and communications regarding any actions either side took or considered in light of [Uniloc's] failure to comply with such targets." There were no such communications, for the reasons explained above in "Background." The Court did not order production about "revenue generation" generally.

**Issue No. 3: Form of Document Production**

Apple's Position: Uniloc and Fortress produced fragmented print-outs with portions or pages removed. They also identify numerous other documents that appear highly relevant, but which have not yet been produced. Uniloc and Fortress must fix and complete their productions.[1]

**Fortress's Documents**. Fortress produced one document: an email with an attached memorandum about Fortress's plan to invest in Uniloc in May 2017. But even this document is incomplete: counsel for Fortress removed an unspecified number of pages from it on the basis of "relevance." Nothing in the document itself indicates how many pages were removed, from where, in what context they appeared, or what they described. Within those removed pages, counsel states that some subset is privileged because it was prepared by a lawyer at Fortress. But the lawyer does not even appear as a sender or recipient of the document. And Fortress has not provided a privilege log or any basis to believe that the documents contain legal, not business, advice. Before the Court is burdened with a request for *in camera* review, Fortress should produce the document with clear indications as to what has been redacted and on what ground, and provide a basis for each redaction.

Furthermore, this Court ordered the production of all communications regarding "Fortress's need for protection in order to give Plaintiffs additional financing." (Dkt. 145 at 1–2.) Fortress's memo identifies Uniloc's patent portfolios ***themselves*** as that "[d]ownside protection." (-1024). And Fortress added provisions to the RSA (e.g., 6.14 and 6.15) to restrict Uniloc's use of funds for any purpose other than the purchase of capital, i.e., patents. Thus, any portions of the memo, as well as any other documents, describing the portfolios (collateral) that Fortress viewed as protection are relevant to support Apple's theory that the value of the collateral was key to Fortress's decision to provide financing and that Fortress—far from ignoring or disregarding the protections provided to it in the event of Uniloc's default—in fact carefully verified and relied on them.

Fortress's Response:

Fortress and Uniloc searched for documents within the scope of this Court's order, and produced all of them, unredacted, with one exception, discussed below.

As explained above in the Background section, because Fortress was satisfied with its investment in Uniloc, through May 2017 no one at Fortress had given any thought to the various default-related provisions of the 2014 RSA, and consequently no one was generating documents discussing remedies or steps to be taken in the event of default. Thus, to Apple's chagrin, for many of the categories this Court listed in his June 5 Order, no responsive documents could be found because none had been generated. Instead, the documents produced, by Fortress and Uniloc richly support Judge Alsup's finding that Fortress's agreement to the May 15, 2017 financing "cured the purported default . . . to Fortress's reasonable satisfaction."

---

[1] Apple identified several issues relating to the form and completeness of Uniloc's production, including redactions, truncations, and incomplete productions, as well as missing attachments and related communications. On the afternoon of July 2, Uniloc committed to supplement its production. Apple reserves its right to raise further concerns with this supplement.

For example, this Court ordered production of communications that discuss "Fortress's need for protection in order to give Plaintiffs additional financing." Fortress found no such communications and thus had nothing to produce. None of the financing agreements subsequent to the RSA provided additional protection. Nor did Fortress find any documents discussing the need for additional protection, or suggesting that the agreements be modified to provide additional protection.

This Court also ordered production of communications that discuss "the reasons [Uniloc] requested additional financing." Fortress and Uniloc produced to Apple various documents that discuss that issue, in detail. Uniloc produced a detailed Confidential Memorandum that had been prepared internally on this subject, as well as emails with Fortress discussing the subject. Fortress produced a confidential Fortress Investment Memorandum that discussed the reasons Uniloc gave for requesting additional financing.

Fortress did not produce the pages of that Memorandum that were outside of the scope this Court's order, including sections written by Fortress's in-house counsel giving legal advice with respect to various patent portfolios and potential litigation. (Apple's statement that Fortress did not provide a privilege log is not true. When the document was produced, Fortress identified it as privileged, identified the attorney who prepared it, and produced the email transmitting it to others at Fortress, which identified the recipients.) The non-produced portions of the document did not discuss "Fortress's need for protection in order to give Plaintiffs additional financing." Fortress will produce that document for in camera inspection, if the Court requests.

**Issue No. 4: Search for Communications About RSA Provisions Identified by Apple**

Apple's Position: Uniloc and Fortress produced no communications between or within themselves about the RSA provisions Apple identified, even though they produced drafts showing those provisions had been revised. For example, one draft revises the minimum monetization amounts that Uniloc must generate and the timeframe in which it must do so. (-352, -369.) Uniloc/Fortress stated that they searched solely by looking to see if the provision numbers appeared in a document. But this is too narrow: communications about the substance of those changes are responsive, even if they do not call out the specific paragraph numbers (which, in any case, changed during the drafting process). Uniloc/Fortress should be ordered to search for responsive communications based on the substance of the relevant provisions, not just by their numbering.

Uniloc's and Fortress's Position:

We are not sure what the issue is here. As to the RSA revisions, all of the drafts exchanged between the parties were produced, and there were no internal drafts within the scope of the June 5 order. It turned out that none of the actual or proposed revisions appeared to relate to Apple's arguments before Judge Alsup. Regardless, those involved in exchanging the drafts were asked to review their accompanying emails for any discussion of the provisions Apple listed, and no discussions were found. Apple's request that we now search for communications relating to the substance of communications not actually tied to the drafts themselves is a new argument or dispute.

Hon. Donna M. Ryu - 6 - July 2, 2020

Respectfully submitted,

/s/ James J. Foster
James J. Foster
Aaron S. Jacobs
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000
jfoster@princelobel.com

ajacobs@princelobel.com

Counsel for Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg S.A.

/s/ Doug Winnard
Michael T. Pieja (CA Bar No. 250351)
Alan E. Littmann (*pro hac vice*)
Jennifer Greenblatt (*pro hac vice*)
Doug Winnard (CA Bar No. 275420)
Andrew J. Rima (*pro hac vice*)
Emma C. Ross. (*pro hac vice*)
Lauren Abendshien (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP
200 S Wacker Dr., 22nd Floor
Chicago, IL 60606
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
jgreenblatt@goldmanismail.com
dwinnard@goldmanismail.com
arima@goldmanismail.com
eross@goldmanismail.com
labendshien@goldmanismail.com

Kenneth Baum (CA Bar No. 250719)
GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP
429 Santa Monica, CA 90401
Tel: (310) 576-6900
Fax: (310) 382-9974
kbaum@goldmanismail.com

*Counsel for Defendant Apple Inc.*

## PROOF OF SERVICE

The undersigned hereby certifies that a true and correct copy of **JOINT DISCOVERY LETTER BRIEF** has been served on July 2, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil L.R. 5-1(h)(1).

*/s/ Michael T. Pieja*
Michael T. Pieja (CA Bar No. 250351)