# EXHIBIT C

1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                                  - - -

4

       UNILOC USA, INC. and UNILOC    :   CIVIL ACTION
5      LUXEMBOURG, S.A.,              :
                                      :
6                       Plaintiffs,   :
                                      :
7           vs.                       :
                                      :
8      MOTOROLA MOBILITY, LLC,        :
                                      :
9                       Defendant.    :   NO. 17-1658 (CFC)

10

11                                   - - -

                                  Wilmington, Delaware
12                                Thursday, October 1, 2020
                                  4:00 o'clock, p.m.
13                                ***Telephone conference

14                                   - - -

15     BEFORE:   HONORABLE COLM F. CONNOLLY, U.S.D.C.J.

16                                   - - -

17     APPEARANCES:

18
                 O'KELLY ERNST & JOYCE, LLC
19               BY:  SEAN T. O'KELLY, ESQ.

20
                       -and-
21

22

23

24                                          Valerie J. Gunning
                                            Official Court Reporter
25

```
 1    APPEARANCES (Continued):

 2
                PRINCE LOBEL TYE LLP
 3              BY:  JAMES J. FOSTER, ESQ. and
                     AARON JACOBS, ESQ.
 4                    (Boston, Massachusetts)

 5
                     Counsel for Plaintiffs
 6

 7
                MORRIS, NICHOLS, ARSHT & TUNNELL LLP
 8              BY:  KAREN JACOBS, ESQ.

 9
                          -and-
10

11              QUARLES & BRADY LLP
                BY:  MARTHA JAHN SNYDER, ESQ.
12                    (Madison, Wisconsin)

13
                     Counsel for Defendant
14

15
                          -  -  -
16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2

3               (The following telephone conference was held in

4      chamber beginning at 4:00 p.m.)

5

6               THE COURT:  All right.  Good afternoon, counsel.

7      Can I have a roll call?  It is the defendant's motion, so I

8      will start with the defendant.

9               MS. JACOBS:  Good afternoon, Your Honor.  This

10     is Karen Jacobs from Morris Nichols for Motorola Mobility

11     and I have on the line with me Martha Snyder from Quarles &

12     Brady.

13              THE COURT:  All right.  Thank you.  And then for

14     the plaintiffs?

15              MR. O'KELLY:  Good afternoon, Your Honor.  This

16     is Sean O'Kelly from O'Kelly & Ernst for Uniloc.

17              With me on the phone is Jim Foster and Aaron

18     Jacobs, both from Prince Lobel Tye.

19              THE COURT:  All right.  Great.

20              All right.  Defendant, it's your motion.

21              MS. SNYDER:  Thank you, Your Honor.  This is

22     Martha Snyder from Quarles & Brady.

23              This is a motion -- our motion is a motion to

24     dismiss based on the named plaintiffs' lack of

25     constitutional standing.  Because of the time of the

complaint that was filed in November 2017, our position is
that plaintiff could not have suffered an injury in fact
from Motorola's alleged infringement.

We are in the submission today based on an issue
of Uniloc's own making.  Uniloc's Luxembourg Uniloc S.A. are
entities that are in the position of obtaining, enforcing
and licensing patents.  They are not a manufacturing company
that sometimes obtains and enforces a patent much to the
distraction of the core business.

Now, Uniloc entities are in the business of
patents, and they are one of the more prolific patent
enforcement shops.  So when Uniloc Lux entered into a
revenue sharing agreement in exchange for significant
investment from Fortress that included a provision allowing
Fortress to grant sublicenses at will once triggered by an
event of default, Uniloc Lux knew what it was doing.

When Uniloc USA express consent in the patent
license agreement with Fortress back in December 2014
acknowledging the relationship between the patent license
agreement and Uniloc USA's purported exclusive license from
Uniloc Lux, Uniloc USA also knew what it was doing.

Similarly, the events of default at play --
excuse me.  The events of default at play, events of default
at play here, each of which allowed Fortress to exercise its
own set of rights to grant sublicenses are not nuanced.

1              March 31st, 2017, Uniloc was required to hit a

2    revenue minimum.  They did not.  On June 30th, 2017, Uniloc

3    was required to hit a revenue minimum.  They did not.

4              At the time the revenue sharing agreement was

5    signed on December 30th, 2014, Uniloc represented that its

6    patents, which served as the whole collateral to the

7    agreement, were valid and enforceable and not subject to

8    challenges to that validity.  This representation was not

9    true.  It was not accurate, I should say.

10             When the parties amended the revenue sharing

11   agreement on May 15, 2017, Uniloc again represented that its

12   patents were valid and enforceable and not subject to

13   challenges to that validity.  That again was not accurate.

14   And these representations were material.

15             Uniloc's business model and thus its revenue is

16   based on enforcing licensing patents -- excuse me.

17   Enforcing and licensing patents.  Without valid patents, its

18   revenue stream dries up as do the recurrence of Fortress.

19             In that May 15, 2017 amendment, Uniloc also

20   represented that it had not provided licenses or covenants

21   to sue outside of those identified in list of existing

22   licenses.  This also is not accurate.  Based on public

23   records, we have been able to identify at least six parties

24   who entered into stipulations for dismissal with prejudice

25   with Uniloc Lux and Uniloc USA who were not identified in

1       the existing license.  Any bar to Fortress' right to

2       sublicense was lifted.  As an initial matter, there's

3       nothing in the patent license agreement that states that

4       Fortress' sublicensing rights turned off, so to speak, if

5       all of the triggers events of default happened properly

6       later here.  However, even if we give Uniloc the benefit of

7       the doubt that Fortress' sublicensing rights could be turned

8       on and off depending on when Uniloc was in default and when

9       it wasn't, Uniloc has not shown that it met the express

10      requirement of the revenue sharing agreement to "annul" the

11      events of default identified by Motorola.

12              Uniloc does not contend that any events of

13      default were waived in writing.  Uniloc does not contend

14      that a subsequent amendment included express terms secure

15      the effect of default.  At most, Uniloc submits a

16      declaration from a Fortress employee who did not profess to

17      have a firsthand contemporaneous knowledge of the facts and

18      who stands to benefit from Uniloc winning its argument, that

19      the act of Fortress continuing to invest in Uniloc indicates

20      that they didn't have a problem with Uniloc's conduct and/or

21      considered any these of secured.

22              First, whether Fortress had a problem with

23      Uniloc's performance is not the same inquiry as to whether

24      Uniloc committed a breach of the terms.  Fortress' decision

25      not to, for example, terminate the agreement because on the

1   whole, Uniloc performance was good enough is a business

2   decision and is not the same inquiry as to whether it

3   relinquished the right to grant a sublicense as of the time

4   the dispute was filed just as whether Fortress decided to

5   exercise its right to sublicense in an effort to protect its

6   collateral is not the same inquiry as to whether it had a

7   right to sublicense other parties, including Motorola.

8            Second, the May 15, 2017 amendment cannot

9   operate to secure Uniloc's events of default.  Under New

10  York law, secure is to (inaudible) those legal defects or to

11  correct legal errors.  To waive is to intentionally

12  relinquish known rights.

13           The subsequent investment cannot be said to have

14  corrected the legal defects of Uniloc's failure to meet its

15  revenue minimum on March 31st, 2017, or failing to disclose

16  that its patents were under attack as of the December 2014

17  agreement.  And the revenue sharing agreement at Section

18  9.4.2 expressly states that the parties' force of conduct

19  cannot operate the waiver.  Moreover, while Mr. Komer

20  professes that Fortress' views of the May 15, 2017 agreement

21  is wiping the slate clean, he does not address the fact that

22  Uniloc failed to meet the revenue minimum as of June 30,

23  2013.

24           At the time the case was filed, Fortress could

25  have granted a royalty-free sublicense to Motorola out from

1   under Uniloc.  Whether they would have is irrelevant here,

2   because the contractual rights establish that plaintiffs

3   could not have suffered injury in fact, which by the way is

4   their burden to prove.

5               While Uniloc put up its best effort to prevent

6   any defendant, Motorola included, from discovering that

7   Uniloc's standing suffered from these fatal flaws --

8               THE COURT:  You know what I want you to do?  I

9   want you to go through two things.

10              MS. SNYDER:  Yes.

11              THE COURT:  So let's just assume for argument's

12  sake, and I'm going to ask you to spell it out, but

13  basically you're alleging that they didn't act in good faith

14  in this litigation in terms of their discovery disclosures

15  about standing, right, because they basically had all of

16  this information made available to them or they knew they

17  had this information.  It was relevant to the issues based

18  on the Apple case and they basically hid it from you all.

19  Right?

20              Is that kind of a summary of your position?

21              MS. SNYDER:  That's -- that is, yes, that's

22  fair.

23              THE COURT:  Okay.  So, and I mean, feel free to,

24  you know, tell me I'm not right.  I'm just trying to kind of

25  cut, you know, to the nub here.

1          So the first question I have is:  So let's just

2   assume for argument's sake that I'm very troubled by the

3   fact that, you know, they're in front of Judge Alsop.  They

4   know this is the issue and they are not complying.  They are

5   not complying with discovery responses to produce what

6   clearly is relevant, and we know that they had it because of

7   the California case.

8          Why is that relevant as a legal matter?  And

9   tell me, you know -- well, just be very precise.  Tell me

10  why it's relevant for a legal matter in terms of the issues

11  before me.

12          MS. SNYDER:  So it's relevant as a legal matter

13  as to the question of whether the dismissal should be with

14  or without prejudice.  It's not relevant to the question of

15  constitutional standing.

16          That is a question that stands on its own.  It's

17  just a matter of their litigation conduct and how egregious

18  it is such that the Court, Your Honor, could exercise its

19  discretion in dismissing with prejudice in this case.

20          THE COURT:  Is it relevant to the Rule 25(c)

21  question?  All right.  Are you looking up Wright & Miller or

22  something right now?

23          MS. SNYDER:  Is it relevant?  I'm sorry.  I'm

24  pondering that.  Is it relevant to the 25(c) question?

25          THE COURT:  Well, let's step back.  What is the

1    standard for me deciding whether I should grant a motion

2    pursuant to 25(c)?

3                    MS. SNYDER:  So a motion to substitute is

4    whether or not there is a proper, I mean, there's a

5    discretionary component of it, but it's also a question of

6    whether or not they are the proper party.

7                    THE COURT:  So what am I supposed to consider in

8    the discretionary component?

9                    MS. SNYDER:  Whether or not it would be

10   efficient, whether it would be efficient and/or prejudicial

11   to defendants in that case and whether the substitution

12   would be futile.

13                   THE COURT:  So is their behavior relevant to

14   exercising discretion under 25(c)?

15                   MS. SNYDER:  It's relevant as to the ongoing

16   prejudice to Motorola.  The prejudice to Motorola has been

17   that we've -- I mean, they concealed discovery for months.

18   We had to take discovery of plaintiffs that they now say are

19   irrelevant.  They hid the fact that the plaintiff that they

20   claim is the actual relevant plaintiff was not responding to

21   discovery, was not subject to discovery, and so there has

22   been ongoing prejudice.

23                   THE COURT:  And is that relevant to the inquiry

24   under 25(c)?

25                   MS. SNYDER:  I mean, it's relevant -- I'm sorry.

1     Go ahead.

2                    THE COURT:  No.  You go ahead.

3                    MS. SNYDER:  I was going to say it's relevant

4     into the effect that they can't show good -- I mean, for one

5     thing, they can't show good cause for having waited this

6     long.  They knew as well in advance of the time that was set

7     by the Court to add additional parties that Uniloc 2017 was

8     held right from the patent.  They completely disregarded

9     that deadline and no ability to show good cause as to why

10    they would move at this late stage.

11                   THE COURT:  All right.  Anything else?

12                   MS. SNYDER:  And, Your Honor, just to be clear,

13    I mean, I understand that you're asking about the 25(c)

14    motion, but obviously, they, with respect to our argument

15    that they are, that plaintiffs are not, don't have

16    constitutional standing in the first instance, adding

17    Uniloc 2017 is not going to cure that at this stage,

18    and so I wanted to be clear that we're talking about that

19    as well.

20                   THE COURT:  Okay.  So if I agree with you that

