# EXHIBIT D

EXECUTION

CONFORMED REVENUE SHARING AND NOTE AND WARRANT PURCHASE AGREEMENT

(UNILOC USA, INC.,
UNILOC LUXEMBOURG S.A.,
UNILOC CORPORATION PTY LIMITED, and
D/A INVESTMENT HOLDINGS LLC)

DATED AS OF DECEMBER 30, 2014

AS AMENDED BY:
FIRST AMENDMENT TO REVENUE SHARE AND NOTE AND WARRANT PURCHASE AGREEMENT, DATED AS OF FEBRUARY 24, 2015
SECOND AMENDMENT TO REVENUE SHARE AND NOTE AND WARRANT PURCHASE AGREEMENT, DATED AS OF MAY 27, 2016
THIRD AMENDMENT TO REVENUE SHARE AND NOTE AND WARRANT PURCHASE AGREEMENT, DATED AS OF MAY 15, 2017

62250363_5

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY                    UNILOC_APPLE_2017_18279

## TABLE OF CONTENTS

ARTICLE I DEFINITIONS ............................................................................................................. 1
    1.1.    Certain Defined Terms.................................................................................................. 1
    1.2.    Other Interpretative Provisions .................................................................................... 1

ARTICLE II CLOSING AND TERMS OF THE REVENUE STREAM AND NOTES ............. 2
    2.1.    The Revenue Stream .................................................................................................... 2
    2.2.    The Notes ..................................................................................................................... 3
    2.3.    The Warrants ................................................................................................................ 6
    2.4.    Monetization Revenues................................................................................................ 6
    2.5.    Purchase Price Allocation ............................................................................................ 7
    2.6.    Taxes ............................................................................................................................ 8
    2.7.    Manner and Time of Payment..................................................................................... 9
    2.8.    Patent License .............................................................................................................. 9

ARTICLE III CONDITIONS PRECEDENT ................................................................................. 9
    3.1.    Conditions to Closing .................................................................................................. 9
    3.2.    Conditions to Subsequent Issuance of Notes ............................................................ 11

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF THE COMPANY .................. 12
    4.1.    Organization and Business......................................................................................... 12
    4.2.    Qualification .............................................................................................................. 12
    4.3.    Operations in Conformity with Law, etc .................................................................. 12
    4.4.    Authorization and Non-Contravention ..................................................................... 12
    4.5.    Intellectual Property................................................................................................... 12
    4.6.    Material Agreements ................................................................................................. 13
    4.7.    Margin Regulations ................................................................................................... 13
    4.8.    Investment Company Act ......................................................................................... 13
    4.9.    USA PATRIOT Act, FCPA and OFAC ................................................................... 13
    4.10.    No Default ................................................................................................................ 14
    4.11.    Binding Effect.......................................................................................................... 14
    4.12.    Disclosure ................................................................................................................ 14

ARTICLE V REPRESENTATIONS AND WARRANTIES OF THE PURCHASERS
AND COLLATERAL AGENT ..................................................................................................... 14
    5.1.    Authority ................................................................................................................... 14
    5.2.    Binding Effect ........................................................................................................... 14
    5.3.    Investment Intent ....................................................................................................... 15
    5.4.    Experience of the Purchaser...................................................................................... 15
    5.5.    Access to Information ............................................................................................... 15
    5.6    Reliance on Exemptions ........................................................................................... 15

ARTICLE VI COVENANTS ........................................................................................................ 16
    6.1.    Taxes and Other Charges .......................................................................................... 16
    6.2.    Conduct of Monetization Activities; Minimum Monetization Revenues............. 16
    6.3.    Maintenance of Existence ......................................................................................... 16

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY    UNILOC_APPLE_2017_18280

-ii-

6.4. Compliance with Legal Requirements ................................................................. 16
6.5. Notices; Reports .................................................................................................. 16
6.6. Information Rights .............................................................................................. 17
6.7. Indebtedness ........................................................................................................ 18
6.8. Liens .................................................................................................................... 18
6.9. Management of Patents and Patent Licenses ...................................................... 18
6.10. Minimum Liquidity ............................................................................................. 19
6.11. Cash Collateral Account ..................................................................................... 20
6.12. Further Assurances .............................................................................................. 20
6.13. Confidentiality .................................................................................................... 21
6.14. Use of Proceeds .................................................................................................. 22
6.15. Restricted Payments ............................................................................................ 22
6.16. Third Amendment Due Authorization and Legal Opinions ............................... 22

ARTICLE VII EVENTS OF DEFAULT ............................................................................... 22
7.1. Events of Default ................................................................................................ 22
7.2. Remedies Following an Event of Default ........................................................... 24
7.3. Annulment of Defaults ........................................................................................ 25
7.4. Waivers ............................................................................................................... 26

ARTICLE VIII COLLATERAL AGENT .............................................................................. 26
8.1. Appointment of Collateral Agent ........................................................................ 26
8.2. Collateral ............................................................................................................. 26
8.3. Collateral Agent's Resignation ........................................................................... 27
8.4. Concerning the Collateral Agent ........................................................................ 27

