# EXHIBIT G

Confidential - Attorneys' Eyes Only

```
 1                UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
 2                  SAN FRANCISCO DIVISION
 3
 4   UNILOC USA, INC., et al.,   Case Nos.: 3:18-cv-00360-WHA
                                 Case Nos.: 3:18-cv-00363-WHA
 5              Plaintiffs,      Case Nos.: 3:18-cv-00365-WHA
                                 Case Nos.: 3:18-cv-00572-WHA
 6   vs.
 7   APPLE INC.,
 8              Defendant.
     _____//
 9
10
11           CONFIDENTIAL - ATTORNEYS' EYES ONLY
12                 DEPOSITION OF EREZ LEVY
13                Friday, September 21, 2018
14
15
16   REPORTED BY:
17   APRIL DAWN HEVEROH, RPR, CLR, CCRR, CSR No. 8759
18
19
20
21
22
23
24
25
```

Confidential - Attorneys' Eyes Only

```
 1     A.   I am not aware.
 2     Q.   Did you take any steps to verify any amendments
 3  that may have happened prior to May 3rd, 2018?
 4     A.   Not specifically to the patent license
 5  agreement.
 6     Q.   If you go with me still on the first page, near
 7  the bottom do you see it reads, "Whereas, in
 8  consideration of the investments set forth in the
 9  purchase agreement, licensor agreed to certain rights,
10  including rights to license patents and patents
11  applications, to the licensee for the benefit of the
12  secured parties"?
13     A.   I see that paragraph.
14     Q.   Those patents are listed in schedule I(a) of
15  the purchase agreement as updated from time to time?
16     A.   Is that a question?
17     Q.   Yes.
18     A.   I don't know.
19     Q.   If you read the next paragraph it begins,
20  "Whereas, licensor is the owner of certain patents and
21  patent applications identified in schedule I(a) of the
22  purchase agreement as updated from time to time."  Did I
23  read that correctly?
24     A.   You did read it correctly.
25     Q.   Did the parties intend for all patents owned by
```

Confidential - Attorneys' Eyes Only

```
 1    Uniloc Luxembourg and Uniloc USA to be part of this
 2    license to Fortress Credit?
 3         A.   I do not recall.
 4         Q.   Are you aware of any patents that were excluded
 5    from this license?
 6         A.   I do not recall.
 7         Q.   Did you take any steps to verify whether the
 8    parties intended for all patents owned by Uniloc
 9    Luxembourg to be part of this license to Fortress
10    Credit?
11         A.   In preparation for this deposition?
12         Q.   Or in general.
13         A.   No.
14         Q.   Did you take any steps to determine whether any
15    particular patents were excluded from this license
16    between Fortress and Uniloc?
17         A.   No.
18         Q.   Nevertheless, sitting here today, you're not
19    aware of any patents that were excluded from this
20    license, correct?
21         A.   That is correct.
22         Q.   To the best of your understanding, this
23    agreement was intended to include all of Uniloc
24    Luxembourg's patent portfolio, correct?
25         A.   Yes.
```

Confidential - Attorneys' Eyes Only

```
 1      Q.   And to the best of your understanding, this
 2   agreement was intended to include the patents that
 3   Uniloc Luxembourg later acquired from Hewlett Packard,
 4   right?
 5      A.   Yes.
 6           (Whereupon, Defendant's Exhibit 1012 was marked
 7            for identification.)
 8   BY MS. NEFF:
 9      Q.   I have marked as an exhibit the revenue sharing
10   and note and warrant purchase agreement as amended.
11   Mr. Levy, do you see that this revenue sharing and note
12   and warrant purchase agreement was entered into on
13   December 30th, 2014?
14      A.   I do.
15      Q.   And there were three amendments to this revenue
16   sharing agreement:  One on February 24th, 2015, one on
17   May 27th, 2016, and one on May 15th, 2017, correct?
18      A.   Yes.
19      Q.   Why was the revenue sharing agreement between
20   Uniloc and Fortress amended on February 24th, 2015?
21      A.   Sorry.  Repeat the question and the dates.
22      Q.   Why was the revenue sharing agreement between
23   Uniloc and Fortress amended on February 24th, 2015?
24      A.   We decided to fund more money into the company.
25      Q.   Why was the revenue sharing agreement between
```

