# EXHIBIT J

James J. Foster
Aaron S. Jacobs (CA No. 214953)
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
617-456-8000
jfoster@princelobel.com
ajacobs@princelobel.com

Matthew D. Vella (CA No. 314548)
mvella@princelobel.com
PRINCE LOBEL TYE LLP
410 Broadway Avenue, Suite 180
Laguna Beach, CA 92651

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNILOC USA, INC., and<br>UNILOC LUXEMBOURG, S.A.,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 3:18-cv-00360-WHA<br>Case No.: 3:18-cv-00363-WHA<br>Case No.: 3:18-cv-00365-WHA<br>Case No.: 3:18-cv-00572-WHA<br><br>**DECLARATION OF JAMES PALMER**<br><br>DATE: Thursday, December 20, 2018<br>TIME: 8:00 a.m.<br>COURTROOM: 12, 19th Floor<br>JUDGE: Hon. William Alsup |

1.      I am a Managing Director in the Intellectual Property Finance Group ("IP Group") of the credit business at Fortress Investment Group, an affiliate of Fortress Credit Co. LLC ("Fortress"). I submit this declaration under penalty of perjury in support of Uniloc's Opposition to Apple's Motion to Dismiss.

2.      I understand Apple has alleged Fortress had the right, during May 26-August 2, 2017, to sublicense (to Apple or others) the patents involved in these actions. As explained below, that was not the case.

| | | |
|---|---|---|
| DECLARATION OF JAMES PALMER | 1 | CASE NOS. 3:18-CV-00360-WHA;<br>-00363-WHA; -00365-WHA; -00572-WHA |

3074261.v1

The 2014 Fortress-Uniloc transaction

3.      The IP Group facilitates investments, such as loans, that are secured by the borrowers' patents.  On December 30, 2014, Fortress, on behalf of various affiliates provided a loan to, among others, Uniloc USA, Inc. and Uniloc Luxembourg S. A. (collectively, the borrowers, "Uniloc"). The documentation for the loan included, among other documents, a Revenue Sharing and Note and Warrant Purchase Agreement ("the Agreement"), Dkt. No. 135-2, as well as a Patent License Agreement ("the License"), Dkt. No. 135-3.

4.      As is standard for this type of loan, the documentation gave Fortress various rights intended to secure the loan, to be enforced only if Uniloc defaulted and such default led to an Event of Default under the Agreement. This included the License, which gave rights to Fortress to sublicense the patents in the portfolio, but only "following an Event of Default," as defined by the Agreement. The Agreement, in turn, specified, under "Annulment of Defaults" (¶ 7.3), that an Event of Default would end after Fortress (on behalf of the Majority Purchasers) either was reasonably satisfied Uniloc had effected a cure, or had waived the Event of Default.

5.      The sole purpose of providing for contingent sublicensing authority is to secure the Fortress loan in case of an Event of Default, not to allow Fortress to license patents in competition with the patent owner. Although the remedies language of this Agreement is typically broad, to give Fortress flexibility in protecting its investment in a default scenario, Fortress does not believe it can in good faith declare an "event of default" has occurred under the Agreement and then pursue foreclosure or other remedies unless such action is warranted under the terms of the Agreement.

6.      The purpose of the loan was to finance Uniloc's litigation of the 71 United States patents then in Uniloc's portfolio (which did not include the patents involved in these actions). See Ex. A. As is standard for this type of loan, the Agreement imposed certain covenants on Uniloc and required Uniloc to make certain representations and warranties. As Fortress had not previously done business with Uniloc, the Agreement included a covenant as to expected Actual Monetization Revenues (¶ 6.2.2). The Agreement also included a standard representation that, as of the December 30, 2014 Closing, none of the 71 United States patents listed in an Appendix to the

Agreement had been adjudged invalid, in whole or in part, or were at that time subject to any challenge to their validity (¶ 4.5).

Apple's allegations

7.      I understand Apple alleges an "Event of Default," as that term was defined in ¶ 7.1 of the Agreement, existed as of May 26, 2017. I disagree, for the reasons stated below.

Actual Monetization Revenues

8.      Paragraph 6.2 of the Agreement required Uniloc to diligently pursue monetization of the patents in the 2014 portfolio, to provide regular updates to Fortress, and to consult with Fortress as to Uniloc's activities if requested to do so – which Uniloc did faithfully. At all times prior to August 2, 2017, Fortress was satisfied with Uniloc's efforts in that regard.

