# EXHIBIT L

# MARATHON PATENT GROUP, INC.

## FORM 8-K
(Current report filing)

Filed 01/17/17 for the Period Ending 01/10/17

| | |
|---|---|
| Address | 1180 N. TOWN CENTER DRIVE |
| | SUITE 100 |
| | LAS VEGAS, NV, 89144 |
| Telephone | (800) 804-1690 |
| CIK | 0001507605 |
| Symbol | MARA |
| SIC Code | 6794 - Patent Owners and Lessors |
| Industry | Financial & Commodity Market Operators |
| Sector | Financials |
| Fiscal Year | 12/31 |



http://www.edgar-online.com
© Copyright 2020, EDGAR Online, a division of Donnelley Financial Solutions. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Online, a division of Donnelley Financial Solutions, Terms of Use.

**AMENDED AND RESTATED REVENUE SHARING AND SECURITIES PURCHASE AGREEMENT**

This AMENDED AND RESTATED REVENUE SHARING AND SECURITIES PURCHASE AGREEMENT (this " Agreement ") is dated as of January 10, 2017 (the " Amendment Effective Date ") by and among Marathon Patent Group, Inc. (" Issuer ") and certain of its subsidiaries (such Subsidiaries, together with any future guarantor subsidiaries, the " Guarantors " and the Issuer and its Subsidiaries collectively the " Company "), DBD Credit Funding LLC as collateral agent (the " Collateral Agent "), and each Person listed as a "Purchaser" on Schedule 2.1 (together with their successors and assigns, the " Purchasers ").

**RECITALS**

WHEREAS, the Company, the Collateral Agent and certain Purchasers entered into that certain Revenue Sharing and Securities Purchase Agreement, dated as of January 29, 2015 (such date, the " Closing Date "; and such agreement, the " Original Agreement "), pursuant to which the Purchasers acquired from the Issuer (i) $20,000,000 in aggregate original principal amount of Notes, of which an aggregate principal amount of $15,620,758.75 remains outstanding as of the Amendment Effective Date prior to giving effect to the application of approximately $4,500,000 that is currently held in the Cash Collateral Account, (ii) an interest in the Company's revenues from certain activities, and (iii) warrants for the purchase of 100,000 shares (subject to adjustment in accordance with the terms of such warrants) of the Issuer's common stock, in each case of clauses (i), (ii) and (iii), on the terms specified in the Original Agreement; and

WHEREAS, the Company, the Collateral Agent and the Purchasers desire to amend and restate the Original Agreement as herein provided such that (i) on the Amendment Effective Date, the Purchasers wish to acquire, and the Issuer has agreed to issue and sell to Purchasers, (x) $4,500,000 in aggregate original principal amount of Notes (provided, that the proceeds of such Notes will be "net funded" out so that the cash held in the Cash Collateral Account will be deemed to be applied to the repayment of the currently outstanding Notes and then utilized for the acquisition of Notes on the Amendment Effective Date) and (y) additional warrants for the purchase of 187,500 shares (subject to adjustment in accordance with the terms of such warrants) of the Issuer's common stock (such warrants, together with the warrants issued under the Original Agreement on the Closing Date, the " Warrants "; and the Warrants together with the Notes, the " Securities ") in the form of Exhibit I hereto, in each case, subject to the terms of this Agreement; and (ii) following the Amendment Effective Date, the Purchasers may, in their sole discretion, acquire, and the Issuer may issue and sell to the Purchasers, additional Notes subject to the terms and conditions set forth herein for such Notes;

NOW THEREFORE, in consideration of the mutual agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

following payment in full of the Note Obligations, only the obligations under Sections 6.2 , 6.5.2 , and 6.6.1 shall continue in effect.

6.1.     Taxes and Other Charges .  The Company shall duly pay and discharge, or cause to be paid and discharged, before the same becomes in arrears, all taxes, assessments and other governmental charges imposed upon such Person and its properties, sales or activities, or upon the income or profits therefrom; *provided , however* , that any such tax, assessment, charge or claim need not be paid if the validity or amount thereof shall at the time be contested in good faith by appropriate proceedings and if such Person shall, in accordance with GAAP, have set aside on its books adequate reserves with respect thereto; *provided , further* , that the Company shall pay or bond, or cause to be paid or bonded, all such taxes, assessments, charges or other governmental claims immediately upon the commencement of proceedings to foreclose any Lien which may have attached as security therefor (except to the extent such proceedings have been dismissed or stayed).

6.2.     Conduct of Monetization Activities .  The Company shall undertake its best efforts to diligently pursue the monetization of the Patents (provided that following payment in full of the Note Obligations, the Company shall be required to use "commercially reasonable" rather than "best" efforts), and shall provide regular updates to the Purchasers and their advisors, and shall consult with Purchasers and their advisors on request, as to such activities.

6.3.     Maintenance of Existence .  The Company shall do all things necessary to preserve, renew and keep in full force and effect and in good standing its legal existence and authority necessary to continue its business.

6.4.     Compliance with Legal Requirements .  The Company shall comply in all material respects with all valid Legal Requirements applicable to it, except where compliance therewith shall at the time be contested in good faith by appropriate proceedings.

6.5.     Notices; Reports .

6.5.1.     Certain Notices .  The Company shall, promptly following having notice or knowledge thereof, furnish to each of the Purchasers such information as they may reasonably request concerning the Company's Monetization Activities and Monetization Revenues, including without limitation the following:

6.5.1.1.     any dispute, litigation, investigation, suspension or any administrative or arbitration proceeding by or against the Company for an amount in excess of $500,000 or affecting the Company's ownership rights with respect to the Patents; and

6.5.1.2.     promptly upon acquiring knowledge thereof, the existence of any Default or Event of Default, specifying the nature thereof and what action the Company has taken, is taking or proposes to take with respect thereto.

Each notice pursuant to this Section shall be accompanied by a statement by an Authorized Officer of the Company, on behalf of the Company, setting forth details of the occurrence referred to therein, and stating what action the Company or other Person

16