1  Aaron S. Jacobs (Cal. Bar No. 214953)
   ajacobs@princelobel.com
2  James J. Foster
   jfoster@princelobel.com
3  **PRINCE LOBEL TYE LLP**
   One International Place, Suite 3700
4  Boston, MA 02110
   Tel: (617) 456-8000
5
   Matthew D. Vella (Cal. Bar No. 314548)
6  mvella@princelobel.com
   **PRINCE LOBEL TYE LLP**
7  357 S Coast Highway, Suite 200
   Laguna Beach, CA 92651
8
   Attorneys for Plaintiffs
9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                      SAN FRANCISCO DIVISION
12

| | |
|---|---|
| UNILOC USA, INC. and<br>UNILOC LUXEMBOURG, S.A., | Case No.: 3:18-cv-00358-WHA |
|      Plaintiffs, | **PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |
| v. | |
| APPLE INC., | Hearing Date:  December 3, 2020<br>Time:         8:00 am<br>Location:    Courtroom 12<br>Judge:        Honorable William Alsup |
|      Defendant. | |

# TABLE OF CONTENTS

1.   Apple's Motion does not apply to pre-suit infringement..........................................................1

2.   *Lone Star* is dispositive of this Motion. ...............................................................................2

3.   Unless it has transferred all substantial rights, the owner of the patent always has
     Article III standing..............................................................................................................4

4.   Uniloc Luxembourg had constitutional standing. ................................................................5

     A.   The requirements of constitutional standing....................................................................5

     B.   The background to *Mann*. ...............................................................................................7

     C.   *Mann* explained there is always a CATEGORY ONE plaintiff. ....................................8

5.   "[N]o relevant event of default existed at the time plaintiffs filed the suits." ........................11

6.   The Federal Circuit has rejected Apple's legal position. .......................................................13

7.   Uniloc 2017 has standing......................................................................................................15

1

## TABLE OF AUTHORITIES

2 **Cases**

3 *Alfred E. Mann Foun. for Sci. v. Cochlear Corporation*,
   604 F.3d 1354 (Fed. Cir. 2010)..................................................................................................5

4

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
5   434 F.3d 1336 (Fed. Cir. 2006)..................................................................................................9

6 *AsymmetRx, Inc. v. Biocare Med., LLC*,
   582 F.3d 1314 (Fed. Cir. 2009)...............................................................................................6, 9

7

8 *Azure Networks , LLC v. CSR PLC*,
   771 F.3d 1336 (Fed. Cir. 2014)...............................................................................................5, 7

9 *Caterpillar Inc. v. Lewis*,
   519 U.S. 61 (1996)...................................................................................................................15

10

11 *Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P.C.*,
   482 F.3d 1347 (Fed. Cir 2007)................................................................................................14

12 *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
   630 F.Supp.2d 365 (D. Del. 2007) ............................................................................................7

13

14 *Insituform Technologies, Inc. v. Cat Contracting, Inc.*,
   385 F.3d 1360 (Fed. Cir. 2004)...............................................................................................15

15 *Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S.118 (2014) ..................................................................................................................2

16

17 *Lone Star Silicon Innovations v. Nanya Technology*,
   925 F.3d 1225 (Fed. Cir. 2019)........................................................................................2, 3, 5

18 *Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1982) ..............................................................................................................2, 4

19

20 *Luminara Worldwide, LLC v. Liown Electronics Co. LTD*,
   814 F.3d 1343 (Fed. Cir. 2016)......................................................................................4, 6, 10

21 *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
   240 F.3d 1016 (Fed. Cir. 2001)................................................................................................7

22

23 *Morrow v. Microsoft Corp.*,
   499 F.3d 1332 (Fed. Cir. 2007)......................................................................................5, 6, 7, 8

24 *Prima Tek, II, L.L.C. v. A-Roo Co.*,
   222 F.3d 1372 (Fed. Cir. 2000)...............................................................................................6, 9

25

26 *Propat Intern. Corp. v. RPost, Inc.*,
   473 F.3d 1187 (Fed. Cir. 2007)................................................................................................6

27 *Rite-Hite Corp. v. Kelley Co., Inc.*,
   56 F.3d 1538 (Fed. Cir. 1995)..................................................................................................5

28

*Schreiber Foods, Inc.* v. *Beatrice Cheese, Inc.*,
  402 F.3d 1198.................................................................................................................15

*Sicom Systems, Ltd. v. Agilent Tecnologies, Inc.*,
  427 F.3d 971 (Fed. Cir. 2005)..........................................................................................5

*Speedplay, Inc. v. Bebop, Inc.*,
  211 F.3d 1245 (Fed. Cir. 2000)....................................................................................5, 7

*Uniloc USA, Inc. v. ADP, LLC*,
  772 Fed. Appx. 890 (Fed. Cir. 2019) ..............................................................................14

*WiAV Solutions v. Motorola, Inc.*,
  631 F.3d 1257 (Fed. Cir. 2010)..............................................................................5, 6, 10

1

2

Uniloc Luxembourg and Uniloc USA ("Legacy Plaintiffs") file this Opposition to Apple's

3

Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Mot."), Dkt. No. 165. This Court had

4

previously denied an almost identical motion filed in the related actions. 3:18-cv-00360, Dkt. No.