21    there was no cure and I agree with you that Fortress had a

22    license, then is anybody, or was anybody able to sue for

23    patent infringement?  Did anybody have standing at the time

24    this suit was filed?

25                   MS. SNYDER:  At the time this suit was filed,

1    no, no one had standing, constitutional standing to sue for

2    patent infringement because the right for Fortress to

3    sublicense undermined, sufficiently undermined the

4    exclusionary right of Uniloc's Lux USA.

5            THE COURT:  Are you troubled by that fact?  I

6    mean, you are saying people can relinquish and I guess make

7    a nullity essentially by accident, a right to enforce a

8    patent?

9            MS. SNYDER:  So, Your Honor, I will be honest

10   and that was part of in my opening remark why I made the

11   distinction here that Uniloc is a patent enforcement entity.

12   If it were entirely an accident by an unsophisticated party,

13   would I be troubled?  Possibly.  This is not that case.  And

14   it's the law, and I know that the law, the Federal Circuit

15   cases have thus far primarily dealt with instances where

16   there has been a patent owner and a licensee and we're

17   looking at the exchange of rights between those two

18   entities, but with respect to whether we introduce the third

19   party, the third party absolutely undermines their claim to

20   an injury in fact.  And I understand why that could be

21   arguably concerning, but it is, it's the law in terms of

22   being able to establish a constitutional right to bring

23   enforcement actions.  They simply didn't have an in injury

24   in fact and maybe they didn't appreciate the consequences of

25   what they were doing, but they knew the actions that they

1   were taking.

2           There's still -- obviously, there's still a

3   benefit to being a patent owner.

4           THE COURT:  What's that?

5           MS. SNYDER:  A benefit to being a patent owner

6   is for a time period you can't enforce.

7           THE COURT:  Right.

8           MS. SNYDER:  Is that the question?

9           THE COURT:  Yes.

10          MS. SNYDER:  Okay.  So I mean there's a benefit

11  to being a patent owner being able -- you know, not being

12  sued by others.  There's a benefit to a patent owner for the

13  fact that you can cure that situation.  No, you can't cure

14  once you've actually filed suit, but you can dismiss if you

15  file suit, fix the contractual arrangement that you have

16  created and then refile, or before you file, you can make

17  sure that all of the rights are in line and then file.

18          THE COURT:  Okay.

19          MS. SNYDER:  As the patent owner, you have that,

20  that ability.  The patent owner has the ability to choose to

21  give up the rights it has, you know.  Elon Musk, he's a

22  patent owner.  He continues to get patents and moved the,

23  moved the innovation forward and then he gifts those patents

24  to the public domain.

25          The patent attorney is in charge of its own

1    rights and has the ability to contractually agree to

2    transfer or otherwise give out the bundle of six as it

3    pleases, but it will suffer the consequences of not doing

4    that judiciously and carefully.

5              THE COURT:  Okay.  And you've not requested

6    further discovery or depositions of a declarant from

7    Fortress or anything like that.  I take it you don't think

8    any more information is necessary for me to have to make

9    this decision.  Is that right?

10             MS. SNYDER:  I certainly believe that you can

11   make the decision on the papers.  I will ask that, you know,

12   similar to what is happening in the Northern District of

13   California, if you were inclined to credit Mr. Palmer's

14   testimony in ruling against Motorola, I would ask to be

15   given the opportunity to depose Mr. Palmer and take further

16   discovery.  For example, while I don't know the substance of

17   the deposition because it's under seal in that case, my

18   understanding is that Mr. Palmer was recently deposed, and

19   so at the very least, I would, of course, be interested in

20   what he had to say.

21             THE COURT:  But on that question, so wait.  Was

22   he deposed on that question?  I mean, Judge Alsop already

23   made the decision in that case.  Right?

24             MS. SNYDER:  So there's some nuance.  So there

25   are a number of cases, and as may be clear from our

1   briefing, these agreements get to Uniloc's entire patent

2   portfolio, not just the '134 patent that's at issue in this

3   case.

4              And so there have been a number of cases that

5   Uniloc has filed against Apple and many others out in

6   California.  The decision that you have seen that was

7   provided to the Court in conjunction with a motion to stay

8   was one of the decisions that Judge Alsop came to on this,

9   on this issue.

10             There was a subsequent motion for

11  reconsideration by Apple, and as a result of that, Judge

12  Alsop agreed to potentially hear the issue again at the

13  final pretrial and in term to allow continued discovery on

14  the issue of constitutional standing that case my

15  understanding is now stayed pending IPR.

16             There was another case that was up on appeal

17  already based on a different, a different issue, and on that

18  appeal to the Federal Circuit, the issue of standing was

19  raised as a, in the first instance in that case.  The

20  Federal Circuit determined that more discovery was needed on

21  that issue.  It wasn't going to decide the issue and so it

22  remanded back again to Judge Alsop for discovery on that

23  issue.  And that, my understanding is that is the discovery

24  that is ongoing right now.

25             THE COURT:  Did you all cite that case?  I don't

 1    recall that case in the papers.

 2              MS. SNYDER:  That was, that was much later.  I

 3    don't know the date offhand of the --

 4              THE COURT:  Do you have a cite?  Do you have a

 5    cite for that?

 6              MS. SNYDER:  Let me see if we can grab that

 7    for you.  Obviously, I am also happy to submit it to the

 8    Court.

 9              THE COURT:  All right.  Why don't we do that.

10    You can get me that later in the argument or you could send

11    it in by letter.

12              Is there anything else you want to bring to my

13    attention?

14              MS. SNYDER:  I'm just happy to answer any

15    further questions that you have.

16              THE COURT:  All right.  Let hear from plaintiff.

17              MR. FOSTER:  Thank you, Your Honor.  This is

18    James Foster arguing for Uniloc.

19              And unless the Court directs me otherwise, I

20    would like to begin by talking about the motion to dismiss

21    for lack of subject matter jurisdiction.

22              I think the most efficient thing to do and to

23    bring the issue to a head is point out that this motion was

24    briefed, completed briefing in January of 2019, and four

25    months later, the Federal Circuit in the Lone Star case

upended the law of jurisdiction and standing in patent
cases.

In the Lone Star case that has been submitted to
the Court, both sides submitted letter briefs on it, the
Federal Circuit pointed out that a 2014 decision of the
Supreme Court in Lexmark is inconsistent -- I'm sorry, the
Federal Circuit law or cases on standing and jurisdiction
are irreconcilable with the Lexmark case.

And the problem with the Federal Circuit case is
prior to that date, according to, I think it was Judge
McNally, was that the Federal Circuit decisions had
mistakenly treated as jurisdictional the question of whether
a party possesses all substantial rights.  That going
forward, that is not a jurisdictional question.  If that
issue comes up in a case, it will be resolved.  The Court
has jurisdiction to resolve that, including by adding
parties to the action.

As a result of the Lone Star case, the only
issue before the Court now on this motion to dismiss, the
only legal issue, is whether the legacy entities, which were
Uniloc Luxembourg and Uniloc USA, had constitutional
standing when they filed the suit and the issue of
constitutional standing is not unique to patent law.  The
way the Supreme Court has articulated it, the plaintiff must
show that it suffers an injury, which can be fairly traced

1    to the defendant, and is likely redressed by a federal

2    judgment, a fairly low bar.

3              In this particular case, and we pointed this out

4    in the letters to the Court, including the one we submitted

5    as document 86.  We quoted specific language directly from

6    the Lone Star case giving examples of what would satisfy the

7    constitutional standing check.

8              One example is if the plaintiff has the ability

9    to grant licenses or forgive infringement, or if the

10   plaintiff has the ability to collect royalties, that is

11   sufficient to meet a constitutional test.  And in our

12   submission at document 86, we pointed out that even Motorola

13   concedes that Uniloc had that right.

14             The most that Motorola is arguing in this case

15   as a factual matter and it's contested, Judge Alsop has

16   ruled the other way, is that a opponents had a nonexclusive

17   right to sublicense.  That is the only right at most that

18   the legacy plaintiff did not have in this patent, the only

19   right.  And under the precise language we have quoted from

20   the Lone Star case in document 86, that satisfies the

21   constitutional standing so the case can move forward.

22             If this Court were to agree with what I've just

23   said, then that is the end of the matter.  You do not have

24   to address the factual issues, but the Court did point out

25   and to my colleague that the factual issues were addressed

1   by Judge Alsop in California.  He accepted as true the

2   declaration submitted by Fortress and that there had been a

3   cure to Fortress' satisfaction of any defects or the thought

4   that that might have happened.

5           If this Court does not want to take Judge

6   Alsop's word for it, then there would still be a factual

7   question which would have to be resolved at some point

8   during the length of this case, but I don't think you need

9   to reach the factual issues because I think the Lone Star

10  case is dispositive.

11          If for any reason this Court does not want to

12  recognize Lone Star, and what I tell my younger colleagues

13  here is that what Lone Star means, when a case says that our

14  jurisdiction to date has been irreconcilable with a Supreme

15  Court decision, what that means is that every single

16  decision earlier than that date that was throughout

17  a case for jurisdictional reasons must be re-examined.

18  It's no longer authoritative on the issue.  It just upsets

19  things.

20          So if the Court does not want to accept

21  my reading of Lone Star, we did argue in the briefing,

22  which was submitted before Lone Star, that the prior case

23  law would support jurisdiction.  There are a number of

24  cases cited.  The only two I will mention in oral argument

25  is the Aspects case in which the Federal Circuit three times

1    in its opinion said that the plaintiff had given away

2    virtually unfettered right to sublicense to a third party,

3    yet the plaintiff still had standing to assert the patent.

4              The other case, which had been very important in

5    the law of standing, jurisdiction, was the Mann case.  There

6    was the case from the Federal Circuit, Morrow versus

7    Microsoft, I remember very well in my practice, which they

8    held the plaintiff -- it was a bankruptcy situation.  They

9    held the plaintiff didn't have standing, and the buzz in the

10   profession after that was, wait a minute.  If that's true,

11   you can push that argument and you can have a situation

12   where nobody has standing to a certain a patent.  That cant

13   be right.  And Your Honor had the same concern in questions

14   to my colleague.

15             So the profession kind of lost that, and then

16   the Mann case came down the pike.  And if you read the

17   language in Mann, and we quoted it liberally in our briefing

18   back in January.  The same situation, it's setting up a

19   default rule.  You start where one entity has what we call

20   Category 1 standing and that entity continues to have it

21   until it transfers it completely to a different entity, so

22   there's always an entity that has that standing.  Again, we

23   explained that in our briefing.  But I think given Lone

24   Star, the Court does not even have to get into that.

25             That's all I think I need to say with respect to

1   the motion to dismiss unless the Court has questions.

2                THE COURT:  Give me one second.  All right.  So

3   I'm trying to figure out this Lone Star argument you're

4   making.  So Lone Star is talking about statutory rights.

5   Correct?

6                MR. FOSTER:  Well, actually, Lone Star makes the

7   distinction between statutory and the constitutional and

8   then talks about both on the facts of that case.

9                THE COURT:  Right.  So I'm trying to figure out

10  the relevance of Lone Star here.  The argument here is that

11  you don't have constitutional standing.

12               MR. FOSTER:  Yes, that's true, and what Lone

13  Star does is give examples of what -- Lone Star does two

14  things of relevance, Your Honor.

15               First of all, it states that the question of

16  whether an entity has also central rights in the patent at

17  the --

18               THE COURT:  Okay.  Let me just ask you.  I

19  didn't think that was relevant.  I mean, I thought all

20  substantial rights, why is that relevant to the inquiry

21  before me?

22               MR. FOSTER:  Well, because the argument that

23  Motorola is making is based upon cases which dealt with a

24  question of whether the plaintiff suing had all substantial

25  rights.