ARTICLE IX GENERAL PROVISIONS .............................................................................. 28
9.1. Expenses ............................................................................................................. 28
9.2. Indemnity ............................................................................................................ 29
9.3. Notices ................................................................................................................ 30
9.4. Amendments, Consents, Waivers, etc. ............................................................... 30
9.5. No Strict Construction ........................................................................................ 31
9.6. Certain Acknowledgments .................................................................................. 31
9.7. Venue; Service of Process; Certain Waivers ...................................................... 31
9.8. WAIVER OF JURY TRIAL .............................................................................. 31
9.9. Interpretation; Governing Law; etc. ................................................................... 32
9.10. Successors and Assigns ....................................................................................... 32
9.11. Tax Treatment ..................................................................................................... 33

APPENDICES, SCHEDULES AND EXHIBITS

Appendix I            Definitions

Schedule 2.1          Purchasers

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY                        UNILOC_APPLE_2017_18281

Schedule 2.2         Third Party Agreements Related to Monetization Expenses
Schedule 2.7         Wire Transfer Instructions
Schedule 4.1         Company Organization
Schedule 4.5(a)      Existing Licenses
Schedule 4.5(b)      Title Issues
Schedule 4.6         Material Agreements
Schedule 6.7         Existing Indebtedness
Schedule 9.3         Notices
Schedule I(a)        Patents
Schedule I(b)        Term C Priority Collateral

Exhibit A            Form of Note
Exhibit B            Control Agreement
Exhibit C            Form of Certificate (Payments to Cash Collateral Account)
Exhibit D            Assignment and Assumption Agreement
Exhibit E            Patent License Agreement
Exhibit F            Patent Security Agreement
Exhibit G            Security Agreement
Exhibit H            Form of Warrant Agreement
Exhibit I            Newco LLC Agreement

62250363_5

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY                                    UNILOC_APPLE_2017_18282

### REVENUE SHARING AND NOTE AND WARRANT PURCHASE AGREEMENT

This REVENUE SHARING AND NOTE AND WARRANT PURCHASE AGREEMENT (this "Agreement") is dated as of December 30, 2014 by and among Uniloc USA, Inc. a Texas corporation ("Issuer"), Uniloc Luxembourg S.A., a public limited liability company (*société anonyme*), incorporated under the laws of the Grand Duchy of Luxembourg, with registered office at 14, rue Edward Steichen, L-2540 Luxembourg, Grand Duchy of Luxembourg and registered with the Luxembourg Register of Commerce and Companies (R.C.S. Luxembourg) under number B 159.161 ("Uniloc Lux"), Uniloc Corporation PTY Limited ("Uniloc Aus") and D/A Investment Holdings LLC (together with Uniloc Lux and Uniloc Aus, the "Guarantors", and, collectively, with Issuer, the "Company" and each, a "Company"), Fortress Credit Co LLC as collateral agent (the "Collateral Agent"), and each Person listed on Schedule 2.1 hereto (the "Purchasers").

### RECITALS

WHEREAS, the Purchasers wish to acquire, and Uniloc USA, Inc. has agreed to grant, issue and sell to the Purchasers, (i) an interest in certain of the Company's future revenues from its patent portfolio (the "Revenue Stream") and (ii) up to $26,000,000 in aggregate original principal amount of the Issuer's term notes (the "Notes") in the form of Exhibit A hereto, in each case, subject to the terms of this Agreement;

WHEREAS, the Purchasers have agreed to purchase from Uniloc Lux and Uniloc Lux has agreed to issue and sell to the Purchasers warrants for 1.5% of the fully diluted equity of Uniloc Lux (the "Warrants") in the form of Exhibit H hereto, subject to the terms of the Agreement;

NOW THEREFORE, in consideration of the mutual agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

### ARTICLE I
### DEFINITIONS

1.1.   <u>Certain Defined Terms</u>.  Capitalized terms used in this Agreement and not otherwise defined shall have the meanings set forth in Appendix I.

1.2.   <u>Other Interpretative Provisions</u>.  Unless otherwise specified, all references to "$", "cash", "dollars" or similar references shall mean U.S. dollars, paid in cash or other immediately available funds. The definitions set forth in this Agreement are equally applicable to both the singular and plural forms of the terms defined.  The words *"hereof"*, *"herein"*, and *"hereunder"* and words of like import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement.  All references to time of day herein are references to New York, New York time (daylight or standard, as applicable) unless otherwise specifically provided.  Where the character or amount of any asset or liability or item of income or expense is required to be determined or any consolidation or other accounting computation is required to be made for the purposes of this Agreement, it shall be done in accordance with GAAP except where such principles are inconsistent with the

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY                                    UNILOC_APPLE_2017_18283

the Company shall remit 200% of the amount described in the foregoing clause (y) to the relevant taxation authority or other authority in accordance with applicable law.  Within 30 days after the date of any payment of such, the Company shall furnish to the Purchasers the original or certified copy of a receipt evidencing payment thereof.  For the avoidance of doubt, the intent of the foregoing provision is to limit the Company's obligation to gross up any withholding required on distributions on the Warrants or Warrant Shares to 50% of the amount of any such required withholding.  In the event that it appears that any withholding will be required on payments on the Warrants or Warrant Shares, the parties agree to use commercially reasonable efforts to work together in good faith to arrive at an alternative structure that eliminates or reduces any such withholding requirement, with the overall goal of minimizing the cost to the Purchasers and the Company associated with any such withholding and the Company's obligations with respect thereto.

The Company shall timely indemnify any Purchaser against any cost, loss or liability that such Purchaser incurs in relation to the payment of stamp, registrations or similar taxes arising from the execution, delivery or enforcement of, or otherwise with respect to, the Documents.