Confidential - Attorneys' Eyes Only

1   Uniloc and Fortress amended on May 26th, 2016?

2       A.   We decided that we would like to invest more
3   money in the company.

4       Q.   Why was the revenue sharing agreement between
5   Uniloc and Fortress amended on May 15th, 2017?

6       A.   That was part of the financing -- the last
7   financing we did in May 2000 -- sorry.  That's '17 --
8   yeah, part of the last financing we did as part of the
9   three transactions we did for them.

10      Q.   As part of the transactions that you did before
11  the May 2018 asset purchase agreement, right?

12      A.   Yes.  Thank you.

13      Q.   How did any of the amendments to this revenue
14  sharing agreement change Fortress' security interest in
15  the patent portfolio of the Uniloc entities listed on
16  this page?

17      A.   Can you repeat that question.  Sorry.

18      Q.   I'll ask a better question.

19      A.   Yeah.

20      Q.   You testified that over time, Fortress decided
21  to invest more money in Uniloc, correct?

22      A.   Correct.

23      Q.   And over time, Fortress amended -- withdrawn.
24           Over time Fortress and Uniloc amended this
25  revenue sharing agreement at times that corresponded

1   with Fortress deciding to loan Uniloc more money.  Is
2   that fair?
3       A.   Yes.
4       Q.   Are you aware of any changes to Fortress'
5   security interest in the Uniloc entities' patent
6   portfolio that accompanied the amendments to this
7   revenue sharing agreement?
8       A.   I'm not aware of any.
9       Q.   And did you take any steps to investigate
10  whether Fortress' security interest in Uniloc's patent
11  portfolio changed when the revenue sharing agreement was
12  amended in 2015, 2016 or 2017?
13      A.   I did not.
14      Q.   If you go with me to page 281 of this document
15  or ending in 281, do you see near the bottom of this
16  page there's a list of appendices, schedules and
17  exhibits?
18      A.   Yes.
19      Q.   Would you take a minute to look at the list of
20  schedules, appendices and lists.
21      A.   Just the list of them?
22      Q.   Just the list of them.
23      A.   Okay.
24      Q.   Have you searched for or taken any steps to
25  locate the documents listed on pages 281 and 282?

1     A.    No.

2     Q.    Were you aware that Apple had requested

3  production of these documents and that Judge Alsup had

4  ordered that they all be produced?

5     A.    I was not aware.

6           MS. NEFF:  Counsel, as of today, Uniloc has

7  still not produced all of the documents listed in this

8  agreement despite Judge Alsup's order instructing it to

9  do so and despite Apple's multiple requests for those

10 documents.  So Apple will hold this deposition open

11 until all such documents are produced, and as we

12 informed you on September 19th, Mr. Levy may need to sit

13 for a second deposition once Uniloc produces the

14 documents the Court ordered it to produce more than a

15 week ago.

16          MR. FOSTER:  So just help me.  What documents

17 have we not produced?

18          MS. NEFF:  We can have that discussion after

19 the deposition, but I would point to you in part to the

20 appendices, schedules and exhibits to the revenue

21 sharing agreement, as it is my understanding that as of

22 today, not all of those appendices have been produced.

23          MR. FOSTER:  So you'll have to send me a list

24 of what you claim was not produced, and I'll look into

25 that, but -- well, I won't say anything further at the

Confidential - Attorneys' Eyes Only

1    moment.

2         MS. NEFF:  Thank you, Counsel.

3    Q.  Do you see that in the revenue sharing
4  agreement we were just looking at, the first appendix
5  listed is appendix 1, definitions?

6    A.  Yes.

7    Q.  That document we do have.

8        (Whereupon, Defendant's Exhibit 1013 was marked
9        for identification.)