9.      As a result of its satisfaction with Uniloc's performance, Fortress invested additional funds in the monetization effort by increasing the amount of the loan in May 2016, and entered into discussions for another substantial investment in May 2017. The parties revised the Agreement with each investment, each revision reconfiguring the relationship.

10.     Apple points to the monetization revenue for the four quarters ending March 31, 2017, as falling short of the figure in the December 2014 Agreement, labeling that difference an "Event of Default." But Uniloc had not defaulted on the loan. To the contrary, the situation had changed markedly, and positively, since December 2014, rendering the earlier minimums no longer of significance to Fortress, to the point Fortress made a substantial additional investment, finalized by the Third Amendment to the Agreement, as of May 15, 2017 (the "May 15, 2017 Agreement"). Dkt. No. 135-4.

11.     Although Fortress did not regard Uniloc as in default, I understand Apple argues ¶ 7.1.2 of the Agreement defines an Event of Default as *any* failure "to perform or observe any of the covenants or agreements contained in Article VI [which] failure continues for 30 days after... knowledge of [Uniloc] of such failure," however unimportant it would have seemed at the time. But at that time there had been no increase in financial risk and therefore this was not what Fortress would have regarded as a "default," and Fortress did not consider it or treat it as a default.

12.     In the weeks following March 31, 2017, Uniloc and Fortress finalized the May 15, 2017 Agreement, with Fortress completely aware of the Actual Monetization Revenues numbers. To the extent Apple argues the shortfall created an "Event of Default" before May 15, 2017, even though Fortress did not view it that way, there is no dispute Fortress's signature to the May 15 Agreement establishes Uniloc had cured that ostensible "Event of Default" to Fortress's satisfaction. And, to the extent there had been minimum monetization revenue requirements for the period prior to May 15, 2017, Fortress viewed the May 15, 2017 Agreement as wiping the slate clean.

13.     To summarize, at no time, either before or after May 15, 2017, did Fortress consider Uniloc as being in default, or believe Fortress had a right to license Uniloc's patents subject to the May 15, 2017 Agreement.

Validity challenges

14.     I understand Apple also alleges, Dkt. No. 135 at 5, Uniloc made a "false" representation on December 30, 2014, namely, none of the patents listed in the Appendix to the Agreement had been adjudged invalid, in whole or in part, or had been subject to any challenge to its validity.

15.     The allegation appears overblown. The list attached to the 2014 Agreement included 71 United States patents. As I understand Apple's accusation: i) the Patent Office, in an Inter Partes Review of one of those 71 patents had found some claims of that patent unpatentable, but others patentable; and ii) the validity of another two (of the 71) patents had been challenged in a motion filed in Texas district court. Both these events had occurred shortly before the Agreement. But this oversight, by whoever reviewed the draft for the closing, appears to Fortress as being of no apparent materiality.

16.     As described above, the purpose of the loan was to fund patent litigation, in which it was expected that the validity of virtually all asserted patents would be contested. That two or three of the 71 patents had already been challenged would not have been considered material.

17.     As for Apple's charge Uniloc had made "false" representations, Fortress has seen no evidence that the oversights were intentional, or even discovered before Apple filed its Motion.

1  If Fortress had learned of these oversights during the life of the Agreement, Fortress could not, in

2  good faith, and would not, have claimed an Event of Default had occurred.

3     18.     I understand Apple claims the mistaken representation -- that no patent had yet been

4  challenged as to its validity -- was "later re-affirmed" by the signing of the May 15, 2017

5  Amendment. Apple appears to suggest Uniloc had effectively represented that by May 15, 2017,

6  there had been no validity challenges.

7     19.     That is certainly not what the May 15, 2017 Agreement means, at least to me. To

8  review, the December 30, 2014 (and subsequent) loans were to support Uniloc's assertion of

9  patents against infringers, primarily through litigation. Fortress well understood defendants in such

10 litigation almost universally assert invalidity. As of May 15, 2017, Fortress was aware that Uniloc

11 had filed a number of actions on the listed patents, and understood in all, or virtually all, of them

12 invalidity had been, or would shortly be, asserted.

13    20.     Fortress thus did not regard the statement in the May 15, 2017 amendment

14 describing the "representation or warranties" of the 2014 Agreement as "being true and correct in

15 all material respects" as of May 15, 2017 as meaning no allegations of invalidity had been raised

16 since 2014.

17

18

19

20 Executed:  November 9, 2018                    _____

21                                                James Palmer

22

23

24

25

26

27

28

| DECLARATION OF JAMES PALMER | 5 | CASE NOS. 3:18-CV-00360-WHA; -00363-WHA;  -00365-WHA; -00572-WHA |
|---|---|---|

3074261.v1