164-2 (the "Order").

5

6

When this action was filed, Uniloc Luxembourg was the legal owner of the patent. Before

7

filing this action, Uniloc Luxembourg granted an exclusive license to Uniloc USA, which included

the right to sue for past infringement. Dkt. No. 1 at ¶ 9; 3:18-cv-00360, Dkt. No. 135-13 at ¶ 5.

8

9

**1.     Apple's Motion does not apply to pre-suit infringement.**

10

When Hewlett-Packard conveyed to Legacy Plaintiffs the ownership of the patent-in-suit

on May 16, 2017, it also conveyed the right to sue for past infringement. *See* 3:18-cv-00360, Dkt.

11

No. 135-12 at § 2.1. The Complaint thus alleges liability for acts of infringement that include those

12

that occurred before Legacy Plaintiffs acquired the patent.

13

Apple's Motion relies entirely on the fact the Patent License Uniloc Luxembourg had

14

granted to Fortress Credit Co LLC (the "Patent License") included a nonexclusive right to

15

sublicense, but only after an event of default. But Fortress could not sublicense a patent unless the

16

patent was owned by Uniloc Luxembourg. The earliest Fortress could have sublicensed the patent-

17

in-suit would thus have been the date Uniloc Luxembourg acquired it, May 16, 2017.

18

The Patent License *did not grant to Fortress any right to forgive infringement that*

19

*preceded the grant of any such sublicense.* Dkt. No. 165-6 at ¶ 2. Thus, even if there had been an

20

event of default, and Fortress had then granted a sublicense, that sublicense would have been

prospective only. It would not have prevented Legacy Plaintiffs from suing Apple for infringement

21

that had occurred prior to the grant.

22

23

On the date of filing of this action, May 26, 2017, even under Apple's legal theory Legacy

24

Plaintiffs unquestionably had standing to sue for infringement that had occurred before that date.[1]

25

26

---

27

[1]  Legacy Plaintiffs filed this action on May 26, 2017, ten days after acquiring the patent, during
which period Fortress had not granted any sublicense. Because a sublicense could be prospective
only, even under Apple's legal theory Legacy Plaintiffs had standing to sue Apple for any
infringement that preceded the filing of this action.

28

The Motion's argument that on the date of filing Legacy Plaintiffs lacked standing applies only to claims for post-filing infringement.

This Court thus had jurisdiction to entertain claims for damages for pre-suit infringement. As the Court had jurisdiction over the action when filed, and has continued to have jurisdiction at all times since, for that reason alone the motion to dismiss must be denied.

### 2.    *Lone Star* is dispositive of this Motion.

The Court is familiar with the facts of *Lone Star Silicon Innovations v. Nanya Technology*, 925 F.3d 1225 (Fed. Cir. 2019), which is dispositive here. That Federal Circuit opinion radically altered the law of standing for patent infringement actions by labeling earlier Federal Circuit authority as "irreconcilable" with *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S.118 (2014), in that those decisions treated 35 US.C. §281 as a jurisdictional requirement. 925 F.3d at 1235. Notably, "whether a party possesses all substantial rights in a patent does not implicate standing or subject-matter jurisdiction." *Id*. at 1235-36.

So now the plaintiff need not possess "all substantial rights," or, for that matter, any prescribed amount. All that matters is that Legacy Plaintiffs had Article III standing, which only requires that the complaint adequately alleges a plaintiff "suffers an injury which can be fairly traced to the defendant, and likely redressed by a favorable judgment." 925 F.3d at 1234, quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1982).

Here, even Apple does not appear to dispute that on the date the action was filed Legacy Plaintiffs, and only Legacy Plaintiffs, possessed the right to pursue the claim for damages for *pre-suit* infringement. That claim for pre-suit infringement damages itself meets the description in *Lujan*.

But Legacy Plaintiffs also had constitutional standing as to post-suit infringement, because Legacy Plaintiffs owned 100% of the rights in the patent. The only exception argued by Apple is the alleged nonexclusive right of Fortress to grant a prospective sublicense to Apple.

But a comparison of the facts of *Lone Star* with the facts here destroys Apple's argument. In that action, the District Court and the Federal Circuit found the patent owner was Advanced

Micro Devices ("AMD"). AMD had transferred to Lone Star not only the *exclusive* right to grant licenses to the defendants, but had also transferred *all* rights to bring suit against those defendants. Although it would thus appear AMD had *no* rights vis-à-vis the defendants in that action, because it was the patent owner it nevertheless had Article III standing, as shown by the Federal Circuit's suggesting it be added as a plaintiff. 925 F. 3d at 1236-39.[2]

By contrast, Apple here alleges only transfer of a *nonexclusive* right to grant licenses, and tacitly concedes Legacy Plaintiffs retained all other rights in the patent. Apple thus fails to explain why AMD would have constitutional standing, but not Legacy Plaintiffs.