```
 1                    THE COURT:  I didn't think they were doing that.
 2       I thought they were making their argument based on
 3       exclusionary rights.  Basically, whether it's an exclusive
 4       licensee.
 5                    MR. FOSTER:  Yes.  Okay.
 6                    THE COURT:  I thought that is different.  I
 7       thought substantial rights applied.  That language I thought
 8       was used in the context of whether there was an assignment
 9       of the patent.  Am I wrong?
10                    MR. FOSTER:  In the old cases, that frequently
11       comes up in assignment cases.  You're right.
12                    THE COURT:  Can you point me to a case where
13       it says I'm supposed to look to determine whether there
14       was an exclusive license, whether there was a transfer
15       of substantial rights, of substantially all of the
16       rights?
17                    MR. FOSTER:  Well, most of the Federal Circuit
18       cases before Lone Star, that was the issue being kicked
19       around.  The Mann case is one good example.
20                    THE COURT:  Wait, wait.  Well, hold on.  You are
21       telling me Mann.  I don't have Mann in front of me.  Let's
22       start with the ones that I do remember.  Rite-Hite, WiAV,
23       Textile Productions.  Do any of those cases discuss the
24       determination of an exclusive licensee based on an
25       assessment of whether there has been a transfer of
```

1    substantially all the rights of the patent?

2              MR. FOSTER:  Well, I'm not sure it's pronounced

3    WiAV.  The case, WiAV was the case where the plaintiff was a

4    Category 2, a Category 2 --

5              THE COURT:  Do me a favor.  Don't go to

6    Category 2.  Let's stick with, you know, who knows what

7    they're defining that as.  I think it is pretty clear.

8              I mean, let's start with the issue here.  Right.

9    You agree it has nothing to do with an assignment.  It has

10   to do with whether we've got an exclusive licensee.  Is that

11   correct?

12             MR. FOSTER:  No one is arguing in this case,

13   Your Honor, that --

14             THE COURT:  I meant exclusionary rights, whether

15   there are exclusionary rights.

16             MR. FOSTER:  So the question, if I understand

17   the argument as Motorola would phrase it given Lone Star

18   Silicon, is that they are claiming the plaintiff or Uniloc

19   does not have "exclusionary rights," which is language that

20   Lone Star uses in defining constitutional standing.

21             The problem with their position is that an

22   exclusionary right is not limited to the right to exclude,

23   but the Lone Star opinion gives other examples which they

24   fit under that umbrella, including the fact the plaintiffs

25   have a right themselves to a license.  Those are called

1    exclusionary rights under the language of Lone Star.  If the

2    plaintiffs themselves have the right to indulge

3    infringement, those are also exclusionary rights as the

4    Federal Circuit in Lone Star uses the term, or if the

5    plaintiff has the right to collect royalties, those are

6    exclusionary rights under the language of the Lone Star

7    case, which we cite in document 86.  We submitted it to the

8    Court.

9              I think some of the confusion arises from trying

10   to use the word exclusion narrowly to mean that they must

11   have the right in all situations to bar the defendant from

12   practicing the patent.  That is not the way Lone Star uses

13   the case, and in our briefing back in January, we cited at

14   least four Federal Circuit cases where the plaintiff was

15   held to have standing even though a nonexclusive license had

16   been issued to others, including the Aspects case where

17   three times the Federal Circuit said it was an unfettered

18   right that had been given to a third party to license the

19   patent.

20             And --

21             THE COURT:  Okay.

22             MR. FOSTER:  I don't know if I've adequately

23   addressed your questions to Lone Star.  If not, please,

24   follow up.

25             THE COURT:  All right.  Anything else?

1          MR. FOSTER:  Yes.  If Your Honor would like, I

2    would address the motion to add Uniloc 2017 as a party.

3          THE COURT:  Sure.

4          MR. SNYDER:  25(c), if you will.  As we said

5    in our papers, the entire patent portfolio has transferred

6    from a from the legacy plaintiffs to Uniloc 2017.  Since

7    that day, we have been methodically replacing in all the

8    cases, replacing the legacy plaintiffs with Uniloc 2017

9    as the plaintiff.  Sometimes we're successful in it.

10   Sometimes the Court simply adds rather than substitutes,

11   but no Court has denied that request and the Federal Circuit

12   has granted it as well.  So it's standard practice under

13   Rule 26(c).

14          In their response, Motorola's argument is, wait

15   a minute.  There's a standing problem here, and they point

16   to their motion to dismiss.  And our response to that is, if

17   there is a standing issue to be discussed, Uniloc 2017 could

18   certainly be added to the case so they would have a voice in

19   arguing the motion to dismiss.

20          THE COURT:  Okay.

21          MR. FOSTER:  That's all I have, Your Honor.

22          THE COURT:  How do you cure a default by not

23   doing anything?

24          MR. FOSTER:  Well, are we talking now about

25   that -- well, the way the contractual language reads, it

1    says it has to be cured to Fortress' satisfaction.

2                THE COURT:  Actually, I think it says to its

3    reasonable satisfaction.   Right?

4                MR. FOSTER:  Reasonable satisfaction.

5                THE COURT:  Right.  And I assume that language

6    is there to protect Uniloc, right, so that Fortress can't be

7    unreasonable.  No?

8                MR. FOSTER:  I completely agree with that.  The

9    reason why it's not coming up in this case is that Fortress

10   and Uniloc are on the same page and not disagreeing about it

11   at all.

12               THE COURT:  Okay.  But still, you've got to

13   cure it.  I mean, we'll deal with that to their reasonable

14   satisfaction.  Let's deal first with the, you've got to

15   cure it.  So how do you cure something by not doing

16   anything?

17               MR. FOSTER:  So the way I view it and the way

18   Judge Alsop viewed it, Your Honor, was that if the party

19   holding the right to do something, that's I guess Fortress

20   here, it says, look, this is really going great.  You know

21   those monetary things, forget about it.  We're satisfied

22   with the way things are going and, in fact, that's what

23   Palmer says in a declaration.  We were very happy with the

24   way things were going.

25               At that point there's really nothing that Uniloc

1   would have to do because the party holding the rights says,

2   hey, we're as happy as a pig and whatever and nothing needs

3   to be done.

4           If Your Honor is suggesting that Uniloc has

5   to do something when the party says, no, you don't have

6   to do anything, again, I don't agree and neither did Judge

7   Alsop.

8           THE COURT:  So you agree that nothing was

9   done.  You are just saying that Fortress seems okay with

10  that?

11          MR. FOSTER:  So to be very precise so we have

12  the facts in front of us, the default that is alleged here

13  is that there were monetary targets that weren't met, and

14  let's assume for purposes of the motion that there was a

15  shortfall.  I don't know what, you know, it is what it is.

16  If the money doesn't come in by a certain date, there's no

17  way that that fact can be changed.

18          At that point, Fortress has the right I suppose

19  under the contract to take certain procedural steps to

20  implement an event of default and they chose not to do it.

21  So nothing was done, you're right, other than Fortress

22  saying you don't have to do anything.

23          THE COURT:  Right.  But the way this works, the

24  way the contract was drafted, Fortress was given a license

25  upfront and then so Fortress has the license.  The only