2.7.  <u>Manner and Time of Payment</u>.  All payments to the Purchasers shall be made by wire transfer or other same day funds, without set off, not later than 2:00 p.m. on the day such payment is due, in accordance with the payment instructions set forth on <u>Schedule 2.7</u>.

2.8.  <u>Patent License</u>.  Effective as of the Closing Date, the Company shall grant to the Collateral Agent, for the benefit of the Secured Parties, a non-exclusive, royalty free, license (including the right to grant sublicenses) with respect to the Patents, which shall be evidenced by, and reflected in, the Patent License Agreement.  The Collateral Agent and the Secured Parties agree that the Collateral Agent shall only use such license following an Event of Default.

## ARTICLE III
## CONDITIONS PRECEDENT

3.1.  <u>Conditions to Closing</u>.  The obligation of each Purchaser to purchase its respective pro rata share of the Revenue Stream, the Notes and the Warrants on the Closing Date is subject to the satisfaction of the conditions set forth in this <u>Section 3.1</u>:

3.1.1.  <u>Deliveries.</u>  Each Company (and each of its Subsidiaries, as applicable) shall have delivered to each Purchaser and the Collateral Agent fully executed (where applicable) copies of the following:

3.1.1.1.  this Agreement;

3.1.1.2.  the Notes;

3.1.1.3.  the Security Agreement;

3.1.1.4.  the Patent License Agreement;

3.1.1.5.  the Patent Security Agreement;

-9-

62250363_5

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY                                  UNILOC_APPLE_2017_18291

set forth herein in order to determine the availability of such exemptions and the eligibility of the Purchaser to acquire its Notes, the Revenue Stream and the Warrants.

## ARTICLE VI
## COVENANTS

Until all of the Company's obligations with respect to the Notes and the Revenue Stream, have been paid in full in cash, the Company shall comply with the covenants set forth in this Article VI.

6.1. <u>Taxes and Other Charges</u>.  The Company shall duly pay and discharge, or cause to be paid and discharged, before the same becomes in arrears, all taxes, assessments and other governmental charges imposed upon such Person and its properties, sales or activities, or upon the income or profits therefrom; *provided, however*, that any such tax, assessment, charge or claim need not be paid if the validity or amount thereof shall at the time be contested in good faith by appropriate proceedings and if such Person shall, in accordance with GAAP or applicable generally accepted accounting principles, have set aside on its books adequate reserves with respect thereto; *provided, further*, that the Company shall pay or bond, or cause to be paid or bonded, all such taxes, assessments, charges or other governmental claims immediately upon the commencement of proceedings to foreclose any Lien which may have attached as security therefor (except to the extent such proceedings have been dismissed or stayed).

6.2. <u>Conduct of Monetization Activities; Minimum Monetization Revenues</u>.

6.2.1.  The Issuer shall undertake its best efforts to diligently pursue the monetization of the Patents and shall provide regular updates to the Purchasers and their advisors, and shall consult with Purchasers and their advisors on request, as to such activities.

6.2.2.  From the Closing Date through December 31, 2016, the Company shall have received at least $20,000,000 in Actual Monetization Revenues.  As of March 31, 2017 and the last day of each fiscal quarter thereafter, the Company shall have received at least $20,000,000 in Actual Monetization Revenues during the four fiscal quarter period ending on such date.

6.3. <u>Maintenance of Existence</u>.  The Company shall do all things necessary to preserve, renew and keep in full force and effect and in good standing its legal existence and authority necessary to continue its business.

6.4. <u>Compliance with Legal Requirements</u>.  The Company shall comply in all material respects with all valid Legal Requirements applicable to it, except where compliance therewith shall at the time be contested in good faith by appropriate proceedings.

6.5. <u>Notices; Reports</u>.

6.5.1.  <u>Certain Notices</u>.  The Company shall, promptly following having notice or knowledge thereof, furnish to each of the Purchasers and such information as they may

-16-

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY    UNILOC_APPLE_2017_18298

reasonably request concerning the Company's Monetization Activities and Actual Monetization Revenues, including without limitation the following:

      6.5.1.1.   any dispute, litigation, investigation, suspension or any administrative or arbitration proceeding by or against the Company for an amount in excess of $500,000 or affecting the Company's ownership rights with respect to the Patents; and

      6.5.1.2.   promptly upon acquiring knowledge thereof, the existence of any Default or Event of Default, specifying the nature thereof and what action the Company has taken, is taking or proposes to take with respect thereto.

Each notice pursuant to this Section shall be accompanied by a statement by an Authorized Officer of the Company, on behalf of the Company, setting forth details of the occurrence referred to therein, and stating what action the Company or other Person proposes to take with respect thereto and at what time.  Each notice under <u>Section 6.5.1.2</u> shall describe with particularity any and all clauses or provisions of this Agreement or other Document that have been breached or violated.