10  BY MS. NEFF:

11    Q.  I've marked for you as Exhibit 1013 to the
12  deposition appendix 1 to the revenue sharing agreement.

13        Would you turn with me, please, to the page
14  ending in 326.  Are you there?

15    A.  I am.

16    Q.  Do you see that "patents" means all
17  intellectual property of the company, company meaning
18  Uniloc Luxembourg, Uniloc Corporation, Uniloc USA and DA
19  Investment Holdings?

20    A.  Yes.

21    Q.  The parties intended that Fortress' rights as
22  described in the revenue sharing and note and warrant
23  purchase agreement would attach to all of Uniloc
24  Luxembourg, Uniloc Corporation, Uniloc USA and DA
25  Investment Holdings' intellectual property, right?

Confidential - Attorneys' Eyes Only

```
 1      A.   Yes, that's what the document says.
 2           (Whereupon, Defendant's Exhibit 1014 was marked
 3            for identification.)
 4   BY MS. NEFF:
 5      Q.   I've handed you our next exhibit.
 6      A.   Thank you.
 7      Q.   You recognize this as the third amendment to
 8   the revenue sharing and note and warrant purchase
 9   agreement, correct?
10      A.   Yes.
11      Q.   What was the general purpose of this amendment
12   from a business perspective?
13      A.   To provide additional capital to the company.
14      Q.   This agreement is between Uniloc entities and
15   Fortress entities, right?
16      A.   That's what the document articulates, yeah.
17      Q.   The Uniloc entities include Uniloc USA, Uniloc
18   Luxembourg, Uniloc Corporation and DA Investment
19   Holdings, correct?
20      A.   The document speaks for itself.
21      Q.   Am I, nevertheless, correct that those Uniloc
22   entities are listed as the Uniloc entities that are
23   parties to this amendment?
24      A.   Yes.
25      Q.   Uniloc USA is referred to as the issuer in this
```

Confidential - Attorneys' Eyes Only

1  document.  Do you see that?
2      A.   I do see that in the document.
3      Q.   And this agreement refers to all of these
4  Uniloc entities collectively as "The Company".  Do you
5  see that?
6      A.   Point me to that.  Sorry.
7      Q.   This paragraph begins with a list of Uniloc
8  entities, and then at the end of that list says,
9  "Collectively with issuer" --
10     A.   Yes.
11     Q.   Okay.  So the agreement refers to all of the
12 Uniloc entities collectively as "The Company," correct?
13     A.   Yes.
14     Q.   Fortress Credit Company, LLC is the collateral
15 agent, right?
16     A.   That's what the document says.
17     Q.   There are also two purchaser entities listed
18 here, right?
19     A.   Yes.
20     Q.   CF DB EZ, LLC and CF DB 2017, LLC.  Do you see
21 that?
22     A.   I do.
23     Q.   What is CF DB EZ?
24     A.   A Fortress managed fund.
25     Q.   Do you have any relationship with CF DB EZ?

Case 3:18-cv-00358-WHA   Document 165-8   Filed 10/22/20   Page 12 of 12

Confidential - Attorneys' Eyes Only

```
 1       A.   I work for Fortress Investment Group that
 2  manages these funds, including this one.
 3       Q.   So CF DB EZ is one of the Fortress investment
 4  funds that you manage; is that correct?
 5       A.   Correct.
 6       Q.   What is CF DB EZ 2017?
 7       A.   I believe it's a -- it's another -- it is
 8  another Fortress managed fund.
 9       Q.   Do you have any relationship with CF DB EZ
10  2017?
11       A.   I do.
12       Q.   What is your relationship with them?
13       A.   I am a tiny investor in that fund.
14       Q.   Do you know who manages that fund at Fortress?
15       A.   Which one?
16       Q.   CF DB EZ 2017.
17       A.   Fortress, as a management company.  We all do.
18       Q.   Does anyone in particular that you're aware of
19  with Fortress Investment Group have any affiliation with
20  CF DB EZ 2017 other than simply as a management company?
21       A.   Not that I'm aware of.
22       Q.   You drew a distinction between your
23  relationship with CF DB EZ and CF DB EZ 2017.  Why did
24  you draw that distinction?
25       A.   Because they're two different entities.
```