Apple argues *Lone Star* presented only an issue of "statutory standing." Mot. at 17. To the contrary, the opinion explicitly discussed what was required for *Article III* standing, *id.* at 1234-35, and, after doing so, suggested adding AMD as a party. *Id*. at 1236-39.

Because *Lone Star* repeatedly stated that a holder of "exclusionary" rights has Article III standing, Apple opportunistically argues a plaintiff could only have Article III standing if there was no possible bar to its "excluding" the defendant from practicing the invention. But *Lone Star* made crystal clear what it referred to as "exclusionary rights" carried a broader meaning under Article III: "'[E]xclusionary rights' involve the ability to exclude others from practicing an invention, *or to 'forgive activities that would normally be prohibited under the patent statutes*.'" *Id*. at 1234 (emphasis added). The opinion went on to list the right to "collect royalties, … grant licenses or forgive infringement" as sufficient to give even a *non-owner* plaintiff Article III standing. *Id*. Because the alleged Fortress right to sublicense in the event of default was nonexclusive, Legacy Plaintiffs had all of these rights. And unlike the plaintiff in *Lone Star*, Legacy Plaintiffs owned the patent.[3]

---

[2]  The Federal Circuit also found Lone Star itself had Article III standing, even though it only had the right to assert the patent against certain listed entities, and, unlike here, its ability to transfer the patents was "substantially restrict[ed]." *Id*. at 1232-33.

[3]  *Schwendimann v. Arkwright Advanced Coating, Inc*., 959 F.3d 1065, 1071 (Fed. Cir. 2020), citing *Lone Star*, found "Because [the] Complaint contained … allegations [that plaintiff] is the owner by assignment of the … patent and Appellants infringed that patent – there is no 'standing' issue to be decided in this appeal."

1  "Exclusionary rights" was a term that had been historically used to distinguish between

2  "bare" licensees, who had received only a right to themselves practice the patent (and thus no right

3  to exclude others), and "exclusive" licensees, who had received the exclusive right to practice,

4  which implied the right to exclude others. Although *Lone Star* mentions "exclusionary rights" as

5  *sufficient* to impart Article III standing, *Lone Star* neither stated nor implied "exclusionary rights"

6  are necessary, and its listing of the ability to grant licenses or forgive infringement reinforced that

7  Article III standing is not so limited.

8  *Lujan* gives Article III standing to anyone who "suffers an injury that can fairly be traced to

9  the defendant and likely be redressed by a favorable judgment," 504 U.S. at 560-61; *Lone Star*,

10  925 F.3d at 1234.  As there does not seem to be any question Apple's infringement here caused

11  injury to Legacy Plaintiffs that a favorable judgment would redress, they have Article III standing.

### 3.   Unless it has transferred all substantial rights, the owner of the patent always has Article III standing.

The owner of a patent would presumably have constitutional standing because 35 U.S.C.

§281 establishes his right to sue: "A patentee shall have remedy by civil action for infringement of

his patent." *See also* §100(d): "The word 'patentee' includes not only the patentee to whom the

patent was issued but also the successors in title to the patentee."

Uniloc Luxembourg was the patent owner when this action was filed. None of the Federal

Circuit cases Apple cites, all of which preceded *Lone Star*, held the owner of a patent lacked

constitutional standing to bring that action. To the contrary, they emphasized the importance of the

patent owner's being a party and described what the patent owner has at stake.

For example, *Luminara Worldwide, LLC v. Liown Electronics Co. LTD*, 814 F.3d 1343

(Fed. Cir. 2016), articulated why a patent owner would "suffer an injury" from infringement, and

thus have constitutional standing to be joined as a party to *any* suit involving the patent, even if the

owner does not itself have the right to sue that defendant:

> [J]oinder protects the patentee from losing substantial rights if its patent claims are invalidated or the patent rendered unenforceable in an action in which it did not participate. … [W]e require joinder of the patentee if it has retained the right to sue for infringement.

… For example, if the patentee has retained the right to freely license the patent, it stands to lose substantial rights if the claims are held invalid or the patent held unenforceable.

*Id*. at 1350. In *Luminara*, the patent owner was not even a party.

In *WiAV Solutions v. Motorola, Inc*., 631 F.3d 1257 (Fed. Cir. 2010), the patent owner, Mindspeed, had been added to the suit, without objection, even though it did not have the right to license the defendants. *Id.* at 1265 n. 1. Similarly, in *Rite-Hite Corp. v. Kelley Co., Inc*., 56 F.3d 1538, 1552 (Fed. Cir. 1995), the patent owner was a plaintiff, but no one questioned its standing. In both *Speedplay, Inc. v. Bebop, Inc*., 211 F.3d 1245 (Fed. Cir. 2000) and *Azure Networks , LLC v. CSR PLC*, 771 F.3d 1336 (Fed. Cir. 2014), the plaintiffs were found to have standing as the "effective owners" of the patents. And in *Morrow v. Microsoft Corp*., 499 F.3d 1332 (Fed. Cir. 2007) and *Sicom Systems, Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005), the plaintiff was not the patent owner.