```
 1    question is, right, whether they can use it.  And the
 2    contract says, you agree they can't use it until there has
 3    been an event of default?
 4                   MR. FOSTER:  Correct.
 5                   THE COURT:  Okay.  So that means once there's an
 6    event of default, they can use the license.  Right?
 7                   MR. FOSTER:  Once there's an event of default,
 8    they can use it.
 9                   THE COURT:  Right.
10                   MR. FOSTER:  Again, you've got a default
11    doctrine.  If the default is cured to Fortress' reasonable
12    satisfaction --
13                   THE COURT:  Right.
14                   MR. FOSTER:  -- it is the intent of the parties
15    that they cannot sublicense.
16                   THE COURT:  I don't know.  I think, you know,
17    you've got that unambiguous contract.  I've got to give
18    meaning to the word cure.  What does cure mean?
19                   MR. FOSTER:  Well, again, it depends on the
20    particular default that's being dealt with.  Some defaults
21    might not be true by the nature of their -- in this
22    particular case, if you are talking about a contract that
23    has to be met by certain date and that date passes and it
24    hasn't been met because the money hasn't come in.  I think
25    it either has to be waived or they find that Fortress, who
```

1   has rights, can say, look, we're satisfied with the way

2   things are.  We're not going to put you into default.  That

3   makes sense to me, but that's how I would argue it.  I mean,

4   it's there for a purpose, and the purpose has been served.

5   You have to give some credit to the purpose that the parties

6   have entered into an agreement to accomplish.

7            THE COURT:  What was the purpose that they were

8   trying to accomplish?

9            MR. FOSTER:  My understanding based upon common

10  sense as well as the testimony of the parties was at the

11  time the first agreement was entered into, which was 2014,

12  there had been no prior history or dealings between Uniloc

13  or Fortress.  It happened that the agreement, the entity

14  giving out the money puts various things in the contract

15  so that as things go south, they can protect their

16  interests.  And the provisions, they're in there to provide

17  that kind of protection if the party lending the money

18  elects to use it.

19            In this particular case, there were targets,

20  regular targets which were more than aspirational and they

21  were not met.  Fortress, I suppose, if that were important

22  to them, could have taken certain procedural steps to cause

23  the event of default and then take whatever steps they

24  wanted to take to protect their interests.  But because

25  things were going well financially and they were happy, they

1    thought they didn't need to use those steps.  And that was,

2    that was the way the deal was set up and by the time two or

3    three years later, and, again, things were going swimmingly.

4    They kept amending the agreement and lending more money to

5    finance this litigation.

6                 THE COURT:  And does Fortress have a stake in

7    this litigation?

8                 MR. FOSTER:  Let me answer that question

9    encyclopedically so that I'm not leaving anything out.

10               In 2018, the entire patent portfolio, including

11   a patent here, was transferred to Uniloc 2017.  Uniloc 2017

12   is owned 98 percent by a separate entity called Significant

13   Loan Holdings.  They are very wealthy investors who pool

14   their money.  It is an investment pool.  They pool their

15   money and they asked the Fortress entity to manage the

16   investments of the pool.

17               So the Fortress parent entity has a number of

18   pools of that sort and they manage the investment pool, but

19   the investment pool owns Uniloc -- the investment pool owns

20   Uniloc 2017 or 98 percent of it.

21               So they don't have a direct interest, like a

22   stockholder doesn't have a direct interest in whether a

23   corporation was good or not, but they are financially

24   interested in it to the extent that the better of that, the

25   result in this case, the better position Uniloc 2017 will be

1     in and the better will be -- the owners of Uniloc 2017 will

2     be in better financial state.  So they have that kind of

3     business interest in the outcome of the case, yes.

4                 THE COURT:  So does Fortress -- I guess I'm

5     still not understanding exactly.  My question is

6     essentially, if there were an award of damages in this case,

7     does Fortress get a share of it?

8                 MR. FOSTER:  No, no.  If there's a windfall at

9     the end of the case, the money goes to -- eventually it goes

10    to Uniloc 2017, and that will end up in the pocket, I would

11    assume, in the ordinary course to the investors and to

12    Uniloc Holdings along with Uniloc 2017.

13                Fortress gets a -- I'm going beyond my strict

14    knowledge here, but I'm assuming Fortress by its business

15    model is paid a certain percentage of something to manage

16    the investment pool.

17                Now, if you are asking me is what they will get

18    directly affected by the judgment in this case, I have to be

19    honest and say I don't know, but I would think that the

20    better the performance of the investment pool, the better

21    Fortress will end up in the long run.  So I'm not going to

22    claim that they are all disinterested, but I suspect it's

23    not a direct financial link.

24                THE COURT:  Anything else?

25                MS. SNYDER:  No, Your Honor.  I think we pretty

1    much covered it.

2              THE COURT:  All right.  And then anything from

3    the defense?

4              MS. SNYDER:  Yes, Your Honor.  A couple of

5    things we'd like to touch on.

6              Lone Star, it sounds like we are in line with

7    your Honor's viewing of Lone Star, that it that it is not

8    applicable to this case, that the analysis there is about

9    statutory or prudential standing as it's called.  It does

10   not look at this question of injury in fact, especially not

11   from a, not from a vein that is applicable to the facts of

12   our case here.

13             Similarly, our read of Aspects is the Aspects

14   case that counsel was citing, that that is also directed to

15   statutory standing and it's not looking at the injury in

16   fact issue.  In fact, it involves an assignee transfer to a

17   licensee with a right to sublicense.  There's not a third

18   party either.  There was not a question of constitutional

19   standing in the same way.

20             With respect to the cure versus waiver issue,

21   again, it sounds like we are in line with your Honor's read

22   goes.  Just one or two things to point out is counsel was

23   referring to "certain procedural steps to implement in event

24   of default."  Our reading of the patent license and the

25   revenue sharing agreement is that there are no procedural

1   steps that had to be taken before for Fortress to implement

2   in the event of default.  An event of default happened.  It

3   happened when it happened.  When the -- for instance, when

4   the revenue minimum was not met, there was an event of

5   default period.  There were no steps that needed to be taken

6   beyond that to implement an event of default.

7                   THE COURT:  Well, and that makes sense to me.  I

8   mean, Section 2.8 is pretty clear on that it seems.  They

9   had the license.

10                  MS. SNYDER:  Right.

11                  THE COURT:  And then all it says is, they don't

12  use it following an event of default.  That means if there's

13  an event of default, once it occurs, they can use it.  Even

14  if it's cured, it seems a couple days later they have the

15  ability to use it for at least those couple of days, I

16  think.

17                  MS. SNYDER:  Right.  That is my understanding.

18  I agree that it creates the -- I won't say it creates.  It

19  removes the obstacle that was Fortress agreeing not to

20  license its sublicense rights, and so the fact that

21  Fortress, whether this did or did not sort of shrug their

22  shoulder and say we're okay with it, is not a cure, and

23  certainly is not a cure under either New York law or under

24  the terms, the express terms of the agreement.

25                  THE COURT:  All right.  Anything else?

1          MR. FOSTER:  Your Honor, I have something

2    unless you -- I just want to point out to Your Honor that in

3    the Lone Star case, 925 F3d, from pages 1234 through 1236 is

4    completely devoted to analyzing whether Lone Star at Article

5    3 has constitutional standing.

6          So it's not correct, as my colleague just said,

7    that it was strictly a jurisdictional standing case.  The

8    Federal Circuit explicitly examined Article 3 standing of

9    Lone Star and, in fact, compared to Lodestar, Uniloc had

10   even more rights here.

11         THE COURT:  Right, but Lone Star is discussing

12   Article 3 standing and then it says, okay.  Although Lone

13   Star cleared its constitutional threshold, the District

14   Court concluded that it lacked standing to proceed without

15   A&D, and then it proceeds to discuss statutory standing and

16   talks about how the Supreme Court recently clarified that

17   so-called statutory standing defects do not implicate a

18   Court's subject matter jurisdiction.  And then it starts

19   quoting from that -- that's where it's quoting -- wait a

20   second.  Sorry.  I've got the wrong page here.  The Lexmark

21   International case.  Right?

22         MS. SNYDER:  Right.

23         THE COURT:  And at that point it's saying that

24   Lexmark is irreconcilable.  At that point Judge O'Malley, I

25   think that's the author of this opinion, she has already

1    moved beyond constitutional standing.  Now she has moved

2    into statutory standing and that's where she begins to

3    discuss Lexmark.

4              MR. FOSTER:  You are certainly right.  That is