    6.5.2.   <u>Certain Reports</u>.  The Issuer shall cause to be furnished to each of the Purchasers the following:

      6.5.2.1.   no later than the 15th day of every month, a report calculating in detail its Actual Monetization Revenues, in form and substance reasonably satisfactory to the Majority Purchasers;

      6.5.2.2.   copies of any demand, cease and desist or other similar letter and copies of any material filing in any litigation or arbitration relating to the Patents by or against the Company that is not subject to an "attorneys' eyes only" or other protective order, as soon as reasonably practical after receipt thereof or, in the case of any material letter sent or material filing made by the Company, which is not subject to an "attorneys' eyes only" or other protective order, as early as practical prior to the date such letter is to be sent or such filing is to be made;

      6.5.2.3.   promptly (and in any event within 10 Business Days) after execution thereof, copies of all judgments, settlement agreements or licenses with respect to the Patents; and

      6.5.2.4.   promptly (and in any event within 10 Business Days), such additional business, financial, corporate affairs and other information as the Majority Purchasers may from time to time reasonably request.

Subject to the preservation of any privilege, the Company shall authorize and direct any legal counsel or consultant engaged by it to discuss the status of the Company's Monetization Activities with the Purchasers and the Collateral Agent.

    6.6.   <u>Information Rights</u>.

-17-

62250363_5

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY                                    UNILOC_APPLE_2017_18299

Agreement made in accordance with Section 9.10.2, provided such prospective assignee or participant has agreed to be bound by the confidentiality provisions consistent with those set forth herein.

6.14. Use of Proceeds. The proceeds of the Notes shall be used to pay expenses of the Company's pursuant of Monetization Activities (or to reimburse the Company for the payment of such expenses), for growth capital, for working capital and for other general corporate purposes that are not in violation of this agreement.

6.15. Restricted Payments. No Company shall make, nor shall any Company permit any Subsidiary of such Company to make, directly or indirectly any Restricted Payment, except (i) Restricted Payments from a Subsidiary of a Company to such Company and (ii) Restricted Payments made out of Excess Liquidity. The applicable Company shall provide the Purchasers with not less than 10 Business Days prior written notice prior to making any Restricted Payment under clause (ii) above, which notice shall be accompanied by a certification setting forth the calculation of the Liquidity Reserve Amount and Excess Liquidity supporting such proposed Restricted Payment, in detail satisfactory to the Purchasers.

6.16. Third Amendment Due Authorization and Legal Opinions. Company shall deliver to the Collateral Agent and the Purchasers customary evidence of due authorization as well as legal opinions, in customary form and otherwise in form and substance reasonably satisfactory to the Collateral Agent and the Purchasers regarding the transactions contemplated by the Third Amendment to Revenue Sharing and Note and Warrant Purchase Agreement, dated as of May 15, 2017, no later than May 26, 2017.

## ARTICLE VII
## EVENTS OF DEFAULT

7.1. Events of Default. Each of the following events is referred to as an "Event of Default":

7.1.1. Payment. The Company shall fail to make any payment due hereunder within 3 Business Days of when such payment is due and payable.

7.1.2. Other Covenants. The Company shall (x) fail to perform or observe any of the covenants or agreements contained in Article VI or (y) fail to perform or observe any of the covenants or agreements elsewhere in this Agreement or in any other Document (other than those covenants or agreements specified in clause (x) above) such failure continues for thirty days after the earlier of (i) written notice to the Company by the Collateral Agent or any Purchaser of such failure or (ii) knowledge of the Company of such failure.

7.1.3. Representations and Warranties. Any representation or warranty of or with respect to the Company, pursuant to or in connection with any Document, or in any financial statement, report, notice, mortgage, assignment or certificate delivered by the Company so representing to the other parties hereto in connection herewith or therewith, shall be false in any material respect on the date as of which it was made.

-22-

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY                    UNILOC_APPLE_2017_18304

7.1.4. <u>Cross Default</u>. Prior to the Maturity Date, any event of default, after giving effect to any applicable grace, cure, or waiver period specified in the underlying document, with respect to any Indebtedness in excess of $500,000 of the Company that is on account of a default in any payment under such Indebtedness shall occur and be continuing.

7.1.5. <u>Liquidation; etc.</u> Any Company shall initiate any action to dissolve, liquidate or otherwise terminate its existence.

7.1.6. <u>Change of Control</u>. A Change of Control shall have occurred.

7.1.7. <u>Judgments</u>. A final judgment (a) which, with other outstanding final judgments against the Company, exceeds an aggregate of $500,000 shall be rendered against the Company or (b) which grants injunctive relief that results, or creates a material risk of resulting, in a Material Adverse Effect and in either case if (i) within 60 days after entry thereof (or such longer period permitted under the terms of such judgment), such judgment shall not have been discharged or execution thereof stayed pending appeal or (ii) within 60 days after the expiration of any such stay, such judgment shall not have been discharged.

7.1.8. <u>Bankruptcy, etc</u>. Any Company shall:

7.1.8.1. commence a voluntary case under the Bankruptcy Code or authorize, by appropriate proceedings of its board of directors or other governing body, the commencement of such a voluntary case;

7.1.8.2. (i) have filed against it a petition commencing an involuntary case under the Bankruptcy Code that shall not have been dismissed within 60 days after the date on which such petition is filed or (ii) file an answer or other pleading within such 60-day period admitting or failing to deny the material allegations of such a petition or seeking, consenting to or acquiescing in the relief therein provided or (iii) have entered against it an order for relief in any involuntary case commenced under the Bankruptcy Code;

7.1.8.3. seek relief as a debtor under any applicable law, other than the Bankruptcy Code, of any jurisdiction relating to the liquidation or reorganization of debtors or to the modification or alteration of the rights of creditors, or consent to or acquiesce in such relief;

7.1.8.4. have entered against it an order by a court of competent jurisdiction (i) finding it to be bankrupt or insolvent, (ii) ordering or approving its liquidation or reorganization as a debtor or any modification or alteration of the rights of its creditors or (iii) assuming custody of, or appointing a receiver or other custodian for, all or a substantial portion of its property; or

7.1.8.5. make an assignment for the benefit of, or enter into a composition with, its creditors, or appoint, or consent to the appointment of, or

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY                                  UNILOC_APPLE_2017_18305

suffer to exist a receiver or other custodian for, all or a substantial portion of its property.