Prior to *Lone Star*, most Federal Circuit cases discussing standing dealt with situations where the patent owner had transferred to the exclusive licensee some, but not all, of the patent rights. Where the exclusive licensee was the plaintiff, the issue was whether the exclusive licensee had standing to sue in his own name, without naming the patent owner as co-plaintiff. If the court found exclusive licensee did not have sufficient rights to sue in his own name, the patent owner would have to be added as a co-plaintiff. But in none of those cases has anyone ever argued the patent owner did not have constitutional standing to be added as a party because it had granted to the plaintiff the exclusive right to sue the defendant.

The law could scarcely be otherwise. If neither the patent owner nor anyone else had Article III standing, then no one could enforce the patent and the patent would be infringed with impunity – an absurd result.

But the definitive Federal Circuit case on this issue, prior to *Lone Star*, was *Alfred E. Mann Foun. for Sci. v. Cochlear Corporation*, 604 F.3d 1354 (Fed. Cir. 2010), discussed in detail below.

**4.    Uniloc Luxembourg had constitutional standing.**

**A.  The requirements of constitutional standing.**

As discussed above, bringing a patent action requires a plaintiff have constitutional standing. Prior to *Lone Star*, those who might file an infringement action were divided into three categories: CATEGORY ONE was a person with constitutional standing to sue in his own name alone. He was usually referred to in judicial opinions as the "owner," "effective owner," or "assignee" of the patent, or as an "exclusive licensee" who has received "all substantial rights" from the owner. His standing derived from the Patent Act, which provides a "patentee" is entitled to bring a civil action "for infringement of his patent." 35 U.S.C. § 281. "Patentee" includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee." *Id.* § 100(d). Those provisions of the Patent Act had been interpreted to require an infringement suit "ordinarily be brought by a party holding legal title to the patent." *Propat Intern. Corp. v. RPost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007). The exception would be where the party holding legal title transfers "substantially all rights" in the patent to another, in which case the transferee obtains CATEGORY ONE status. *Id.*

CATEGORY TWO was a person who has some exclusionary rights in the patent, but not enough to qualify as CATEGORY ONE. He was most often referred to in judicial opinions as an "exclusive licensee" who has not received "all substantial rights." *See, e.g.*, *Prima Tek, II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000). He had constitutional standing, but principles of prudential standing usually required him to join, as a co-plaintiff, the person with CATEGORY ONE status as to that patent. *Id.*; *WiAV*, 631 F.3d at 1264-65; *Luminara*, 814 F.3d at 1350.

CATEGORY THREE was a person who did not fall into either CATEGORY ONE or TWO, and thus had no constitutional standing. *Prima Tek*, 222 F.3d at 1377.

In a given case, the language in the underlying documents describing the transaction, or in the opinion describing the parties, may not accurately reflect the distribution of rights. *See, e.g.*, *AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1318 (Fed. Cir. 2009) (whether document was assignment or license "did not depend on the name applied to it"); *Morrow*, 499 F.3d at 1340 n.7. For example, a document titled as an "assignment" may not transfer sufficient rights to give the assignee CATEGORY ONE status; conversely, a document titled only as a "license" may

transfer sufficient rights to constitute an assignment, thus conferring CATEGORY ONE status. Or a document granting what it refers to as an "exclusive license" may contain limitations on exclusivity that preclude CATEGORY TWO status. Or someone may be referred to in an opinion as the "owner," even after he assigned the patent, where he received a license back from the assignee.

To avoid confusion, wherever possible this discussion will use the above CATEGORY designations to describe the parties to standing disputes.

### B.  The background to *Mann*.

Most patent cases in which standing was discussed at the appellate level had a familiar pattern. The person to whom the patent was issued or assigned (usually referred to as the "owner") granted an "exclusive" license to another person. The court then examined the rights the license transferred, to determine whether those rights were sufficiently exclusive to give the recipient constitutional standing, and whether the patent rights the "owner" had retained require it to be named as a co-plaintiff (the latter being a question of prudential, not constitutional, standing). *See*, *e.g.*, *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016 (Fed. Cir. 2001); *see also Speedplay*, 211 F.3d at 1249-52; *Azure Networks*, 771 F.3d at 1342. But there was generally always a CATEGORY ONE plaintiff or co-plaintiff, either already in the case or potentially to be named.