5    the order it happened, but since you have a case in front of

6    you, Your Honor, if you look at on page 1234 under

7    Subheading B, she begins by finding that Lone Star does have

8    constitutional standing.

9              THE COURT:  All right.  I agree, and I agree

10   that that section as Section B as titled, Article 3 has

11   standing.  I agree with that.

12             MR. FOSTER:  All I would ask Your Honor to do is

13   compare the rights that Lone Star had and which caused the

14   Federal Circuit to say, hey, this is constitutional, with

15   the rights that Uniloc had.

16             Uniloc had every single right that anybody had

17   in the past with the possible exception that if given a

18   nonexclusive right to sublicense to Fortress and compare

19   that of what you read here for Lone Star, and the Court can

20   do that at its leisure3.

21             THE COURT:  So let me ask you both.  I mean,

22   what about the end of Judge Alsop's opinion?  You know, he

23   said he suspects that Uniloc's manipulations in allocating

24   rights to the patents in suit to various Uniloc possibly

25   shell entities is perhaps designed to insulate Uniloc

1    Luxembourg and that he's going to keep them in the caption

2    he says for the purpose of any sanction award.  I'm trying

3    to figure out the extent to which that ought to factor into

4    my consideration for the pending motion.

5              Mr. FOSTER:  I'm happy to address that.  Judge

6    Alsop and I were actually law school classmates way back

7    then.

8              There's nothing in the record before the Court

9    that would suggest any ulterior motive or regarding anything

10   by the Uniloc entity.  We have no problem at all with

11   keeping the legacy in the case.  If anyone wants to move for

12   a sanction and say that they're liable for sanctions, we

13   have a problem with that.

14             So if Your Honor wants to simply add Uniloc 2017

15   as close to substituting them, that's fine.  That happens

16   about half the time in response to these motions.

17             But, again, I've been in this business a long

18   time.  Sometimes judges say things and you say where did

19   that come from?  Fine.  Thee is nothing in the record in

20   this case or in the record before Judge Alsop that indicates

21   any impropriety on behalf of any Uniloc entities.

22             THE COURT:  All right.  Okay.  Well, thank you

23   for the argument, and I'm going to turn to this and I've got

24   some cases to read and we'll get to it hopefully pretty

25   quick.

1          All right?  Anything else?

2          MS. SNYDER:  Your Honor, you had asked for a

3    cite and I believe I have it.

4          THE COURT:  Okay.

5          MS. SNYDER:  Are you ready for it?

6          THE COURT:  Yes, please.

7          MS. SNYDER:  Sure.  It was the Federal Circuit

8    decision in 2018, 2094 decided August 30th, 2019.

9          THE COURT:  Actually, I want you to hold on one

10   second.  I want to go back to a question I put to the

11   defendant at the outset or early on.

12          So it's your position that if I agree with you

13   that there was an event of default and I agree with you that

14   therefore Fortress had a license and I agree with you that

15   therefore Uniloc lacked standing, nobody could carry forward

16   as the plaintiff in this suit.  Is that right?

17          MS. SNYDER:  No one could have filed suit in

18   November of 2017.

19          THE COURT:  Right.  So what would happen?  And

20   so let's say, okay.  So then the remedy is to dismiss, and

21   then what?

22          MS. SNYDER:  Assuming that they have resolved

23   the issue, then they could refile tomorrow.  They could have

24   refiled two years ago under whoever, whatever entity holds

25   constitutional standing.

1          THE COURT:  Okay.

2          MS. SNYDER:  Now, they couldn't -- you know,

3     there would be no look back, right, to when this case was

4     filed.

5          THE COURT:  So they would have lost any damages

6     that preceded the original filing of the lawsuit?

7          MS. SNYDER:  Correct.

8          THE COURT:  All right.  Okay.  Thanks very much.

9     Have a good day, everybody.

10          MS. SNYDER:  Thank you, Your Honor.

11          (Telephone conference concluded at 4:57 p.m.)

12                    -  -  -

13

14

15

16

17

18

19

20

21

22

23

24

25

## '

**'134** [1] - 15:2

## 1

**1** [2] - 1:12, 20:20
**1234** [2] - 34:3, 35:6
**1236** [1] - 34:3
**15** [4] - 5:11, 5:19, 7:8, 7:20
**17-1658** [1] - 1:9

## 2

**2** [3] - 23:4, 23:6
**2.8** [1] - 33:8
**2013** [1] - 7:23
**2014** [5] - 4:18, 5:5, 7:16, 17:5, 29:11
**2017** [23] - 4:1, 5:1, 5:2, 5:11, 5:19, 7:8, 7:15, 7:20, 11:7, 11:17, 25:2, 25:6, 25:8, 25:17, 30:11, 30:20, 30:25, 31:1, 31:10, 31:12, 36:14, 37:18
**2018** [2] - 30:10, 37:8
**2019** [2] - 16:24, 37:8
**2020** [1] - 1:12
**2094** [1] - 37:8
**25(c** [7] - 9:20, 9:24, 10:2, 10:14, 10:24, 11:13, 25:4
**26(c)** [1] - 25:13

## 3

**3** [4] - 34:5, 34:8, 34:12, 35:10
**30** [1] - 7:22
**30th** [3] - 5:2, 5:5, 37:8
**31st** [2] - 5:1, 7:15

## 4

**4:00** [2] - 1:12, 3:4
**4:57** [1] - 38:11

## 8

**86** [4] - 18:5, 18:12, 18:20, 24:7

## 9

**9.4.2** [1] - 7:18
**925** [1] - 34:3
**98** [2] - 30:12, 30:20

## A

**A&D** [1] - 34:15
**Aaron** [1] - 3:17
**AARON** [1] - 2:3
**ability** [7] - 11:9, 13:20, 14:1, 18:8, 18:10, 33:15
**able** [4] - 5:23, 11:22, 12:22, 13:11
**absolutely** [1] - 12:19
**accept** [1] - 19:20
**accepted** [1] - 19:1
**accident** [2] - 12:7, 12:12
**accomplish** [2] - 29:6, 29:8
**according** [1] - 17:10
**accurate** [3] - 5:9, 5:13, 5:22
**acknowledging** [1] - 4:19
**act** [2] - 6:19, 8:13
**action** [1] - 17:17
**ACTION** [1] - 1:4
**actions** [2] - 12:23, 12:25
**actual** [1] - 10:20
**add** [3] - 11:7, 25:2, 36:14
**added** [1] - 25:18
**adding** [2] - 11:16, 17:16
**additional** [1] - 11:7
**address** [4] - 7:21, 18:24, 25:2, 36:5
**addressed** [2] - 18:25, 24:23
**adds** [1] - 25:10
**adequately** [1] - 24:22
**advance** [1] - 11:6
**affected** [1] - 31:18
**afternoon** [3] - 3:6, 3:9, 3:15
**ago** [1] - 37:24
**agree** [16] - 11:20, 11:21, 14:1, 18:22, 23:9, 26:8, 27:6, 27:8, 28:2, 33:18, 35:9, 35:11, 37:12, 37:13, 37:14
**agreed** [1] - 15:12
**agreeing** [1] - 33:19
**agreement** [18] - 4:13, 4:18, 4:20, 5:4, 5:7, 5:11, 6:3, 6:10, 6:25, 7:17, 7:20, 29:6, 29:11, 29:13, 30:4, 32:25, 33:24
**agreements** [1] - 15:1

## B

**ahead** [2] - 11:1, 11:2
**alleged** [2] - 4:3, 27:12
**alleging** [1] - 8:13
**allocating** [1] - 35:23
**allow** [1] - 15:13
**allowed** [1] - 4:24
**allowing** [1] - 4:14
**Alsop** [11] - 9:3, 14:22, 15:8, 15:12, 15:22, 18:15, 19:1, 26:18, 27:7, 36:6, 36:20
**Alsop's** [2] - 19:6, 35:22
**amended** [1] - 5:10
**amending** [1] - 30:4
**amendment** [3] - 5:19, 6:14, 7:8
**analysis** [1] - 32:8
**analyzing** [1] - 34:4
**AND** [1] - 1:2
**annul** [1] - 6:10
**answer** [2] - 16:14, 30:8
**appeal** [2] - 15:16, 15:18
**APPEARANCES** [2] - 1:17, 2:1
**Apple** [3] - 8:18, 15:5, 15:11
**applicable** [2] - 32:8, 32:11
**applied** [1] - 22:7
**appreciate** [1] - 12:24
**arguably** [1] - 12:21
**argue** [2] - 19:21, 29:3
**arguing** [4] - 16:18, 18:14, 23:12, 25:19
**argument** [12] - 6:18, 11:14, 16:10, 19:24, 20:11, 21:3, 21:10, 21:22, 22:2, 23:17, 25:14, 36:23
**argument's** [2] - 8:11, 9:2
**arises** [1] - 24:9
**arrangement** [1] - 13:15
**ARSHT** [1] - 2:7
**Article** [4] - 34:4, 34:8, 34:12, 35:10
**articulated** [1] - 17:24
**Aspects** [4] - 19:25, 24:16, 32:13
**aspirational** [1] - 29:20
**assert** [1] - 20:3
**assessment** [1] - 22:25
**assignee** [1] - 32:16
**assignment** [2] - 22:8,

## C

22:11, 23:9
**assume** [5] - 8:11, 9:2, 26:5, 27:14, 31:11
**assuming** [2] - 31:14, 37:22
**attack** [1] - 7:16
**attention** [1] - 16:13
**attorney** [1] - 13:25
**August** [1] - 37:8
**author** [1] - 34:25
**authoritative** [1] - 19:18
**available** [1] - 8:16
**award** [2] - 31:6, 36:2

## B

**bankruptcy** [1] - 20:8
**bar** [3] - 6:1, 18:2, 24:11
**based** [10] - 3:24, 4:4, 5:16, 5:22, 8:17, 15:17, 21:23, 22:2, 22:24, 29:9
**BEFORE** [1] - 1:15
**begin** [1] - 16:20
**beginning** [1] - 3:4
**begins** [2] - 35:2, 35:7
**behalf** [1] - 36:21
**behavior** [1] - 10:13
**benefit** [6] - 6:6, 6:18, 13:3, 13:5, 13:10, 13:12
**best** [1] - 8:5
**better** [6] - 30:24, 30:25, 31:1, 31:2, 31:20
**between** [4] - 4:19, 12:17, 21:7, 29:12
**beyond** [3] - 31:13, 33:6, 35:1
**boston** [1] - 2:4
**BRADY** [1] - 2:11
**Brady** [3] - 3:12, 3:22
**breach** [1] - 6:24
**briefed** [1] - 16:24
**briefing** [6] - 15:1, 16:24, 19:21, 20:17, 20:23, 24:13
**briefs** [1] - 17:4
**bring** [3] - 12:22, 16:12, 16:23
**bundle** [1] - 14:2
**burden** [1] - 8:4
**business** [7] - 4:9, 4:10, 5:15, 7:1, 31:3, 31:14, 36:17
**buzz** [1] - 20:9
**BY** [4] - 1:19, 2:3, 2:8, 2:11

## C

**California** [4] - 9:7, 14:13, 15:6, 19:1
**cannot** [4] - 7:8, 7:13, 7:19, 28:15
**caption** [1] - 36:1
**carefully** [1] - 14:4
**carry** [1] - 37:15
**case** [63] - 7:24, 8:18, 9:7, 9:19, 10:11, 12:13, 14:17, 14:23, 15:3, 15:14, 15:16, 15:19, 15:25, 16:1, 16:25, 17:3, 17:8, 17:9, 17:15, 17:18, 18:3, 18:6, 18:14, 18:20, 18:21, 19:8, 19:10, 19:13, 19:17, 19:22, 19:25, 20:4, 20:5, 20:6, 20:16, 21:8, 22:12, 22:19, 23:3, 23:12, 24:7, 24:13, 24:16, 25:18, 26:9, 28:22, 29:19, 30:25, 31:3, 31:6, 31:9, 31:18, 32:8, 32:12, 32:14, 34:3, 34:7, 34:21, 35:5, 36:11, 36:20, 38:3
**cases** [14] - 12:15, 14:25, 15:4, 17:2, 17:7, 19:24, 21:23, 22:10, 22:11, 22:18, 22:23, 24:14, 25:8, 36:24
**Category** [4] - 20:20, 23:4, 23:6
**caused** [1] - 35:13
**central** [1] - 21:16
**certain** [7] - 20:12, 27:16, 27:19, 28:23, 29:22, 31:15, 32:23
**certainly** [4] - 14:10, 25:18, 33:23, 35:4
**CFC** [1] - 1:9
**challenges** [2] - 5:8, 5:13
**chamber** [1] - 3:4
**changed** [1] - 27:17
**charge** [1] - 13:25
**check** [1] - 18:7
**choose** [1] - 13:20
**chose** [1] - 27:20
**Circuit** [18] - 12:14, 15:18, 15:20, 16:25, 17:5, 17:7, 17:9, 17:11, 19:25, 20:6, 22:17, 24:4, 24:14, 24:17, 25:11, 34:8,

35:14, 37:7