    7.1.8.6.  Uniloc Lux shall have appointed:

(a) a liquidator, trustee in bankruptcy, judicial custodian, compulsory manager, receiver, administrator receiver, administrator or similar officer includes any:

    (i) *juge-commissaire* or insolvency receiver (*curateur*) appointed under the Luxembourg Code of Commerce;

    (ii) *liquidateur* appointed under Articles 141 to 151 (inclusive) of the law of August 10, 1915 on commercial companies, as amended;

    (iii) *juge-commissaire* or *liquidateur* appointed under Article 203 of the law of August 10, 1915 on commercial companies, as amended;

    (iv) *commissaire* appointed under the Grand-Ducal decree of 24 May 1935 on the controlled management regime or under Articles 593 to 614 (inclusive) of the Luxembourg Code of Commerce; and

    (v) *juge délégué* appointed under the Luxembourg act of 14 April 1886 on the composition to avoid bankruptcy, as amended;

(b) a winding-up, administration or dissolution includes, without limitation, bankruptcy (*faillite*), liquidation, composition with creditors (*concordat preventif de faillite*), moratorium or reprieve from payment (*sursis de paiement*) and controlled management (*gestion contrôlée*); and

(c) a person being unable to pay its debts includes that person being in a state of cessation of payments (*cessation de paiements*).

    7.1.9.  <u>Collateral</u>.  Any material provision of any Document shall for any reason cease to be valid and binding on or enforceable against the Company or the Company shall so state in writing or bring an action to limit its obligations or liabilities thereunder; or any Collateral Document shall for any reason (other than pursuant to the terms thereof) cease to create a valid security interest in the Collateral purported to be covered thereby or such security interest shall for any reason (other than the failure of the Collateral Agent or the Purchasers to take any action within its control) cease to be a perfected and first priority security interest subject only to Permitted Liens and such failure shall continue for thirty days after the earlier of (i) written notice to the Company by the Collateral Agent or any Purchaser of such failure or (ii) knowledge of the Company of such failure.

    7.2.  <u>Remedies Following an Event of Default</u>.  If any one or more Events of Default shall occur and be continuing, then in each and every such case:

    7.2.1.  <u>Specific Performance; Exercise of Rights</u>.  The Majority Purchasers (or the Collateral Agent, acting at the direction of the Majority Purchasers) may proceed to protect and enforce such party's rights by suit in equity, action at law and/or other appropriate proceeding, either for specific performance of any covenant or condition contained in any Document, or in aid of the exercise of any power granted in any

62250363_5

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY    UNILOC_APPLE_2017_18306

Document, including directing the Company to take any action requested by the Majority Purchasers (or the Collateral Agent, acting at the direction of the Majority Purchasers) in any Monetization Activity regarding the Patents;

    7.2.2.    <u>Acceleration</u>.  The Majority Purchasers may, by notice in writing to the Company, declare the remaining unpaid amount of the then-outstanding Notes, together with accrued and unpaid interest and fees thereon, and the balance of the Revenue Stream, to be immediately due and payable; *provided* that if a Bankruptcy Event of Default pursuant to <u>Section 7.1.8</u> shall have occurred, such amounts shall automatically become immediately due and payable; and provided, that in such event, the Company shall immediately and unconditionally be obligated to pay, as liquidated damages with respect to the Revenue Stream, the maximum amount of the Revenue Stream in full, in cash, i.e., the Issuer shall pay to the Purchasers in respect of the Revenue Stream $23,400,00, less any amounts previously applied to the Revenue Stream.

    7.2.3.    <u>Standstill</u>.  Upon notice in writing from the Majority Purchasers, the Company shall not enter into any new pledges, assignments, licenses, springing licenses, options, non-assertion agreements, earn-outs, monetization agreements, profit and revenue sharing arrangements, derivative interests, fee and recovery splitting agreements, registered user agreements, shop rights and covenants by the Company not to sue third persons with respect to any of the Patents; and

    7.2.4.    <u>Cumulative Remedies</u>.  To the extent not prohibited by applicable law which cannot be waived, each party's rights hereunder and under the other Documents shall be cumulative;

*provided* that, effective upon the Majority Purchasers (or the Collateral Agent, acting at the direction of the Majority Purchasers) enforcing any such rights or remedies under this Agreement or any other Document, or under applicable law, the Purchasers and the Collateral Agent shall (1) grant, and do hereby grant, to the Company a non-exclusive, royalty-free, world-wide license (with the right to sublicense to third parties under the Existing Licenses and the sale of proprietary products and any other licenses entered into in compliance with this Agreement) to the Patents, which license shall be non-revocable by any third party transferee or any other person or entity that acquires rights in the Patents (by foreclosure or otherwise) at any time following such exercise of rights or remedies, and (2)  require as a condition to the effectiveness of any such transfer or assignment (by foreclosure or otherwise) of the Patents or rights in the Patents, that the applicable transferee or assignee acknowledge and agree to the non-revocable grant to the Company of the perpetual license of the type described in the immediately preceding clause (1), which acknowledgement and agreement by such transferee or assignee shall be made in a writing, signed by a duly authorized officer of such transferee or assignee, made to and for the express benefit of the Company, and the original of which shall be delivered by the Purchasers or the Collateral Agent to the Company promptly following any such transfer or assignment.