In September 2007, the Federal Circuit issued *Morrow*, which had a somewhat different fact pattern. In that case, the entity that had been the patent owner (AHC) went bankrupt and went out of business. In the bankruptcy, the various creditor groups agreed to distribute differing portions of the rights in the patent to three separate entities. The court ruled the named plaintiff (GUCLT), the one of those three entities to which the creditors had given the right to sue, was a CATEGORY THREE plaintiff, and thus did not have constitutional standing.

Following that decision, there was a concern in the patent bar that the opinion, if extended beyond the case's holding in a bankruptcy context, might result in *no one* having constitutional standing to bring suit on a patent, depending upon how the various rights had been divided up.

1    (Indeed, three months after *Morrow*, a district court seemed to have accepted that possibility.

2    *Fairchild Semiconductor Corp. v. Power Integrations, Inc*., 630 F. Supp. 2d 365, 371 (D. Del.

3    2007)). Because that result would be unsatisfactory (and presumably unintended), the bar expected

4    the Federal Circuit to clarify that issue, in some future case. *Mann* was that case.

5    ## C.  *Mann* explained there is always a CATEGORY ONE plaintiff.

6            In *Mann*, the patents, when issued, were assigned to AMF. AMF later gave certain rights to

7    a separate entity, AB, and retained others. AMF then sued Cochlear, which moved to dismiss for

8    lack of constitutional standing, claiming AMF had not retained sufficient rights to be a

9    CATEGORY ONE plaintiff.

10           The opinion described the relevant principles in terms of a transfer of rights from an

11   owner/licensor who, before the transfer, had possessed all substantial rights in the patent (and thus

12   had CATEGORY ONE status) to an "exclusive licensee." Relevant to Apple's motion, *Mann* held:

13           A patent owner may transfer all substantial rights in the patent-in-suit, in which case the
14           transfer is tantamount to an assignment of those patents to the exclusive licensee, conferring
             standing to sue solely on the licensee. . . .

15                                              ***

16           This happens when the exclusive license transfers "all substantial rights" in the patents.
17           When this happens, the exclusive licensee has sole standing to sue those suspected of
             infringing the patents' claims. . . . This case presents a . . . scenario in which the patent
18           owner seeks to bring suit, requiring us to determine whether the patent owner transferred
             away sufficient rights to divest it of any right to sue.

19                                             * * *

20           [A] patent may not have multiple separate owners for purposes of determining standing to
21           sue. *Either the licensor did not transfer "all substantial rights" to the exclusive licensee, in
             which case the licensor remains the owner of the patent and retains the right to sue for
22           infringement*, or the licensor did transfer "all substantial rights" to the exclusive licensee, in
             which case the licensee becomes the owner of the patent for standing purposes and gains the
23           right to sue on its own. In either case, *the question is whether the license agreement
             transferred sufficient rights to the exclusive licensee to make the licensee the owner of the
24           patents in question. If so, the licensee may sue but the licensor may not. If not, the licensor
             may sue, but the licensee alone may not.*

25

26

27

28

604 F.3d at 1358-60 (citations omitted) (emphasis added). This portion of *Mann* resolved the lingering issue from *Morrow*, by ruling out a scenario where *no one* has standing to sue on a given patent.

The opinion established a default rule: One who possesses sufficient rights to qualify as the sole CATEGORY ONE plaintiff maintains that status unless and until he transfers "all substantial rights" to another, after which that other qualifies as the CATEGORY ONE plaintiff. In a situation where a CATEGORY ONE plaintiff transfers some rights – but not "all substantial rights" – that entity retains CATEGORY ONE status (including the "right to sue for infringement").

Here, originally *all* of the patent rights were obtained by Legacy Plaintiffs, which gave them CATEGORY ONE status. Apple does not argue Legacy Plaintiffs transferred "all substantial rights" to Fortress. Nor could it, because Fortress's right to sublicense, if it had any such right, would have been merely *nonexclusive*, Dkt. No. 165-6 at ¶ 2.1, far short of a grant of "all substantial rights." Under *Mann*, Legacy Plaintiffs thus had "the right to sue for infringement" at the time of filing.

*Mann* states, unambiguously, if "the licensor did not transfer 'all substantial rights' to the exclusive licensee[,] the licensor … retains the right to sue for infringement." Here, Legacy Plaintiffs would have been the "licensor," and they did not transfer "all substantial rights" to Fortress. Thus, Fortress's receiving a nonexclusive right to sublicense in the event of a default could not have deprived Legacy Plaintiffs of their CATEGORY ONE status, and Legacy Plaintiffs "retain[] the right to sue for infringement."

Reinforcing the default rule of *Mann* are several Federal Circuit cases that found a person with CATEGORY ONE status maintains that status, despite others having a right to sublicense:

In *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1342 (Fed. Cir. 2006), the action was filed by Contour, the original owner of the patent (and thus the original holder of CATEGORY ONE status). The court held Contour maintained its CATEGORY ONE status, and thus constitutional standing, despite having transferred to another person "the exclusive right to make, use, and sell" products covered by the patent and a "virtually unfettered right to sublicense

all of its rights to a third-party," *id.*, at 1338-39, 1341-42, as Contour "retained 'no supervisory power or veto power'" over that person's grant of sublicenses. *Id.*, at 1342.