**cite** [5] - 15:25, 16:4, 16:5, 24:7, 37:3
**cited** [2] - 19:24, 24:13
**citing** [1] - 32:14
**CIVIL** [1] - 1:4
**claim** [3] - 10:20, 12:19, 31:22
**claiming** [1] - 23:18
**clarified** [1] - 34:16
**classmates** [1] - 36:6
**clean** [1] - 7:21
**clear** [5] - 11:12, 11:18, 14:25, 23:7, 33:8
**cleared** [1] - 34:13
**clearly** [1] - 9:6
**close** [1] - 36:15
**collateral** [2] - 5:6, 7:6
**colleague** [3] - 18:25, 20:14, 34:6
**colleagues** [1] - 19:12
**collect** [2] - 18:10, 24:5
**COLM** [1] - 1:15
**coming** [1] - 26:9
**committed** [1] - 6:24
**common** [1] - 29:9
**company** [1] - 4:7
**compare** [2] - 35:13, 35:18
**compared** [1] - 34:9
**complaint** [1] - 4:1
**completed** [1] - 16:24
**completely** [4] - 11:8, 20:21, 26:8, 34:4
**complying** [2] - 9:4, 9:5
**component** [2] - 10:5, 10:8
**concealed** [1] - 10:17
**concedes** [1] - 18:13
**concern** [1] - 20:13
**concerning** [1] - 12:21
**concluded** [2] - 34:14, 38:11
**conduct** [3] - 6:20, 7:18, 9:17
**conference** [3] - 1:13, 3:3, 38:11
**confusion** [1] - 24:9
**conjunction** [1] - 15:7
**CONNOLLY** [1] - 1:15
**consent** [1] - 4:17
**consequences** [2] - 12:24, 14:3
**consider** [1] - 10:7
**consideration** [1] - 36:4

considered [1] - 6:21
**constitutional** [21] - 3:25, 9:15, 11:16, 12:1, 12:22, 15:14, 17:21, 17:23, 18:7, 18:11, 18:21, 21:7, 21:11, 23:20, 32:18, 34:5, 34:13, 35:1, 35:8, 35:14, 37:25
**contemporaneous** [1] - 6:17
**contend** [2] - 6:12, 6:13
**contested** [1] - 18:15
**context** [1] - 22:8
**continued** [1] - 15:13
**Continued** [1] - 2:1
**continues** [2] - 13:22, 20:20
**continuing** [1] - 6:19
**contract** [6] - 27:19, 27:24, 28:2, 28:17, 28:22, 29:14
**contractual** [3] - 8:2, 13:15, 25:25
**contractually** [1] - 14:1
**core** [1] - 4:9
**corporation** [1] - 30:23
**correct** [6] - 7:11, 21:5, 23:11, 28:4, 34:6, 38:7
**corrected** [1] - 7:14
**Counsel** [2] - 2:5, 2:13
**counsel** [3] - 3:6, 32:14, 32:22
**couple** [2] - 32:4, 33:14, 33:15
**course** [2] - 14:19, 31:11
**COURT** [69] - 1:1, 3:6, 3:13, 3:19, 8:8, 8:11, 8:23, 9:20, 9:25, 10:7, 10:13, 10:23, 11:2, 11:11, 11:20, 12:5, 13:4, 13:7, 13:9, 13:18, 14:5, 14:21, 15:25, 16:4, 16:9, 16:16, 21:2, 21:9, 21:18, 22:1, 22:6, 22:12, 22:20, 23:5, 23:14, 24:21, 24:25, 25:3, 25:20, 25:22, 26:2, 26:5, 26:12, 27:8, 27:23, 28:5, 28:9, 28:13, 28:16, 29:7, 30:6, 31:4, 31:24, 32:2, 33:7, 33:11, 33:25,

34:11, 34:23, 35:9, 35:21, 36:22, 37:4, 37:6, 37:9, 37:19, 38:1, 38:5, 38:8
**Court** [27] - 1:24, 9:18, 11:7, 15:7, 16:8, 16:19, 17:4, 17:6, 17:15, 17:19, 17:24, 18:4, 18:22, 18:24, 19:5, 19:11, 19:15, 19:20, 20:24, 21:1, 24:8, 25:10, 25:11, 34:14, 34:16, 35:19, 36:8
**Court's** [1] - 34:18
**covenants** [1] - 5:20
**covered** [1] - 32:1
**created** [1] - 13:16
**creates** [2] - 33:18
**credit** [2] - 14:13, 29:5
**cure** [14] - 11:17, 11:21, 13:13, 19:3, 25:22, 26:13, 26:15, 28:18, 32:20, 33:22, 33:23
**cured** [3] - 26:1, 28:11, 33:14
**cut** [1] - 8:25

## D

**damages** [2] - 31:6, 38:5
**date** [7] - 16:3, 17:10, 19:14, 19:16, 27:16, 28:23
**days** [2] - 33:14, 33:15
**deadline** [1] - 11:9
**deal** [3] - 26:13, 26:14, 30:2
**dealings** [1] - 29:12
**dealt** [3] - 12:15, 21:23, 28:20
**December** [3] - 4:18, 5:5, 7:16
**decide** [1] - 15:21
**decided** [2] - 7:4, 37:8
**deciding** [1] - 10:1
**decision** [10] - 6:24, 7:2, 14:9, 14:11, 14:23, 15:6, 17:5, 19:15, 19:16, 37:8
**decisions** [2] - 15:8, 17:11
**declarant** [1] - 14:6
**declaration** [3] - 6:16, 19:2, 26:23
**default** [30] - 4:16, 4:22, 4:23, 6:5, 6:8, 6:11, 6:13, 6:15, 7:9,

20:19, 25:22, 27:12, 27:20, 28:3, 28:6, 28:7, 28:10, 28:11, 28:20, 29:2, 29:23, 32:24, 33:2, 33:5, 33:6, 33:12, 33:13, 37:13
**defaults** [1] - 28:20
**defects** [4] - 7:10, 7:14, 19:3, 34:17
**defendant** [6] - 3:8, 3:20, 8:6, 18:1, 24:11, 37:11
**Defendant** [2] - 1:9, 2:13
**defendant's** [1] - 3:7
**defendants** [1] - 10:11
**defense** [1] - 32:3
**defining** [2] - 23:7, 23:20
**DELAWARE** [1] - 1:2
**Delaware** [1] - 1:11
**denied** [1] - 25:11
**depose** [1] - 14:15
**deposed** [2] - 14:18, 14:22
**deposition** [1] - 14:17
**depositions** [1] - 14:6
**designed** [1] - 35:25
**determination** [1] - 22:24
**determine** [1] - 22:13
**determined** [1] - 15:20
**devoted** [1] - 34:4
**different** [4] - 15:17, 20:21, 22:6
**direct** [2] - 30:21, 30:22, 31:23
**directed** [1] - 32:14
**directly** [2] - 18:5, 31:18
**directs** [1] - 16:19
**disagreeing** [1] - 26:10
**disclose** [1] - 7:15
**disclosures** [1] - 8:14
**discovering** [1] - 8:6
**discovery** [12] - 8:14, 9:5, 10:17, 10:18, 10:21, 14:6, 14:16, 15:13, 15:20, 15:22, 15:23
**discretion** [2] - 9:19, 10:14
**discretionary** [2] - 10:5, 10:8
**discuss** [3] - 22:23, 34:15, 35:3
**discussed** [1] - 25:17
**discussing** [1] - 34:11

**disinterested** [1] - 31:22
**dismiss** [8] - 3:24, 13:14, 16:20, 17:19, 21:1, 25:16, 25:19, 37:20
**dismissal** [2] - 5:24, 9:13
**dismissing** [1] - 9:19
**dispositive** [1] - 19:10
**dispute** [1] - 7:4
**disregarded** [1] - 11:8
**distinction** [2] - 12:11, 21:7
**distraction** [1] - 4:9
**DISTRICT** [2] - 1:1, 1:2
**District** [2] - 14:12, 34:13
**doctrine** [1] - 28:11
**document** [4] - 18:5, 18:12, 18:20, 24:7
**domain** [1] - 13:24
**done** [3] - 27:3, 27:9, 27:21
**doubt** [1] - 6:7
**down** [1] - 20:16
**drafted** [1] - 27:24
**dries** [1] - 5:18
**during** [1] - 19:8

## E

**early** [1] - 37:11
**effect** [2] - 6:15, 11:4
**efficient** [3] - 10:10, 16:22
**effort** [2] - 7:5, 8:5
**egregious** [1] - 9:17
**either** [3] - 28:25, 32:18, 33:23
**elects** [1] - 29:18
**Elon** [1] - 13:21
**employee** [1] - 6:16
**encyclopedically** [1] - 30:9
**end** [5] - 18:23, 31:9, 31:10, 31:21, 35:22
**enforce** [2] - 12:7, 13:6
**enforceable** [2] - 5:7, 5:12
**enforcement** [3] - 4:12, 12:11, 12:23
**enforces** [1] - 4:8
**enforcing** [3] - 4:6, 5:16, 5:17
**entered** [4] - 4:12, 5:24, 29:6, 29:11
**entire** [3] - 15:1, 25:5, 30:10

**entirely** [1] - 12:12
**entities** [6] - 4:6, 4:10, 12:18, 17:20, 35:25, 36:21
**entity** [12] - 12:11, 20:19, 20:20, 20:21, 20:22, 21:16, 29:13, 30:12, 30:15, 30:17, 36:10, 37:24
**Ernst** [1] - 3:16
**ERNST** [1] - 1:18
**errors** [1] - 7:11
**especially** [1] - 32:10
**ESQ** [5] - 1:19, 2:3, 2:3, 2:8, 2:11
**essentially** [2] - 12:7, 31:6
**establish** [2] - 8:2, 12:22
**event** [14] - 4:16, 27:20, 28:3, 28:6, 28:7, 29:23, 32:23, 33:2, 33:4, 33:6, 33:12, 33:13, 37:13
**events** [7] - 4:22, 4:23, 6:5, 6:11, 6:12, 7:9
**eventually** [1] - 31:9
**exactly** [1] - 31:5
**examined** [2] - 19:17, 34:8
**example** [4] - 6:25, 14:16, 18:8, 22:19
**examples** [3] - 18:6, 21:13, 23:23
**exception** [1] - 35:17
**exchange** [2] - 4:13, 12:17
**exclude** [1] - 23:22
**exclusion** [1] - 24:10
**exclusionary** [9] - 12:4, 22:3, 23:14, 23:15, 23:19, 23:22, 24:1, 24:3, 24:6
**exclusive** [5] - 4:20, 22:3, 22:14, 22:24, 23:10
**excuse** [2] - 4:23, 5:16
**exercise** [4] - 4:24, 7:5, 9:18
**exercising** [1] - 10:14
**existing** [2] - 5:21, 6:1
**explained** [1] - 20:23
**explicitly** [1] - 34:8
**express** [4] - 4:17, 6:9, 6:14, 33:24
**expressly** [1] - 7:18
**extent** [2] - 30:24, 36:3

**F**

**F3d** [1] - 34:3
**fact** [17] - 4:2, 7:21, 8:3, 9:3, 10:19, 12:5, 12:20, 12:24, 13:13, 23:24, 26:22, 27:17, 32:10, 32:16, 33:20, 34:9
**factor** [1] - 36:3
**facts** [4] - 6:17, 21:8, 27:12, 32:11
**factual** [5] - 18:15, 18:24, 18:25, 19:6, 19:9
**failed** [1] - 7:22
**failing** [1] - 7:15
**failure** [1] - 7:14
**fair** [1] - 8:22
**fairly** [2] - 17:25, 18:2
**faith** [1] - 8:13
**far** [1] - 12:15
**fatal** [1] - 8:7
**favor** [1] - 23:5
**federal** [1] - 18:1
**Federal** [18] - 12:14, 15:18, 15:20, 16:25, 17:5, 17:7, 17:9, 17:11, 19:25, 20:6, 22:17, 24:4, 24:14, 24:17, 25:11, 34:8, 35:14, 37:7
**figure** [3] - 21:3, 21:9, 36:3
**file** [3] - 13:15, 13:16, 13:17
**filed** [10] - 4:1, 7:4, 7:24, 11:24, 11:25, 13:14, 15:5, 17:22, 37:17, 38:4
**filing** [1] - 38:6
**final** [1] - 15:13
**finance** [1] - 30:5
**financial** [2] - 31:2, 31:23
**financially** [2] - 29:25, 30:23
**fine** [2] - 36:15, 36:19
**first** [7] - 6:22, 9:1, 11:16, 15:19, 21:15, 26:14, 29:11
**firsthand** [1] - 6:17
**fit** [1] - 23:24
**fix** [1] - 13:15
**flaws** [1] - 8:7
**follow** [1] - 24:24
**following** [2] - 3:3, 33:12
**FOR** [1] - 1:2
**force** [1] - 7:18

**forget** [1] - 26:21
**forgive** [1] - 18:9
**Fortress** [38] - 4:14, 4:15, 4:18, 4:24, 5:18, 6:16, 6:19, 6:22, 7:4, 7:24, 11:21, 12:2, 14:7, 19:2, 26:6, 26:9, 26:19, 27:9, 27:18, 27:21, 27:24, 27:25, 28:25, 29:13, 29:21, 30:6, 30:15, 30:17, 31:4, 31:7, 31:13, 31:14, 31:21, 33:1, 33:19, 33:21, 35:18, 37:14
**Fortress'** [8] - 6:1, 6:4, 6:7, 6:24, 7:20, 19:3, 26:1, 28:11
**forward** [4] - 13:23, 17:14, 18:21, 37:15
**Foster** [2] - 3:17, 16:18
**FOSTER** [30] - 2:3, 16:17, 21:6, 21:12, 21:22, 22:5, 22:10, 22:17, 23:2, 23:12, 23:16, 24:22, 25:1, 25:21, 25:24, 26:4, 26:8, 26:17, 27:11, 28:4, 28:7, 28:10, 28:14, 28:19, 29:9, 30:8, 31:8, 34:1, 35:4, 35:12
**fOSTER** [1] - 36:5
**four** [2] - 16:24, 24:14
**free** [2] - 7:25, 8:23
**frequently** [1] - 22:10
**front** [4] - 9:3, 22:21, 27:12, 35:5
**futile** [1] - 10:12

**G**

**gifts** [1] - 13:23
**given** [7] - 14:15, 20:1, 20:23, 23:17, 24:18, 27:24, 35:17
**grab** [1] - 16:6
**grant** [5] - 4:15, 4:25, 7:3, 10:1, 18:9
**granted** [2] - 7:25, 25:12
**great** [2] - 3:19, 26:20
**guess** [3] - 12:6, 26:19, 31:4
**Gunning** [1] - 1:24

**H**

**half** [1] - 36:16
**happy** [6] - 16:7, 16:14, 26:23, 27:2, 29:25, 36:5
**head** [1] - 16:23
**hear** [2] - 15:12, 16:16
**held** [5] - 3:3, 11:8, 20:8, 20:9, 24:15
**hid** [2] - 8:18, 10:19
**history** [1] - 29:12
**hit** [2] - 5:1, 5:3
**Hite** [1] - 22:22
**hold** [2] - 22:20, 37:9
**holding** [2] - 26:19, 27:1
**Holdings** [2] - 30:13, 31:12
**holds** [1] - 37:24
**honest** [2] - 12:9, 31:19
**Honor** [23] - 3:9, 3:15, 3:21, 9:18, 11:12, 12:9, 16:17, 20:13, 21:14, 23:13, 25:1, 25:21, 26:18, 27:4, 31:25, 32:4, 34:1, 34:2, 35:6, 35:12, 36:14, 37:2, 38:10
**Honor's** [2] - 32:7, 32:21
**HONORABLE** [1] - 1:15
**hopefully** [1] - 36:24

**I**

**identified** [3] - 5:21, 5:25, 6:11
**identify** [1] - 5:23
**implement** [4] - 27:20, 32:23, 33:1, 33:6
**implicate** [1] - 34:17
**important** [2] - 20:4, 29:21
**impropriety** [1] - 36:21
**IN** [2] - 1:1, 1:2
**inaudible** [1] - 7:10
**INC** [1] - 1:4
**inclined** [1] - 14:13
**included** [3] - 4:14, 6:14, 8:6
**including** [6] - 7:7, 17:16, 18:4, 23:24, 24:16, 30:10
**inconsistent** [1] - 17:6
**indicates** [2] - 6:19, 36:20

**indulge** [1] - 24:2
**information** [3] - 8:16, 8:17, 14:8
**infringement** [5] - 4:3, 11:23, 12:2, 18:9, 24:3
**initial** [1] - 