    7.3.    <u>Annulment of Defaults</u>.  Once an Event of Default has occurred, such Event of Default shall be deemed to exist and be continuing for all purposes of this Agreement until the

62250363_5

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY    UNILOC_APPLE_2017_18307

earlier of (x) Majority Purchasers shall have waived such Event of Default in writing, (y) the Company shall have cured such Event of Default to the Majority Purchasers' reasonable satisfaction or the Company or such Event of Default otherwise ceases to exist, or (z) the Collateral Agent and the Purchasers or Majority Purchasers (as required by Section 9.4.1) have entered into an amendment to this Agreement which by its express terms cures such Event of Default, at which time such Event of Default shall no longer be deemed to exist or to have continued.  No such action by the parties hereto shall prevent the occurrence of, or effect a waiver with respect to, any subsequent Event of Default or impair any rights of the parties hereto upon the occurrence thereof.

7.4.    Waivers.  To the extent that such waiver is not prohibited by the provisions of applicable law that cannot be waived, the Company waives:

7.4.1.    all presentments, demands for performance, notices of nonperformance (except to the extent required by this Agreement), protests, notices of protest and notices of dishonor;

7.4.2.    any requirement of diligence or promptness on the part of the Purchasers in the enforcement of its rights under this Agreement;

7.4.3.    any and all notices of every kind and description which may be required to be given by any statute or rule of law; and

7.4.4.    any defense (other than indefeasible payment in full) which it may now or hereafter have with respect to its liability under this Agreement or with respect to the Obligations.

## ARTICLE VIII
## COLLATERAL AGENT

8.1.    Appointment of Collateral Agent.  Each of the Purchasers hereby appoints Fortress Credit Co LLC as Collateral Agent to act for them as collateral agent, to hold any pledged collateral and any other collateral perfected by perfection or control for the benefit of the Purchasers; *provided* that the rights of the Purchasers to direct the Collateral Agent and to receive proceeds of Collateral shall be prior to, and controlling of, any rights of the Purchasers.  Notwithstanding, but without limiting the foregoing, the Collateral Agent shall take direction from the Majority Purchasers and shall distribute any proceeds of the Collateral in accordance with Section 2.4, such that any proceeds of Term A/B Priority Collateral shall first be applied to satisfy the Obligations owing to the Term A/B Purchaser, as provided under Section 2.4.1, and the proceeds of Term C Priority Collateral shall first be applied to satisfy the Obligations owing to the Term C Purchaser as provided under Section 2.4.2, in each case, prior to being applied to the Obligations owing to the other Purchaser.

8.2.    Collateral.  The Collateral Agent shall act at the instruction of the Majority Purchasers with respect to providing any vote, consent or taking other action with respect to the Collateral.

62250363_5

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY                                   UNILOC_APPLE_2017_18308

Indemnitor; *provided further*, that with respect to any claim as to which the Indemnitee is controlling the defense, the Indemnitor will not be liable to any Indemnitee for any settlement of any claim pursuant to this Section 9.2 that is effected without its prior written consent, which consent shall not be unreasonably withheld.  To the extent that the undertaking to indemnify, pay and hold harmless set forth in this Section 9.2 may be unenforceable because it is violative of any law or public policy, the Company shall contribute the maximum portion which it is permitted to pay and satisfy under applicable law, to the payment and satisfaction of all Indemnified Liabilities incurred by the Indemnitees or any of them.  Notwithstanding anything to the contrary in this Agreement, no party shall be liable to the other party or any third party for any indirect, incidental, exemplary, special, punitive or consequential damages (including with respect to lost revenue, lost profits or savings or business interruption) of any kind or nature whatsoever suffered by the other party or any third party howsoever caused and regardless of the form or cause of action, even if such damages are foreseeable or such party has been advised of the possibility of such damages. The provisions of this Section 9.2 shall survive the repayment in full of the Notes and the termination of this Agreement.

   9.3. Notices.  All notices, demands or other communications to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and delivered via facsimile, email (in each case, followed promptly by delivery from a nationally recognized overnight courier) or a nationally recognized overnight courier.  Such notices, demands and other communications will be delivered or sent to the address indicated on Schedule 9.3 or such other address or to the attention of such other Person as the recipient party shall have specified by prior written notice to the sending party.  Any such communication shall be deemed to have been received when actually delivered or refused.

   9.4. Amendments, Consents, Waivers, etc.

     9.4.1. Amendments.  No amendment, modification, termination or waiver of any provision of this Agreement shall in any event be effective without the written consent of each of the Company, the Collateral Agent and the Majority Purchasers; *provided* that the consent of each affected Purchaser shall be required for any amendment that (i) waives or reduces any amounts owed to it under this Agreement or extends the date for payment of any amount hereunder, (ii) releases the Company or (iii) releases all or any material portion of the Collateral, except in connection with any Disposition of Patents to the extent permitted under Section 6.9.1.  Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given. No notice to or demand on the Company in any case shall entitle the Company to any further notice or demand in similar or other circumstances.  Any amendment, modification, termination, waiver or consent effected in accordance with this Section 9.4.1 shall be binding upon the holders of the Obligations at the time outstanding and each future holder thereof.