In *AsymmetRx*, the original owner (Harvard, a nonparty) was held to have CATEGORY ONE status, and constitutional standing, even though it had transferred to a licensee (AsymmetRx) the right to grant a sublicense. 582 F.3d at 1316. The court required Harvard be joined as a party.

In *Prima Tek*, the original owner (Southpac) was held to have maintained its CATEGORY ONE status, even though another person (Prima Tek II) had a contractual right to grant additional sublicenses. 222 F.3d at 1375.

And in *Mann* itself, the original owner (AMF) retained its CATEGORY ONE status, even though it may have transferred to an exclusive licensee (AB) a right to grant sublicenses to "defendants sued by AMF." 604 F.3d at 1362.

Apple is well aware of the importance of *Mann* on this issue, as that importance was explained in spades in the briefing in the -360 action. 3:18-cv-00360, Dkt. No. 142, at 5-7. But Apple's Motion does not even cite the case, cleverly holding back its arguments until its Reply Brief, thus preventing Legacy Plaintiffs from responding to those arguments.

Apple bases its argument – a person does not have standing if another person has a right to sublicense – on dicta from *WiAV*, 631 F.3d at 1266. Mot. at 16. But that was a CATEGORY TWO case, not a CATEGORY ONE case. WiAV had added the CATEGORY ONE entity (Mindspeed, referred to in that opinion as the "patent owner") as an involuntary defendant. *Id.*, at 1265 n.1. WiAV claimed standing as a CATEGORY TWO plaintiff, as the holder of an *exclusive* license to the relevant patents. Because, unlike CATEGORY ONE, CATEGORY TWO status required exclusivity, the issue was whether another's right to license those patents deprived WiAV of its exclusivity, and thus of its CATEGORY TWO status. As discussed above, in that action no one questioned the Article III standing of the patent owner, Mindspeed.

Apple cites similar dicta from *Luminara*, 814 F.3d at 1348. Mot. at 16. In that case, the owner of the patent was not even a party. The question for the court was whether the exclusive license agreements signed prior to suit being filed, which gave the exclusive licensee a right to

1  sublicense, transferred "all substantial rights." In that context, the court said that if the *patent*

2  *owner* was free to license "any" entity, "all substantial rights" would not have been transferred. *Id.*

3  The opinion does not suggest that the patent owner, who was not involved in the action, would

4  lack Article III standing. To the contrary, as discussed above at p. 4, the opinion discussed the

5  importance of the patent owner's being made a party.

6       The Federal Circuit did not arrive at this default rule arbitrarily. The rule has considerable

7  significance to patent litigation and the law of patents generally. A holding that *no one* has

8  standing to enforce a patent, the result for which Apple is unabashedly arguing, would have

9  profound implications, all of which are negative. The *Mann* rule should be followed here, and

10  Apple's argument should be rejected.

11       **5.     "[N]o relevant event of default existed at the time plaintiffs filed the suits."**

12       The above was the Court's conclusion in its Order at 7. In reaching that conclusion, the

13  Court dealt exhaustively with the factual issue of whether there had been an event of default under

14  the Revenue Sharing Agreement (RSA), Dkt. No. 165-5, and, more importantly, whether any such

15  default had been cured to Fortress's reasonable satisfaction. This Court ruled in Legacy Plaintiffs'

16  favor on this point:

17       Even assuming that the above-mentioned occurrences did constitute events of default, this
         order finds that they were annulled under section 7.3 of the Revenue Sharing
18       agreement….That Fortress chose to execute a third amendment to the revenue sharing
         agreement with plaintiffs… and thus made substantial additional investments – despite
19       knowledge of plaintiffs' alleged discrepancy between the actual and target (as set forth in
         the agreement) revenue – indicates that plaintiffs cured the purported default for failing to
20       reach the… target revenue by March 31, 2017, to Fortress's reasonable satisfaction.

21  Order at 6.

22       Apple was unable to poke holes in the Court's logic. Instead, the Motion largely

23  recirculates the same arguments Apple raised the first time around.

24       In the earlier briefing, Legacy Plaintiffs had submitted a declaration of Fortress's James

25  Palmer averring that he did not view Uniloc as having defaulted, but in any event:

26       To the extent Apple argues the shortfall created an "Event of Default" before May 15,
         2017, even though Fortress did not view it that way, there is no dispute Fortress's signature
27       to the May 15 Agreement establishes Uniloc had cured that ostensible "Event of Default"

28

to Fortress's satisfaction . And, to the extent there had been minimum monetization revenue requirements for the period prior to May 15, 2017, Fortress viewed the May 15, 2017 Agreement as wiping the slate clean.

3:18-cv-00360, Dkt. No. 142-1, ¶ 12.