6:2
**injury** [7] - 4:2, 8:3, 12:20, 12:23, 17:25, 32:10, 32:15
**innovation** [1] - 13:23
**inquiry** [5] - 6:23, 7:2, 7:6, 10:23, 21:20
**instance** [3] - 11:16, 15:19, 33:3
**instances** [1] - 12:15
**insulate** [1] - 35:25
**intent** [1] - 28:14
**intentionally** [1] - 7:11
**interest** [3] - 30:21, 30:22, 31:3
**interested** [2] - 14:19, 30:24
**interests** [2] - 29:16, 29:24
**International** [1] - 34:21
**introduce** [1] - 12:18
**invest** [1] - 6:19
**investment** [8] - 4:14, 7:13, 30:14, 30:18, 30:19, 31:16, 31:20
**investments** [1] - 30:16
**investors** [2] - 30:13, 31:11
**involves** [1] - 32:16
**IPR** [1] - 15:15
**irreconcilable** [1] - 17:8, 19:14, 34:24
**irrelevant** [2] - 8:1, 10:19
**issue** [23] - 4:4, 9:4, 15:2, 15:9, 15:12, 15:14, 15:17, 15:18, 15:21, 15:23, 16:23, 17:15, 17:19, 17:20, 17:22, 19:18, 22:18, 23:8, 25:17, 32:16, 32:20, 37:23
**issued** [1] - 24:16
**issues** [5] - 8:17, 9:10, 18:24, 18:25, 19:9

**J**

**Jacobs** [2] - 3:10, 3:18
**JACOBS** [3] - 2:3, 2:8, 3:9
**JAHN** [1] - 2:11

**James** [1] - 16:18
**JAMES** [1] - 2:3
**January** [3] - 16:24, 20:18, 24:13
**Jim** [1] - 3:17
**JOYCE** [1] - 1:18
**Judge** [15] - 9:3, 14:22, 15:8, 15:11, 15:22, 17:10, 18:15, 19:1, 19:5, 26:18, 27:6, 34:24, 35:22, 36:5, 36:20
**judges** [1] - 36:18
**judgment** [2] - 18:2, 31:18
**judiciously** [1] - 14:4
**June** [2] - 5:2, 7:22
**jurisdiction** [8] - 16:21, 17:1, 17:7, 17:16, 19:14, 19:23, 20:5, 34:18
**jurisdictional** [4] - 17:12, 17:14, 19:17, 34:7

## K

**KAREN** [1] - 2:8
**Karen** [1] - 3:10
**keep** [1] - 36:1
**keeping** [1] - 36:11
**kept** [1] - 30:4
**kicked** [1] - 22:18
**kind** [5] - 8:20, 8:24, 20:15, 29:17, 31:2
**knowledge** [2] - 6:17, 31:14
**known** [1] - 7:12
**knows** [1] - 23:6
**Komer** [1] - 7:19

## L

**lack** [2] - 3:24, 16:21
**lacked** [2] - 34:14, 37:15
**language** [9] - 18:5, 18:19, 20:17, 22:7, 23:19, 24:1, 24:6, 25:25, 26:5
**late** [1] - 11:10
**law** [11] - 7:10, 12:14, 12:21, 17:1, 17:7, 17:23, 19:23, 20:5, 33:23, 36:6
**lawsuit** [1] - 38:6
**least** [4] - 5:23, 14:19, 24:14, 33:15
**leaving** [1] - 30:9
**legacy** [5] - 17:20,

18:18, 25:6, 25:8, 36:11
**legal** [7] - 7:10, 7:11, 7:14, 9:8, 9:10, 9:12, 17:20
**leisure3** [1] - 35:20
**lending** [2] - 29:17, 30:4
**length** [1] - 19:8
**letter** [2] - 16:11, 17:4
**letters** [1] - 18:4
**Lexmark** [5] - 17:6, 17:8, 34:20, 34:24, 35:3
**liable** [1] - 36:12
**liberally** [1] - 20:17
**license** [17] - 4:18, 4:19, 4:20, 6:1, 6:3, 11:22, 22:14, 23:25, 24:15, 24:18, 27:24, 27:25, 28:6, 32:24, 33:9, 33:20, 37:14
**licensee** [5] - 12:16, 22:4, 22:24, 23:10, 32:17
**licenses** [3] - 5:20, 5:22, 18:9
**licensing** [3] - 4:7, 5:16, 5:17
**lifted** [1] - 6:2
**likely** [1] - 18:1
**limited** [1] - 23:22
**line** [4] - 3:11, 13:17, 32:6, 32:21
**link** [1] - 31:23
**list** [1] - 5:21
**litigation** [4] - 8:14, 9:17, 30:5, 30:7
**LLC** [2] - 1:8, 1:18
**LLP** [3] - 2:2, 2:7, 2:11
**Loan** [1] - 30:13
**Lobel** [1] - 3:18
**LOBEL** [1] - 2:2
**Lodestar** [1] - 34:9
**Lone** [36] - 16:25, 17:3, 17:18, 18:6, 18:20, 19:9, 19:12, 19:13, 19:21, 19:22, 20:23, 21:3, 21:4, 21:6, 21:10, 21:12, 21:13, 22:18, 23:17, 23:20, 23:23, 24:1, 24:4, 24:6, 24:12, 24:23, 32:6, 32:7, 34:3, 34:4, 34:9, 34:11, 34:12, 35:7, 35:13, 35:19
**look** [6] - 22:13, 26:20, 29:1, 32:10, 35:6, 38:3

**looking** [3] - 9:21, 12:17, 32:15
**lost** [2] - 20:15, 38:5
**low** [1] - 18:2
**Lux** [5] - 4:12, 4:16, 4:21, 5:25, 12:4
**LUXEMBOURG** [1] - 1:5
**Luxembourg** [3] - 4:5, 17:21, 36:1

## M

**Madison** [1] - 2:12
**manage** [3] - 30:15, 30:18, 31:15
**manipulations** [1] - 35:23
**Mann** [6] - 20:5, 20:16, 20:17, 22:19, 22:21
**manufacturing** [1] - 4:7
**March** [2] - 5:1, 7:15
**MARTHA** [1] - 2:11
**Martha** [2] - 3:11, 3:22
**Massachusetts** [1] - 2:4
**material** [1] - 5:14
**matter** [9] - 6:2, 9:8, 9:10, 9:12, 9:17, 16:21, 18:15, 18:23, 34:18
**McNally** [1] - 17:11
**mean** [17] - 8:23, 10:4, 10:17, 10:25, 11:4, 11:13, 12:6, 13:10, 14:22, 21:19, 23:8, 24:10, 26:13, 28:18, 29:3, 33:8, 35:21
**meaning** [1] - 28:18
**means** [4] - 19:13, 19:15, 28:5, 33:12
**meant** [1] - 23:14
**meet** [3] - 7:14, 7:22, 18:11
**mention** [1] - 19:24
**met** [6] - 6:9, 27:13, 28:23, 28:24, 29:21, 33:4
**methodically** [1] - 25:7
**Microsoft** [1] - 20:7
**might** [2] - 19:4, 28:21
**Miller** [1] - 9:21
**minimum** [5] - 5:2, 5:3, 7:15, 7:22, 33:4
**minute** [2] - 20:10, 25:15
**mistakenly** [1] - 17:12
**MOBILITY** [1] - 1:8

**Mobility** [1] - 3:10
**model** [2] - 5:15, 31:15
**monetary** [2] - 26:21, 27:13
**money** [8] - 27:16, 28:24, 29:14, 29:17, 30:4, 30:14, 30:15, 31:9
**months** [2] - 10:17, 16:25
**moreover** [1] - 7:19
**MORRIS** [1] - 2:7
**Morris** [1] - 3:10
**Morrow** [1] - 20:6
**most** [5] - 6:15, 16:22, 18:14, 18:17, 22:17
**motion** [19] - 3:7, 3:20, 3:23, 10:1, 10:3, 11:14, 15:7, 15:10, 16:20, 16:23, 17:19, 21:1, 25:2, 25:16, 25:19, 27:14, 36:4
**motions** [1] - 36:16
**motive** [1] - 36:9
**MOTOROLA** [1] - 1:8
**Motorola** [12] - 3:10, 6:11, 7:7, 7:25, 8:6, 10:16, 14:14, 18:12, 18:14, 21:23, 23:17
**Motorola's** [2] - 4:3, 25:14
**move** [3] - 11:10, 18:21, 36:11
**moved** [4] - 13:22, 13:23, 35:1
**MR** [31] - 3:15, 16:17, 21:6, 21:12, 21:22, 22:5, 22:10, 22:17, 23:2, 23:12, 23:16, 24:22, 25:1, 25:4, 25:21, 25:24, 26:4, 26:8, 26:17, 27:11, 28:4, 28:7, 28:10, 28:14, 28:19, 29:9, 30:8, 31:8, 34:1, 35:4, 35:12
**MS** [36] - 3:9, 3:21, 8:10, 8:21, 9:12, 9:23, 10:3, 10:9, 10:15, 10:25, 11:3, 11:12, 11:25, 12:9, 13:5, 13:8, 13:10, 13:19, 14:10, 14:24, 16:2, 16:6, 16:14, 31:25, 32:4, 33:10, 33:17, 34:22, 37:2, 37:5, 37:7, 37:17, 37:22, 38:2, 38:7,

38:10
**Musk** [1] - 13:21
**must** [3] - 17:24, 19:17, 24:10

## N

**named** [1] - 3:24
**narrowly** [1] - 24:10
**nature** [1] - 28:21
**necessary** [1] - 14:8
**need** [3] - 19:8, 20:25, 30:1
**needed** [2] - 15:20, 33:5
**needs** [1] - 27:2
**New** [2] - 7:9, 33:23
**NICHOLS** [1] - 2:7
**Nichols** [1] - 3:10
**NO** [1] - 1:9
**nobody** [2] - 20:12, 37:15
**nonexclusive** [3] - 18:16, 24:15, 35:18
**Northern** [1] - 14:12
**nothing** [6] - 6:3, 23:9, 26:25, 27:2, 27:8, 27:21, 36:8, 36:19
**November** [2] - 4:1, 37:18
**nuance** [1] - 14:24
**nuanced** [1] - 4:25
**nub** [1] - 8:25
**nullity** [1] - 12:7
**number** [4] - 14:25, 15:4, 19:23, 30:17

## O

**o'clock** [1] - 1:12
**O'Kelly** [1] - 3:16
**O'KELLY** [3] - 1:18, 1:19, 3:15
**O'Malley** [1] - 34:24
**obstacle** [1] - 33:19
**obtaining** [1] - 4:6
**obtains** [1] - 4:8
**obviously** [3] - 11:14, 13:2, 16:7
**occurs** [1] - 33:13
**October** [1] - 1:12
**OF** [1] - 1:2
**offhand** [1] - 16:3
**Official** [1] - 1:24
**old** [1] - 22:10
**once** [5] - 4:15, 13:14, 28:5, 28:7, 33:13
**one** [13] - 4:11, 11:4, 12:1, 15:8, 18:4, 18:8, 20:19, 21:2,

22:19, 23:12, 32:22, 37:9, 37:17
**ones** [1] - 22:22
**ongoing** [3] - 10:15, 10:22, 15:24
**opening** [1] - 12:10
**operate** [2] - 7:9, 7:19
**opinion** [4] - 20:1, 23:23, 34:25, 35:22
**opponents** [1] - 18:16
**opportunity** [1] - 14:15
**oral** [1] - 19:24
**order** [1] - 35:5
**ordinary** [1] - 31:11
**original** [1] - 38:6
**otherwise** [2] - 14:2, 16:19
**ought** [1] - 36:3
**outcome** [1] - 31:3
**outset** [1] - 37:11
**outside** [1] - 5:21
**own** [4] - 4:5, 4:25, 9:16, 13:25
**owned** [1] - 30:12
**owner** [8] - 12:16, 13:3, 13:5, 13:11, 13:12, 13:19, 13:20, 13:22
**owners** [1] - 31:1
**owns** [2] - 30:19

## P

**p.m** [3] - 1:12, 3:4, 38:11
**page** [3] - 26:10, 34:20, 35:6
**pages** [1] - 34:3
**paid** [1] - 31:15
**Palmer** [3] - 14:15, 14:18, 26:23
**Palmer's** [1] - 14:13
**papers** [3] - 14:11, 16:1, 25:5
**parent** [1] - 30:17
**part** [1] - 12:10
**particular** [4] - 18:3, 28:20, 28:22, 29:19
**parties** [8] - 5:10, 5:23, 7:7, 11:7, 17:17, 28:14, 29:5, 29:10
**parties'** [1] - 7:18
**party** [13] - 10:6, 12:12, 12:19, 17:13, 20:2, 24:18, 25:2, 26:18, 27:1, 27:5, 29:17, 32:18
**passes** [1] - 28:23

**past** [1] - 35:17
**patent** [35] - 4:8, 4:11, 4:17, 4:19, 6:3, 11:8, 11:23, 12:2, 12:8, 12:11, 12:16, 13:3, 13:5, 13:11, 13:12, 13:19, 13:20, 13:22, 13:25, 15:1, 15:2, 17:1, 17:23, 18:18, 20:3, 20:12, 21:16, 22:9, 23:1, 24:12, 24:19, 25:5, 30:10, 30:11, 32:24
**patents** [11] - 4:7, 4:11, 5:6, 5:12, 5:16, 5:17, 7:16, 13:22, 13:23, 35:24
**pending** [2] - 15:15, 36:4
**people** [1] - 12:6
**percent** [2] - 30:12, 30:20
**percentage** [1] - 31:15
**performance** [3] - 6:23, 7:1, 31:20
**perhaps** [1] - 35:25
**period** [2] - 13:6, 33:5
**phone** [1] - 3:17
**phrase** [1] - 23:17
**pig** [1] - 27:2
**pike** [1] - 20:16
**plaintiff** [19] - 4:2, 10:19, 10:20, 16:16, 17:24, 18:8, 18:10, 18:18, 20:1, 20:3, 20:8, 20:9, 21:24, 23:3, 23:18, 24:5, 24:14, 25:9, 37:16
**plaintiffs** [8] - 3:14, 8:2, 10:18, 11:15, 23:24, 24:2, 25:6, 25:8
**Plaintiffs** [2] - 1:6, 2:5
**plaintiffs'** [1] - 3:24
**play** [3] - 4:22, 4:23, 4:24
**pleases** [1] - 14:3
**pocket** [1] - 31:10
**point** [11] - 16:23, 18:24, 19:7, 22:12, 25:15, 26:25, 27:18, 32:22, 34:2, 34:23, 34:24
**pointed** [3] - 17:5, 18:3, 18:12
**pondering** [1] - 9:24
**pool** [9] - 30:13, 30:14, 30:16, 30:18, 30:19, 31:16, 31:20
**pools** [1] - 30:18

**portfolio** [3] - 15:2, 25:5, 30:10
**position** [6] - 4:1, 4:6, 8:20, 23:21, 30:25, 37:12
**possesses** [1] - 17:13
**possible** [1] - 35:17
**possibly** [2] - 12:13, 35:24
**potentially** [1] - 15:12
**practice** [2] - 20:7, 25:12
**practicing** [1] - 24:12
**preceded** [1] - 38:6
**precise** [3] - 9:9, 18:19, 27:11
**prejudice** [6] - 5:24, 9:14, 9:19, 10:16, 10:22
**prejudicial** [1] - 10:10
**pretrial** [1] - 15:13
**pretty** [4] - 23:7, 31:25, 33:8, 36:24
**prevent** [1] - 8:5
**primarily** [1] - 12:15
**Prince** [1] - 3:18
**PRINCE** [1] - 2:2
**problem** [7] - 6:20, 6:22, 17:9, 23:21, 25:15, 36:10, 36:13
**procedural** [4] - 27:19, 29:22, 32:23, 32:25
**proceed** [1] - 34:14
**proceeds** [1] - 34:15
**produce** [1] - 9:5
**Productions** [1] - 22:23
**profess** [1] - 6:16
**professes** [1] - 7:20
**profession** [2] - 20:10, 20:15
**prolific** [1] - 4:11
**pronounced** [1] - 23:2
**proper** [2] - 10:4, 10:6
**properly** [1] - 6:5
**protect** [4] - 7:5, 26:6, 29:15, 29:24
**protection** [1] - 29:17
**prove** [1] - 8:4
**provide** [1] - 29:16
**provided** [2] - 5:20, 15:7
**provision** [1] - 4:14
**provisions** [1] - 29:16
**prudential** [1] - 32:9
**public** [2] - 5:22, 13:24
**purported** [1] - 4:20

**purpose** [5] - 29:4, 29:5, 29:7, 36:2