     9.4.2. Course of Dealing; No Implied Waivers.  No course of dealing between the Purchasers and the Company shall operate as a waiver of any Purchaser's rights under this Agreement or with respect to the Obligations.  In particular, no delay or omission on the part of any Purchaser in exercising any right under this Agreement or with respect to the Obligations shall operate as a waiver of such right or any other right hereunder or

-30-

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY  UNILOC_APPLE_2017_18312

thereunder. A waiver on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion.

9.5. No Strict Construction. The parties have participated jointly in the negotiation and drafting of this Agreement with counsel sophisticated in financing transactions. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Agreement.

9.6. Certain Acknowledgments. Each of the Company and the Purchasers acknowledges that:

9.6.1. it has been advised by counsel in the negotiation, execution and delivery of this Agreement; and

9.6.2. no joint venture is created hereby or otherwise exists by virtue of the transactions contemplated hereby or thereby among the Company and the Purchasers.

9.7. Venue; Service of Process; Certain Waivers. The Company and Purchaser:

9.7.1. irrevocably submit to the exclusive jurisdiction of any New York state court or federal court sitting in New York, New York, and any court having jurisdiction over appeals of matters heard in such courts, for the purpose of any suit, action or other proceeding arising out of or based upon this Agreement or the subject matter hereof or thereof;

9.7.2. waive to the extent not prohibited by applicable law that cannot be waived, and agree not to assert, by way of motion, as a defense or otherwise, in any such proceeding brought in any of the above-named courts, any claim that they are not subject personally to the jurisdiction of such court, that their property is exempt or immune from attachment or execution, that such proceeding is brought in an inconvenient forum, that the venue of such proceeding is improper, or that this Agreement, or the subject matter hereof or thereof, may not be enforced in or by such court;

9.7.3. consent to service of process in any such proceeding in any manner at the time permitted under the applicable laws of the State of New York and agree that service of process by registered or certified mail, return receipt requested, at the address specified in or pursuant to Section 9.3 is reasonably calculated to give actual notice; and

9.7.4. waive to the extent not prohibited by applicable law that cannot be waived any right to claim or recover in any such proceeding any special, exemplary, punitive or consequential damages.

9.8. WAIVER OF JURY TRIAL. TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW THAT CANNOT BE WAIVED, EACH COMPANY AND EACH PURCHASER WAIVES, AND COVENANTS THAT IT WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM OR PROCEEDING ARISING OUT OF

62250363_5

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY                                       UNILOC_APPLE_2017_18313

OR RELATING TO THIS AGREEMENT OR THE CONDUCT OF THE PARTIES HERETO, WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER IN CONTRACT, TORT OR OTHERWISE.  The Company acknowledges that it has been informed by the Purchasers that the foregoing sentence constitutes a material inducement upon which the Purchasers have relied and will rely in entering into this Agreement.  Any of the Company or Purchasers may file an original counterpart or a copy of this Agreement with any court as written evidence of the consent of the Company and Purchasers to the waiver of their rights to trial by jury.

       9.9.    <u>Interpretation; Governing Law; etc</u>.  All covenants, agreements, representations and warranties made in this Agreement or in certificates delivered pursuant hereto or thereto shall be deemed to have been relied on by each Purchaser, notwithstanding any investigation made by such Purchaser, and shall survive the execution and delivery to the Purchasers hereof and thereof.  The invalidity or unenforceability of any provision hereof shall not affect the validity or enforceability of any other provision hereof, and any invalid or unenforceable provision shall be modified so as to be enforced to the maximum extent of its validity or enforceability.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.  This Agreement and the Documents constitute the entire understanding of the parties with respect to the subject matter hereof and thereof and supersede all prior and contemporaneous understandings and agreements, whether written or oral.  This Agreement may be executed in any number of counterparts which together shall constitute one instrument.  This Agreement, and any issue, claim or proceeding arising out of or relating to this Agreement or the Documents or the conduct of the parties hereto, whether now existing or hereafter arising and whether in contract, tort or otherwise, shall be governed by and construed in accordance with the laws of the State of New York.

       9.10.   <u>Successors and Assigns</u>

       9.10.1.   The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted by <u>Sections 9.10.2</u> and <u>9.10.3</u>.

       9.10.2.   The Company may not assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the Majority Purchasers.  Subject to <u>Section 9.10.4</u> below, any Purchaser may sell, assign, participate or transfer all or any part of their rights under this Agreement to an Eligible Assignee (as defined below); *provided* that such Purchaser and the assignee of such Purchaser shall have delivered an executed Assignment and Assumption Agreement substantially in the form attached hereto as <u>Exhibit D</u> to the Company and each other Purchaser.  In the case of any sale, assignment, transfer or negotiation of all or part of the rights of a Purchaser under this Agreement that is authorized under this <u>Section 9.10.2</u>, the assignee, transferee or recipient shall have, to the extent of such sale, assignment, transfer or negotiation, the same rights, benefits and obligations as it would if it were a Purchaser hereunder.  The Purchasers agree to provide to the Company prompt written notice of any sales, assignments or transfers permitted hereunder, including the name and address of the transferee(s).  "Eligible Assignee" means any Affiliate of the Purchasers or the Collateral Agent, any commercial bank, insurance company, finance company, financial institution,