The Motion argues Palmer, at his deposition, "contradicted, disavowed, and discredited" the above testimony. Mot. at 11-13. To the contrary, at his deposition Palmer repeated "we never considered them in default" in response to at least twenty different questions. *See* Gannon Decl., Ex. A. And as to whether there had been a "cure," Palmer gave the same response as in his declaration:

> Q. How did Uniloc cure the event of default that you're referencing in paragraph 12 of your declaration?
>
> A. Okay. So I think what I'm trying to say here is I never believed them to be in default. And if for some reason somebody says they are in default, the simple fact that we executed that May 15 agreement, you know, states that these guys are not in default

Ex. A at 211:9-17; *see also* 211:18-212:9. In arguing Palmer "admitted" there was no cure, Apple omits that he clearly and repeatedly explained the basis for his position was there had been no default to be cured.

Apple appears to agree Fortress was satisfied, and thus would not have wanted to act on any event of default, if it had perceived one. As this Court noted: "Apple has not challenged the veracity of the Palmer declaration in this respect." Order at 7.

But Apple now raises a semantic argument, namely, that a "cure" requires some action have been taken *after* the deadline to make up the revenue deficit as of the deadline. Mot. at 12-13. But Apple overlooks the contractual language was not simply "cured," but rather "cured to [Fortress's] reasonable satisfaction," which imports Fortress's subjective judgment into what Uniloc is required to accomplish. If the level of monetization Uniloc actually achieved by the deadline, together with Uniloc's performance as to other financial aspects of the relationship causes Fortress to be reasonably satisfied with Uniloc's performance under the contract as of the deadline, or at any point thereafter, the event of default would be cured to Fortress's reasonable

satisfaction.[4] Apple's argument would read "to [Fortress's] reasonable satisfaction" out of the contract.

Apple's argument also ignores that a contract is generally interpreted to fulfill the intent of the contracting parties. The above language would suggest the parties intended Fortress's reasonable satisfaction would be the gauge for determining what constitutes a cure; and no one disputes Fortress was reasonably satisfied. Apple provides no argument as to why the parties to the contract would have intended the contract to be interpreted otherwise.

Apple's argument that execution of the Third Amendment is not itself a cure, Mot. at 14-15, misinterprets this Court's Order, which simply stated the execution evidenced Fortress had been reasonably satisfied.

**6.    The Federal Circuit has rejected Apple's legal position.**

The Motion appears to assume as a legal matter that a failure by Uniloc to meet a monetization target in the Revenue Sharing Agreement 1) gave Fortress a right to grant sublicenses, even though Fortress did not believe it had that right; and 2) would have deprived Legacy Plaintiffs of standing even though Fortress would have refused to exercise that right (assuming it thought it had such a right). The Federal Circuit has already rejected that argument.

In *Uniloc USA Inc. v. ADP, LLC*, 772 Fed. Appx. 890, 894-95 (Fed. Cir. 2019), appellees, literally copying this argument from Apple's briefs in the -360 action, argued Uniloc (referring to Legacy Plaintiffs here) lacked constitutional standing because an alleged breach by Uniloc of a third-party contract gave that third-party (IBM) an unfettered right to sublicense the patents-in-suit.

But the Federal Circuit rejected the argument:

> According to Movants, Uniloc's failure to indemnify ADP automatically triggered Section 2.1(e) in the 2016 Uniloc-IBM Agreement, which gave IBM the right to "license ... without notice or accounting" to "third parties involved in any activities related to or arising from defense, enforcement or licensing under any Assigned Patent." Movants contend that Uniloc thus could no longer wholly exclude Appellees from practicing the patents, and

---
[4]  Apple misleadingly cites portions of statements by Uniloc counsel at a hearing a Delaware as "concessions," Mot. At 14, when the full transcript shows they were anything but. *See* Dkt. No. 165-4.

that Uniloc thus lacked constitutional standing under *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257 (Fed. Cir. 2010). Relying on *Moore v. Consolidated Edison Co. of NY*, 409 F.3d 506, 509 (2d Cir. 2005), Movants argue that because constitutional standing was lost, we must dismiss the appeal.

\* \* \*

Movants' argument is predicated on the existence of a breach of the 2016 Uniloc-IBM Agreement. But Movants have not shown that IBM, which is not a party to this litigation, considers Uniloc to be in breach or has asserted a right to sublicense and release Movants from liability relating to the patents-at-issue. Only ADP and Movants here have asserted a breach of the 2016 Uniloc-IBM Agreement. But neither ADP nor Movants are parties to the Agreement.