**purposes** [1] - 27:14
**pursuant** [1] - 10:2
**push** [1] - 20:11
**put** [3] - 8:5, 29:2, 37:10
**puts** [1] - 29:14

## Q

**QUARLES** [1] - 2:11
**Quarles** [2] - 3:11, 3:22
**questions** [4] - 16:15, 20:13, 21:1, 24:23
**quick** [1] - 36:25
**quoted** [3] - 18:5, 18:19, 20:17
**quoting** [2] - 34:19

## R

**raised** [1] - 15:19
**rather** [1] - 25:10
**re** [1] - 19:17
**re-examined** [1] - 19:17
**reach** [1] - 19:9
**read** [5] - 20:16, 32:13, 32:21, 35:19, 36:24
**reading** [2] - 19:21, 32:24
**reads** [1] - 25:25
**ready** [1] - 37:5
**really** [2] - 26:20, 26:25
**reason** [2] - 19:11, 26:9
**reasonable** [4] - 26:3, 26:4, 26:13, 28:11
**reasons** [1] - 19:17
**recently** [2] - 14:18, 34:16
**recognize** [1] - 19:12
**reconsideration** [1] - 15:11
**record** [3] - 36:8, 36:19, 36:20
**records** [1] - 5:23
**recurrence** [1] - 5:18
**redressed** [1] - 18:1
**referring** [1] - 32:23
**refile** [2] - 13:16, 37:23
**refiled** [1] - 37:24
**regarding** [1] - 36:9
**regular** [1] - 29:20
**relationship** [1] - 4:19

**relevance** [2] - 21:10, 21:14
**relevant** [17] - 8:17, 9:6, 9:8, 9:10, 9:12, 9:14, 9:20, 9:23, 9:24, 10:13, 10:15, 10:20, 10:23, 10:25, 11:3, 21:19, 21:20
**relinquish** [2] - 7:12, 12:6
**relinquished** [1] - 7:3
**remanded** [1] - 15:22
**remark** [1] - 12:10
**remedy** [1] - 37:20
**remember** [2] - 20:7, 22:22
**removes** [1] - 33:19
**replacing** [2] - 25:7, 25:8
**Reporter** [1] - 1:24
**representation** [1] - 5:8
**representations** [1] - 5:14
**represented** [3] - 5:5, 5:11, 5:20
**request** [1] - 25:11
**requested** [1] - 14:5
**required** [2] - 5:1, 5:3
**requirement** [1] - 6:10
**resolve** [1] - 17:16
**resolved** [3] - 17:15, 19:7, 37:22
**respect** [4] - 11:14, 12:18, 20:25, 32:20
**responding** [1] - 10:20
**response** [3] - 25:14, 25:16, 36:16
**responses** [1] - 9:5
**result** [3] - 15:11, 17:18, 30:25
**revenue** [13] - 4:13, 5:2, 5:3, 5:4, 5:10, 5:15, 5:18, 6:10, 7:15, 7:17, 7:22, 32:25, 33:4
**rights** [32] - 4:25, 6:4, 6:7, 7:12, 8:2, 12:17, 13:17, 13:21, 14:1, 17:13, 21:4, 21:16, 21:20, 21:25, 22:3, 22:7, 22:15, 22:16, 23:1, 23:14, 23:15, 23:19, 24:1, 24:3, 24:6, 27:1, 29:1, 33:20, 34:10, 35:13, 35:15, 35:24
**Rite** [1] - 22:22
**Rite-Hite** [1] - 22:22

**roll** [1] - 3:7
**royalties** [2] - 18:10, 24:5
**royalty** [1] - 7:25
**royalty-free** [1] - 7:25
**rule** [1] - 20:19
**Rule** [2] - 9:20, 25:13
**ruled** [1] - 18:16
**ruling** [1] - 14:14
**run** [1] - 31:21

## S

**S.A** [2] - 1:5, 4:5
**sake** [2] - 8:12, 9:2
**sanction** [2] - 36:2, 36:12
**sanctions** [1] - 36:12
**satisfaction** [6] - 19:3, 26:1, 26:3, 26:4, 26:14, 28:12
**satisfied** [2] - 26:21, 29:1
**satisfies** [1] - 18:20
**satisfy** [1] - 18:6
**school** [1] - 36:6
**seal** [1] - 14:17
**SEAN** [1] - 1:19
**Sean** [1] - 3:16
**second** [4] - 7:8, 21:2, 34:20, 37:10
**section** [1] - 35:10
**Section** [3] - 7:17, 33:8, 35:10
**secure** [3] - 6:14, 7:9, 7:10
**secured** [1] - 6:21
**see** [1] - 16:6
**send** [1] - 16:10
**sense** [3] - 29:3, 29:10, 33:7
**separate** [1] - 30:12
**served** [2] - 5:6, 29:4
**set** [3] - 4:25, 11:6, 30:2
**setting** [1] - 20:18
**share** [1] - 31:7
**sharing** [6] - 4:13, 5:4, 5:10, 6:10, 7:17, 32:25
**shell** [1] - 35:25
**shops** [1] - 4:12
**shortfall** [1] - 27:15
**shoulder** [1] - 33:22
**show** [4] - 11:4, 11:5, 11:9, 17:25
**shown** [1] - 6:9
**shrug** [1] - 33:21
**sides** [1] - 17:4

**signed** [1] - 5:5
**significant** [1] - 4:13
**Significant** [1] - 30:12
**Silicon** [1] - 23:18
**similar** [1] - 14:12
**similarly** [2] - 4:22, 32:13
**simply** [3] - 12:23, 25:10, 36:14
**single** [2] - 19:15, 35:16
**situation** [4] - 13:13, 20:8, 20:11, 20:18
**situations** [1] - 24:11
**six** [2] - 5:23, 14:2
**slate** [1] - 7:21
**SNYDER** [37] - 2:11, 3:21, 8:10, 8:21, 9:12, 9:23, 10:3, 10:9, 10:15, 10:25, 11:3, 11:12, 11:25, 12:9, 13:5, 13:8, 13:10, 13:19, 14:10, 14:24, 16:2, 16:6, 16:14, 25:4, 31:25, 32:4, 33:10, 33:17, 34:22, 37:2, 37:5, 37:7, 37:17, 37:22, 38:2, 38:7, 38:10
**Snyder** [2] - 3:11, 3:22
**so-called** [1] - 34:17
**sometimes** [4] - 4:8, 25:9, 25:10, 36:18
**sorry** [4] - 9:23, 10:25, 17:6, 34:20
**sort** [2] - 30:18, 33:21
**sounds** [2] - 32:6, 32:21
**south** [1] - 29:15
**specific** [1] - 18:5
**spell** [1] - 8:12
**stage** [2] - 11:10, 11:17
**stake** [1] - 30:6
**standard** [2] - 10:1, 25:12
**standing** [43] - 3:25, 8:7, 8:15, 9:15, 11:16, 11:23, 12:1, 15:14, 15:18, 17:1, 17:7, 17:22, 17:23, 18:7, 18:21, 20:3, 20:5, 20:9, 20:12, 20:20, 20:22, 21:11, 23:20, 24:15, 25:15, 25:17, 32:9, 32:15, 32:19, 34:5, 34:7, 34:8, 34:12, 34:14, 34:15, 34:17, 35:1, 35:2, 35:8, 35:11,

37:15, 37:25
**stands** [2] - 6:18, 9:16
**Star** [36] - 16:25, 17:3, 17:18, 18:6, 18:20, 19:9, 19:12, 19:13, 19:21, 19:22, 20:24, 21:3, 21:4, 21:6, 21:10, 21:13, 22:18, 23:17, 23:20, 23:23, 24:1, 24:4, 24:6, 24:12, 24:23, 32:6, 32:7, 34:3, 34:4, 34:9, 34:11, 34:13, 35:7, 35:13, 35:19
**start** [4] - 3:8, 20:19, 22:22, 23:8
**starts** [1] - 34:18
**state** [1] - 31:2
**STATES** [1] - 1:1
**states** [3] - 6:3, 7:18, 21:15
**statutory** [7] - 21:4, 21:7, 32:9, 32:15, 34:15, 34:17, 35:2
**stay** [1] - 15:7
**stayed** [1] - 15:15
**step** [1] - 9:25
**steps** [7] - 27:19, 29:22, 29:23, 30:1, 32:23, 33:1, 33:5
**stick** [1] - 23:6
**still** [6] - 13:2, 19:6, 20:3, 26:12, 31:5
**stipulations** [1] - 5:24
**stockholder** [1] - 30:22
**stream** [1] - 5:18
**strict** [1] - 31:13
**strictly** [1] - 34:7
**Subheading** [1] - 35:7
**subject** [5] - 5:7, 5:12, 10:21, 16:21, 34:18
**sublicense** [12] - 6:2, 7:3, 7:5, 7:7, 7:25, 12:3, 18:17, 20:2, 28:15, 32:17, 33:20, 35:18
**sublicenses** [2] - 4:15, 4:25
**sublicensing** [2] - 6:4, 6:7
**submission** [2] - 4:4, 18:12
**submit** [1] - 16:7
**submits** [1] - 6:15
**submitted** [6] - 17:3, 17:4, 18:4, 19:2, 19:22, 24:7
**subsequent** [2] - 6:14, 7:13, 15:10

**substance** [1] - 14:16
**substantial** [5] - 17:13, 21:20, 21:24, 22:7, 22:15
**substantially** [2] - 22:15, 23:1
**substitute** [1] - 10:3
**substitutes** [1] - 25:10
**substituting** [1] - 36:15
**substitution** [1] - 10:11
**successful** [1] - 25:9
**sue** [3] - 5:21, 11:22, 12:1
**sued** [1] - 13:12
**suffer** [1] - 14:3
**suffered** [3] - 4:2, 8:3, 8:7
**suffers** [1] - 17:25
**sufficient** [1] - 18:11
**sufficiently** [1] - 12:3
**suggest** [1] - 36:9
**suggesting** [1] - 27:4
**suing** [1] - 21:24
**suit** [6] - 11:24, 11:25, 13:14, 13:15, 17:22, 35:24, 37:16, 37:17
**summary** [1] - 8:20
**support** [1] - 19:23
**suppose** [2] - 27:18, 29:21
**supposed** [2] - 10:7, 22:13
**Supreme** [4] - 17:6, 17:24, 19:14, 34:16
**suspect** [1] - 31:22
**suspects** [1] - 35:23
**swimmingly** [1] - 30:3

## T

**talks** [2] - 21:8, 34:16
**targets** [3] - 27:13, 29:19, 29:20
**Telephone** [1] - 1:13
**telephone** [2] - 3:3, 38:11
**term** [2] - 15:13, 24:4
**terminate** [1] - 6:25
**terms** [7] - 6:14, 6:24, 8:14, 9:10, 12:21, 33:24
**test** [1] - 18:11
**testimony** [2] - 14:14, 29:10
**Textile** [1] - 22:23
**THE** [70] - 1:1, 1:2, 3:6, 3:13, 3:19, 8:8, 8:11, 8:23, 9:20,

9:25, 10:7, 10:13, 10:23, 11:2, 11:11, 11:20, 12:5, 13:4, 13:7, 13:9, 13:18, 14:5, 14:21, 15:25, 16:4, 16:9, 16:16, 21:2, 21:9, 21:18, 22:1, 22:6, 22:12, 22:20, 23:5, 23:14, 24:21, 24:25, 25:3, 25:20, 25:22, 26:2, 26:5, 26:12, 27:8, 27:23, 28:5, 28:9, 28:13, 28:16, 29:7, 30:6, 31:4, 31:24, 32:2, 33:7, 33:11, 33:25, 34:11, 34:23, 35:9, 35:21, 36:22, 37:4, 37:6, 37:9, 37:19, 38:1, 38:5, 38:8
**thee** [1] - 36:19
**themselves** [2] - 23:25, 24:2
**therefore** [2] - 37:14, 37:15
**third** [5] - 12:18, 12:19, 20:2, 24:18, 32:17
**three** [3] - 19:25, 24:17, 30:3
**threshold** [1] - 34:13
**throughout** [1] - 19:16
**Thursday** [1] - 1:12
**titled** [1] - 35:10
**today** [1] - 4:4
**tomorrow** [1] - 37:23
**touch** [1] - 32:5
**traced** [1] - 17:25
**transfer** [4] - 14:2, 22:14, 22:25, 32:16
**transferred** [2] - 25:5, 30:11
**transfers** [1] - 20:21
**treated** [1] - 17:12
**triggered** [1] - 4:15
**triggers** [1] - 6:5
**troubled** [3] - 9:2, 12:5, 12:13
**true** [5] - 5:9, 19:1, 20:10, 21:12, 28:21
**trying** [6] - 8:24, 21:3, 21:9, 24:9, 29:8, 36:2
**TUNNELL** [1] - 2:7
**turn** [1] - 36:23
**turned** [2] - 6:4, 6:7
**two** [7] - 8:12, 12:17, 19:24, 21:13, 30:2, 32:22, 37:24

**TYE** [1] - 2:2
**Tye** [1] - 3:18

## U

**U.S.D.C.J** [1] - 1:15
**ulterior** [1] - 36:9
**umbrella** [1] - 23:24
**unambiguous** [1] - 28:17
**under** [16] - 7:9, 7:16, 8:1, 10:14, 10:24, 14:17, 18:19, 23:24, 24:1, 24:6, 25:12, 27:19, 33:23, 35:6, 37:24
**undermined** [2] - 12:3
**undermines** [1] - 12:19
**unfettered** [2] - 20:2, 24:17
**UNILOC** [2] - 1:4
**uniloc** [1] - 30:11
**Uniloc** [64] - 3:16, 4:5, 4:10, 4:12, 4:16, 4:17, 4:20, 4:21, 5:1, 5:2, 5:5, 5:11, 5:19, 5:25, 6:6, 6:8, 6:9, 6:12, 6:13, 6:15, 6:18, 6:19, 6:24, 7:1, 7:22, 8:1, 8:5, 11:7, 11:17, 12:11, 15:5, 16:18, 17:21, 18:13, 23:18, 25:2, 25:6, 25:8, 25:17, 26:6, 26:10, 26:25, 27:4, 29:12, 30:11, 30:19, 30:20, 30:25, 31:1, 31:10, 31:12, 34:9, 35:15, 35:16, 35:24, 35:25, 36:10, 36:14, 36:21, 37:15
**Uniloc's** [11] - 4:5, 5:15, 6:20, 6:23, 7:9, 7:14, 8:7, 12:4, 15:1, 35:23
**unique** [1] - 17:23
**UNITED** [1] - 1:1
**unless** [3] - 16:19, 21:1, 34:2
**unreasonable** [1] - 26:7
**unsophisticated** [1] - 12:12
**up** [13] - 5:18, 8:5, 9:21, 13:21, 15:16, 17:15, 20:18, 22:11, 24:24, 26:9, 30:2, 31:10, 31:21
**upended** [1] - 17:1

**upfront** [1] - 27:25
**upsets** [1] - 19:18
**USA** [6] - 1:4, 4:17, 4:21, 5:25, 12:4, 17:21
**USA's** [1] - 4:20
**uses** [3] - 23:20, 24:4, 24:12

## V

**Valerie** [1] - 1:24
**valid** [3] - 5:7, 5:12, 5:17
**validity** [2] - 5:8, 5:13
**various** [2] - 29:14, 35:24
**vein** [1] - 32:11
**versus** [2] - 20:6, 32:20
**view** [1] - 26:17
**viewed** [1] - 26:18
**viewing** [1] - 32:7
**views** [1] - 7:20
**virtually** [1] - 20:2
**voice** [1] - 25:18
**vs** [1] - 1:7

## W

**wait** [6] - 14:21, 20:10, 22:20, 25:14, 34:19
**waited** [1] - 11:5
**waive** [1] - 7:11
**waived** [2] - 6:13, 28:25
**waiver** [2] - 7:19, 32:20
**wants** [2] - 36:11, 36:14
**wealthy** [1] - 30:13
**whole** [2] - 5:6, 7:1
**WiAV** [3] - 22:22, 23:3
**Wilmington** [1] - 1:11
**windfall** [1] - 31:8
**winning** [1] - 6:18
**wiping** [1] - 7:21
**Wisconsin** [1] - 2:12
**word** [3] - 19:6, 24:10, 28:18
**works** [1] - 27:23
**Wright** [1] - 9:21
**writing** [1] - 6:13

## Y

**years** [2] - 30:3, 37:24
**York** [2] - 7:10, 33:23
**younger** [1] - 19:12