-32-

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY                              UNILOC_APPLE_2017_18314

# APPENDIX I

# DEFINITIONS

"Actual Monetization Revenues" means amounts that the Issuer or Uniloc Lux actually receives or is actually entitled to receive, or receives, in cash or an amount equal to the fair market value of any in-kind payment, from third parties in respect of the Patents, whether on account of any sale of products or services using the Patents, the development to order of any software or other products using the Patents or on account of the purchase price or in connection with the sale of hardware or software with respect to the Patents, including royalty payments, license fees, settlement payments, judgments or other similar payments in respect of the Patents, in each case as and when actually received by Uniloc Lux or the Issuer (including any and all such amounts actually received by any attorneys, agents or other representatives of either such Company). Actual Monetization Revenues shall be calculated prior to giving effect to any expenses incurred by the Company in the collection of any Actual Monetization Revenues, including, without limitation, prior to giving effect to any contingent or other fees owed to any attorneys, consultants or other professionals in the monetization of any of the Company's rights with respect to any Patents, and prior to giving effect to amounts owing between Uniloc Lux and the Issuer.

"Affiliate" means with respect to any specified Person, any other Person directly or indirectly controlling, controlled by or under direct or indirect common control with such Person, and shall include (a) any officer or director or general partner of such specified Person, (b) any other Person of which such specified Person or any Affiliate (as defined in clause (a) above) of such specified Person shall, directly or indirectly, beneficially own either (i) at least 10% of the outstanding equity securities having the general power to vote or (ii) at least 10% of all equity interests, (c) any other Person directly or indirectly controlling such specified Person through a management agreement, voting agreement or other contract and (d) with respect to any individual, such individual's child, stepchild, grandchild or more remote descendant, parent, stepparent, grandparent, spouse, former spouse, qualified domestic partner, sibling, mother-in-law, father-in-law, son-in-law and daughter-in-law (including adoptive relationships) and any trust, partnership or other bona fide estate-planning vehicle the only beneficiaries of which are any of the foregoing individuals or any private foundation or fund that is controlled by any of the foregoing individuals or any donor-advised fund of which any such individual is the donor; *provided* that neither the Collateral Agent or any Purchaser (or any Affiliate thereof) shall be deemed an Affiliate of the Company on account of the amounts owed to it under the Agreement or the relationship created thereby.

"Authorized Officer" means, with respect to any Person, the chief executive officer, chief restructuring officer, chief financial officer, president, treasurer, comptroller or executive vice president of such Person.

"Bankruptcy Code" means Title 11 of the United States Code.

"Bankruptcy Default" means an Event of Default referred to in Section 7.1.8.

"Bridge Notes" means the existing Indebtedness disclosed on Schedule 6.7.

A- 1

62250363_5

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY                    UNILOC_APPLE_2017_18320

accordance with past practice and undertaken by such Person in good faith and not for purposes of evading any covenant or restriction in any Document.

"Organization Documents" means, (a) with respect to any corporation, the certificate or articles of incorporation and the bylaws (or equivalent or comparable constitutive documents with respect to any non-U.S. jurisdiction); (b) with respect to any limited liability company, the certificate or articles of formation or organization and operating agreement; and (c) with respect to any partnership, joint venture, trust or other form of business entity, the partnership, joint venture or other applicable agreement of formation or organization and any agreement, instrument, filing or notice with respect thereto filed in connection with its formation or organization with the applicable Governmental Authority in the jurisdiction of its formation or organization and, if applicable, any certificate or articles of formation or organization of such entity.

"Patent License Agreement" means the Patent License Agreement attached hereto as Exhibit E.

"Patent Security Agreement" means the Patent Security Agreement substantially in the form of Exhibit F hereto.

"Patents" means all intellectual property of the Company, including the letters Patent set forth on Schedule I(a) and Schedule I(b), whether registered in the United States or any other jurisdiction, all registrations and recordings thereof, including all re-examination certificates and all utility models, including registrations, recordings and pending applications, and all reissues, continuations, divisions, continuations-in-part, renewals, improvements or extensions thereof, and the inventions disclosed or claimed therein.

"Person" means any entity, whether of natural or legal constitution, including any present or future individual, corporation, partnership, joint venture, limited liability company, unlimited liability company, trust, estate, unincorporated organization, government or any agency or political subdivision thereof.

"Property" means, as to any Person, all types of real, personal, tangible, intangible or mixed property owned by such Person whether or not included in the most recent balance sheet of such Person and its Subsidiaries under GAAP.

"Proxy" means that certain Proxy, dated as of the date hereof, by and between Uniloc Corporation PTY Limited, Uniloc USA, Inc., and Fortress Credit Co LLC.

"Restricted Payment" means any dividend or other distribution (whether in cash, securities or other property) with respect to any Capital Stock of a Company or a Subsidiary of such Company, or any payment (whether in cash, securities or other property), including any sinking fund or similar deposit, on account of the purchase, redemption, retirement, defeasance, acquisition, cancellation or termination of any such Capital Stock, or on account of any return of capital to such Company's or such Subsidiary's stockholders, partners or members (or the equivalent Person thereof).

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY                                    UNILOC_APPLE_2017_18326