\* \* \*

Movants cite no other basis from which to assert a breach of the indemnification provision on behalf of IBM so as to activate the reversionary interest on which they base their jurisdictional argument. For example, they do not assert that they are intended beneficiaries of the contract. *See* Restatement (2d) of Contracts § 302 (defining intended and incidental beneficiaries) and Comment e ("[U]nless the third person is an intended beneficiary as here defined, no duty to him is created."); U.C.C. § 3-301 (defining "[p]erson entitled to enforce' an instrument" as "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) [in circumstances of a lost, destroyed or stolen instrument, or where the instrument was accepted by mistake]"). The breach of a contract potentially involves disputes of materiality, potential opportunities to cure, and available remedies, all of which are consummate contract issues to be resolved between the parties. *See, e.g.,* Restatement (2d) of Contract §§ 225 (effects of the non-occurrence of a condition); 229 (excuse of a condition to avoid forfeiture); 241 (circumstances significant in determining whether a failure is material); 242 (circumstances significant in determining when remaining duties are discharged); 246 (effect of acceptance as excusing the non-occurrence of a condition). Movants have not pointed to any case where a non-beneficiary third party has asserted a breach of a contract that successfully triggered remedial provisions in the contract.

\* \* \*

For the foregoing reasons, Movants motion to dismiss based on a loss of standing is denied.

*Id.*

That opinion would appear to be dispositive here. As in *ADP*, Apple is unable to show the third party (Fortress) either considered Uniloc in breach or had asserted a right to sublicense and

release Apple from liability. Under the above precedent, this Court must likewise dismiss the jurisdictional challenge.

The decision in *ADP* is consistent with *Central Admixture Pharmacy Services, Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1352-53 (Fed. Cir 2007), where the patentee was alleged to lack standing because his failure to execute a license required by the National Institutes of Health gave the government *discretionary* authority to take title. The court rejected the argument:

> NIH has shown no interest in pursuing the matter. Absent any action by NIH, [patentee] retains title to the patent and his exclusive license [to co-plaintiff] is valid. The two plaintiffs together own all present rights in the … patent, providing them standing to bring this action.

In both cases, the Federal Circuit held that unexercised discretionary rights held by a third-party do not deprive the patent owner of standing to bring an infringement action. Here, Apple argues that Fortress had only discretionary  authority, and even that alleged authority was not to take title, but only the nonexclusive right to sublicense the patent.

**7.      Uniloc 2017 has standing.**

On May 3, 2018, Uniloc Luxembourg assigned the patent-in-suit to Uniloc 2017 LLC. 3:18-cv-00360, Dkt. No.135-15. Also on that date, Uniloc Luxembourg and Fortress terminated the Patent License. 3:18-cv-00360, Dkt. No. 135-14 at § 2.7(b)(vi). By November 17, 2018, Uniloc 2017 owned all rights in the patent-in-suit, including the rights being pursued in this action, and Legacy Plaintiffs no longer had any interest in the patent or in this action. -360 Dkt. No.164-2 at 8-9.

By virtue of this transfer of interest, Uniloc 2017 acquired, and currently possesses, constitutional standing to sue for Apple's infringement that occurred before May 26, 2017 (as well as infringement that occurred after), and thus Legacy Plaintiffs seek to add it as a plaintiff under FRCP 25(c). Dkt. No. 122. The Federal Circuit has already ruled Uniloc 2017 has succeeded to the rights of the Legacy Plaintiffs and has standing to assert their former rights in continuing litigation. *ADP, LLC*, 772 Fed. Appx. at 893-94.

1    Apple does not appear to dispute Uniloc 2017 should be added as a plaintiff, should the

2    Court find it has jurisdiction over the action.[5]

3

4    Date: November 5, 2020                          Respectfully submitted,

5
                                                      */s/ James J. Foster*
6                                                     Aaron S. Jacobs (Cal. Bar No. 214953)
                                                      ajacobs@princelobel.com
7                                                     James J. Foster
                                                      jfoster@princelobel.com
8                                                     **PRINCE LOBEL TYE LLP**
                                                      One International Place, Suite 3700
9                                                     Boston, MA 02110
                                                      617-456-8000
10
                                                      Matthew D. Vella (Cal. Bar No. 314548)
11                                                    mvella@princelobel.com
                                                      **PRINCE LOBEL TYE LLP**
12                                                    357 S Coast Highway, Suite 200
                                                      Laguna Beach, CA 92651
13
                                                      Attorneys for Plaintiffs
14

15

16

17

18

19

20

21

22

23    _____
      [5]  As explained above at pp. 1-2, Apple does not argue the Court lacked jurisdiction over claims for
24    pre-filing infringement. Because the Court thus had jurisdiction over those claims at the time of
      filing, the action cannot be dismissed. If the Court were to find a defect with respect to *post-filing*
25    infringement claims, that defect would not be jurisdictional. Any such problem would have been
      corrected in 2018 by the termination of all Fortress rights, and the concentration of all rights in
26    Uniloc 2017. Non-jurisdictional defects can be corrected without dismissing the action. *Schreiber
      Foods, Inc.* v. *Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203; *Caterpillar Inc. v. Lewis*, 519 U.S. 61,
27    64 (1996); *Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 385 F.3d 1360, 1371-72 (Fed.
      Cir. 2004). *See also* Order at 9.
28