Michael T. Pieja (CA Bar No. 250351)
Alan E. Littmann (*pro hac vice*)
Jennifer Greenblatt (*pro hac vice*)
Doug Winnard (CA Bar No. 275420)
Andrew J. Rima (*pro hac vice*)
Emma C. Ross (*pro hac vice*)
Lauren Abendshien (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
jgreenblatt@goldmanismail.com
dwinnard@goldmanismail.com
arima@goldmanismail.com
eross@goldmanismail.com
labendshien@goldmanismail.com

*Attorneys for Defendant Apple Inc.*

(Additional counsel listed in signature block)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNILOC USA, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No.   3:18-cv-00358-WHA<br><br>**DEFENDANT APPLE INC.'S**<br>**REPLY IN SUPPORT OF ITS MOTION TO**<br>**DISMISS FOR LACK OF SUBJECT-MATTER**<br>**JURISDICTION**<br><br>JUDGE: Hon. William Alsup<br><br>DATE: Thursday, December 3, 2020<br>TIME: 8:00 a.m.<br>COURTROOM: 12, 19th Floor<br>JUDGE: Hon. William Alsup |

## I. INTRODUCTION

The relevant agreements between Plaintiffs Uniloc USA, Inc. ("Uniloc USA") and Uniloc Luxembourg, S.A. ("Uniloc Lux") (collectively, "Uniloc") and Fortress Credit Co LLC ("Fortress") are unambiguous, and the material facts are undisputed. Under the express terms of the License Agreement ("Fortress License") between Uniloc and Fortress, Uniloc granted Fortress a non-exclusive, sublicensable license to all of Uniloc's patents. Fortress could use its right to sublicense however it wanted, in its sole and absolute discretion, as long as an Event of Default had occurred. (Mot. Ex. E, § 2.1.) And under the Revenue Sharing Agreement ("RSA") between Uniloc and Fortress, Uniloc's failure to perform under Section 6.2.2 was an "Event of Default." (Mot. Ex. D, § 7.1.2.) Section 6.2.2, in turn, required Uniloc to generate $20 million in revenue over the four-quarter period ending March 31, 2017. (*Id.* § 6.2.2.) The undisputed facts establish that Uniloc did not meet that target. So, too, is it undisputed that Uniloc did nothing to rectify the Event of Default caused by its revenue shortfall, and that Fortress never waived Uniloc's Event of Default. (Mot. at 11–15.) Instead, Fortress executed an amendment that expressly disclaimed any waiver and confirmed that the provisions of the RSA—including Section 6.2.2—remained in full force. (Mot. Ex. F, § 4.)

These clear provisions and undisputed facts lead to an inescapable conclusion: Fortress held the right to license the patent-in-suit to Apple at the time Uniloc sued Apple. That right vested automatically—without the need for Fortress to declare a breach or give notice to Uniloc—and Fortress never relinquished it. While Fortress and Uniloc now claim that Fortress would not have wanted to use its right, constitutional standing turns on the rights actually held, not what parties may feel about those rights in hindsight. The rights held by Fortress deprived Uniloc of the right to exclude Apple from practicing the patent-in-suit and, thus, of constitutional standing to sue.

Uniloc's Opposition largely repeats the same erroneous legal and factual arguments it has made previously. Those arguments fare no better the third, fourth, or fifth time around. Uniloc also makes a new argument, claiming that Fortress's sublicensing right could not cover past infringement. There is a reason Uniloc never felt this argument was worth raising previously in the two years since Apple first raised standing: it is meritless. Uniloc's new argument contradicts clear principles of contract interpretation and has no legal support. Apple's Motion should be granted.

## II. AN EVENT OF DEFAULT OCCURRED AND WAS NEVER CURED OR WAIVED

Uniloc does not dispute that (1) it triggered an Event of Default under the unambiguous terms of the RSA and (2) it did nothing to rectify that Event of Default. Thus, Uniloc never "cured" its default, by the plain meaning of the term.

Rather than address these facts, Uniloc argues that Fortress later stated, contrary to the terms of the RSA, that it did not consider Uniloc's revenue shortfall to be an Event of Default. (Opp'n at 11–13.) But it is irrelevant what Fortress now claims to have believed. The RSA provides an objective standard: Fortress and Uniloc defined Uniloc's failure to generate $20 million in revenue as of March 31, 2017, as an Event of Default. (Mot. Ex. D, §§ 6.2.2, 7.1.2.) That provision does not depend in any way on what Fortress believed or felt about Uniloc or its performance. Neither Uniloc nor Fortress disputes that the RSA is unambiguous. The RSA thus provides the only permissible and relevant evidence of the parties' intent and shows that the parties *did* consider Uniloc's revenue shortfall to be an Event of Default. And the parties' execution of the Third Amendment on May 15, 2017, confirms that intent. (*See* Mot. Ex. F, § 4 (disclaiming any waiver of Fortress's rights and confirming that, except as amended, the RSA "shall remain unchanged and in full force and effect").) No amount of hindsight proclamations can disturb or change the parties' intent as reflected in their unambiguous agreement. *Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1060 (Fed. Cir. 2020).

Uniloc also wrongly argues that even though Uniloc did nothing at all to rectify its revenue shortfall, Fortress's later claim to have been satisfied operated to cure any Event of Default. (Opp'n at 12–13.) Apple's Motion already explained why Uniloc is wrong: (1) Uniloc gives no meaning to the word "cure," as Judge Connolly pointed out; (2) Uniloc wrongly converts the "cure" provision into a waiver provision, even though the RSA distinguishes the two; (3) Uniloc contradicts the RSA's prohibition on implied waivers; and (4) Uniloc admitted that a failure to generate revenue by a specified date is incurable. (Mot. at 12–14.) Uniloc offers no answer to any of Apple's arguments, any one of which suffices to dispose of Uniloc's "cure" argument.

Sidestepping Apple's arguments, Uniloc tries to argue that "reasonable satisfaction" sets a "subjective" standard. (Opp'n at 12.) Not so: it is black-letter law that the term "reasonable" establishes an "objective standard." *See, e.g.*, *Greenwood v. Koven*, 880 F. Supp. 186, 199 (S.D.N.Y.

1995). Under an objective standard, Fortress's professed satisfaction with Uniloc's total failure to do anything to cure, address, or fix its Event of Default cannot be "reasonable." Further, even if Fortress's subjective satisfaction were relevant, it would still not suffice to establish a "cure" under Section 7.3(y) of the RSA. No matter how happy Fortress claims to have been, the RSA's cure provision still requires Uniloc to do *something* to rectify an Event of Default before Fortress can be satisfied with whatever it did. Here, Uniloc admits it did nothing at all; it simply claims that Fortress was happy anyway. The RSA has a different word for that circumstance: waiver. But the RSA requires waivers to be in writing, and there is no written waiver here. Thus, Fortress's subjective satisfaction is irrelevant and cannot annul an Event of Default.

Uniloc also attempts to argue that James Palmer's deposition testimony, which admits there was never a cure, was the same as his prior declaration, which stated there had been such a cure. (Opp'n at 11–12.) These statements are diametrically opposed and cannot be reconciled. Mr. Palmer's declaration attempted to provide evidence of a cure, and the Court relied on the declaration to find that a cure had in fact occurred. (-360 Dkt. No. 158 at 7.) Mr. Palmer's deposition testimony, however, makes clear that he does not and cannot provide evidence that any cure occurred. (Mot. Ex. A, Palmer 9/9/20 Dep. 188:25–189:5; *id.* at 215:11–13 ("[I] do not believe there was a default, so, therefore, there was not a cure.")). Instead, Mr. Palmer merely disagrees with the way the RSA defined an Event of Default. (*Id.* at 167:24–168:19 (referring to Section 6.2.2 as a mere "guideline").) His disagreement with the RSA is irrelevant parol evidence regarding the meaning of Event of Default. Because Mr. Palmer has now disavowed the prior statement on which the Court relied, the Court should now find that the March 31, 2017 Event of Default was never cured.

### III. UNILOC CONTINUES TO MISCONSTRUE THE *MANN* AND *LONE STAR* CASES

Compounding its factual errors regarding cure, Uniloc's Opposition makes several legal errors regarding standing. In its Opposition, Uniloc repeats the same erroneous arguments it has made, previously, regarding two Federal Circuit cases, *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir. 2010) and *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225 (Fed. Cir. 2019). Apple has already explained why neither *Mann* nor *Lone Star* is relevant and will briefly address why Uniloc's repackaging of its arguments does not

make them so. (*See* -360 Dkt. No. 147 at 3–5 (distinguishing *Mann*); Dkt. No. 163 at 4–8 (distinguishing *Lone Star*).

To start, *Mann* has nothing to do with the issue here: whether a third party's unfettered right to sublicense an accused infringer vitiates a plaintiff-owner's right to exclude that infringer and deprives them of standing. (*See* -360 Dkt. No. 147 at 3.) The issue in *Mann* was whether a patentee had transferred "all substantial rights" to an exclusive licensee. 604 F.3d at 1359–60. In resolving this issue, *Mann* held that there cannot be more than one entity with the right to sue in its own name. *Id.* at 1359 ("[A] patent may not have multiple separate owners for purposes of determining standing to sue."). From this, Uniloc makes an illogical leap: if *Mann* says there cannot be ***more than one*** entity with such a right, there also cannot be ***less than one***. Neither *Mann* nor logic supports this conclusion. To the contrary, the reasoning in *Morrow v. Microsoft Corp.*—a case *Mann* never cites, let alone criticizes—indicates that parties can divide rights in a patent in such a way that none has standing to sue because none holds the exclusionary rights necessary. 499 F.3d 1332, 1341 n.8 (Fed. Cir. 2007).

Uniloc's discussion of *Mann* also wrongly merges Uniloc USA and Uniloc Lux into a single, fictional entity for purposes of standing analysis. (*See, e.g.*, Opp'n at 9 ("Here, originally all of the patent rights were obtained by Legacy Plaintiffs, which gave ***them*** CATEGORY ONE status.") (emphasis added).) But the law clearly requires each entity to stand on its own for purposes of Article III standing. *See, e.g., Morrow*, 499 F.3d at 1340–41. As Apple's Motion explained, neither Uniloc USA nor Uniloc Lux possessed the exclusionary rights needed. Uniloc Lux divested itself of all rights, including the rights to license or exclude others, leaving it a nominal title holder with no constitutional standing to join suit. (Mot. at 16–17); *see Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959 (2015).[1] And Uniloc USA took its license subject to Fortress's vested, unfettered right to sublicense the patent-in-suit, leaving Uniloc USA without the right to exclude Apple. (Mot. at 16–17); *see Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed. Cir. 2000). Thus, to borrow Uniloc's parlance, each of Uniloc USA and Uniloc Lux was a "CATEGORY THREE" entity who could not bring suit, alone or together.

---

[1] Uniloc argues that Apple cited no case where "the owner of a patent lacked constitutional standing." (Opp'n at 4.) Not so. Apple cited *Azure Networks*, which held exactly that. (Mot. at 6.)

Uniloc's repeated self-contradictions in its efforts to apply its novel "CATEGORY" theory of the law underscore the inconsistency of Uniloc's positions. In its Opposition, Uniloc claims that Uniloc Lux had the right to sue in its own name as a "CATEGORY ONE" entity. (Opp'n at 3, 9.) But Plaintiffs alleged in their Complaint that Uniloc USA held "all substantial rights" in the patent-in-suit, (Dkt. No. 1 ¶ 9), which would leave Uniloc Lux as nothing more than a "CATEGORY THREE" entity with no exclusionary rights and thus no right to participate at all. *See Azure Networks*, 771 F.3d at 1347. Moreover, by naming both Uniloc USA and Uniloc Lux as plaintiffs, Uniloc treated neither as a "CATEGORY ONE" that could sue in its name alone, but instead as "CATEGORY TWO" plaintiffs that had to bring suit together. Uniloc's inability to consistently explain how its "CATEGORY" theory applies is yet another reason to reject it.

As to *Lone Star*, the parties have already briefed this case extensively. (*See* Dkt. No. 163 at 2–8.) Contrary to Uniloc's argument, *Lone Star* does not hold that a right to license, without the right to exclude, suffices for Article III standing. (*Id.* at 4–6.) If that were true, Fortress could have sued any party it wanted because it held a right to license any party—even though its license was "nonexclusive" and conveyed no right to exclude. No court has ever endorsed such an conclusion, and several have rejected it. *See Uniloc 2017 LLC v. Box, Inc.*, No. 19-cv-06988, 2020 WL 611565, at *1–2 (N.D. Cal. Feb. 7, 2020). *Lone Star* did not and could not upend established precedent holding that a non-exclusive licensee lacks constitutional standing, even if it holds a right to license. (*See* Dkt. No. 163 at 4–6); *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1194 (Fed. Cir. 2007).

## IV. FORTRESS'S RIGHTS VESTED AUTOMATICALLY WITHOUT ANY ACTION REQUIRED

Uniloc contends that, because Fortress did not exercise its licensing rights or declare a default, and because Apple is not a third-party beneficiary to the Fortress License, Apple cannot challenge standing. (Opp'n at 13–15.) For support, Uniloc relies on a non-precedential opinion, *Uniloc USA Inc. v. ADP, LLC*, 772 F. App'x. 890, 894–95 (Fed. Cir. 2019). *ADP* is not persuasive here.

Firstly, *ADP* is inapposite because Apple is not seeking to "enforce" a contract as a third-party beneficiary. It seeks neither damages nor a court order requiring Uniloc or Fortress to do anything. And no action is or was required: Fortress already had its license and associated sublicensing rights. (*See* Mot. Ex. D, § 2.8; Mot. Ex. C, -1658 10/1/20 Hearing Tr. 33:8–9) ("[S]ection

2.8 is pretty clear on that it seems. They had the license.").) And once an Event of Default occurred on March 31, 2017, the sole limitation on Fortress's sublicensing right was automatically lifted. (Mot. Ex. D, RSA §§ 7.1.2, 6.2.2.) Uniloc admits as much: "Once there's an event of default, they can use it." (Mot. Ex. C, -1658 10/1/20 Hearing Tr. 27:23–28:9.) Because the license vested Fortress with a sublicensing right automatically without the need for any further act, Apple need not be a third-party beneficiary to the license in order to argue that its terms be given their clear legal effect. *See Filmtec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1573 (Fed. Cir. 1991) (permitting accused infringer to raise standing issue based on transfer of rights in patent where "no further act would be required once an invention came into being; the transfer of title would occur by operation of law"); *see also DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) (describing automatic assignment that occurred "by operation of law with no further act required").

Additionally, Fortress's sublicensing right differed substantially from the interest IBM held in *ADP*. There, IBM held only a "reversionary interest" at the time it conveyed patent rights to Uniloc, suggesting that some future act would be needed to activate that reversion. By contrast, Fortress's sublicensing rights in the patent-in-suit were not reversionary: they existed from the moment Uniloc acquired that patent. An Event of Default occurred on March 31, 2017, vesting Fortress with an unfettered sublicensing right in all patents Uniloc owned. When Uniloc acquired the patent-in-suit two months later, on May 26, 2017, Fortress's rights attached to that patent automatically. (Mot. Ex. G, Levy 9/21/18 Dep. 66:22–67:5, 71:21–72:1.) Thus, from the moment Uniloc obtained title to the patent-in-suit, Fortress held the right to sublicense that patent in its "sole and absolute discretion."

The *Central Admixture* case, cited by Uniloc, is similarly distinguishable. There, the Federal Circuit determined that a contractor's violation of the Bayh-Dole Act did not "automatically" transfer the contractor's rights in a patent to the government because the government needed to "take an affirmative action" to obtain those rights, but had not done so. *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1352–53 (Fed. Cir. 2007). By contrast, Fortress already held its license and did not need to take action to obtain the rights granted to it, as Uniloc itself concedes. (Mot. Ex. E, Fortress License § 2.1 ("[Uniloc] hereby grants to [Fortress] . . ."); Mot. Ex. C, -1658 10/1/20 Hearing Tr. 27:23–28:9.) Thus, unlike the government in *Central Admixture* or

IBM in *ADP*, each of which had to take action or declare a breach before they could obtain certain rights, Fortress already held its sublicensing right. It had no need to declare any breach or invoke any "reversionary interest." Uniloc and Fortress were sophisticated parties who could easily have imposed such a requirement had they wanted, as they did elsewhere in the RSA. (*See, e.g.*, Mot. Ex. D, RSA § 7.2.2 (requiring written notice to trigger acceleration remedy following Event of Default).) They elected not to, and must now live with that choice.

Finally, many courts have implicitly rejected Uniloc's argument that accused infringers cannot challenge a patent plaintiff's standing to sue because they are not third-party beneficiaries. For example, the court in *Walker Digital, LLC v. Expedia, Inc.*, analyzed a patent transfer agreement between plaintiff Walker Digital and non-party eBay to determine whether the plaintiff or eBay owned the patents at issue. 950 F. Supp. 2d 729, 737 (D. Del. 2013), *aff'd* (Dec. 30, 2014). Both parties to the agreement claimed, via parol evidence, that it was not their intent to transfer those patents to eBay. *Id.* (discussing declaration submitted by third party to support plaintiff). The accused infringer—who was not a third-party beneficiary to the agreement—argued that the agreement did transfer the patents to eBay. *Id.* The court sided with the accused infringer, holding that the unambiguous language of the agreement transferred the patents to non-party eBay, despite what the parties to the agreement now claimed. *Id.* Similarly, in *Dominion Assets LLC v. Masimo Corp.*, the plaintiff had assigned its rights in the patents-in-suit in 2010, but claimed that the assignment was mutually rescinded before it filed suit in 2012. No. 12-cv-02773, 2014 WL 2937058, at *7 (N.D. Cal. June 27, 2014). It offered declarations from its assignee to support its rescission claim. *Id.* The court permitted the defendant, who was not described as a third-party beneficiary to the assignment, to challenge this purported rescission. *Id.* at *8. The court concluded that, contrary to the claims of both parties to the contract, the contract had not been rescinded before plaintiff filed suit, and dismissed the case for lack of subject-matter jurisdiction. *Id.* at *10. Just as in *Walker Digital* and *Dominion Assets*, the court here should decide jurisdiction based on the express terms of the agreements, not on the *ex post facto* parol evidence of the contracting parties.

Further, there are good reasons why courts have rejected Uniloc's view of the law. If the law were as Uniloc argues, parties could unambiguously agree to divide their patent rights in a certain

DEFENDANT APPLE INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS FOR
LACK OF SUBJECT-MATTER JURISDICTION

7

CASE NO. 3:18-CV-00358-WHA

way, only to use parol evidence to retroactively disavow their bargain if they later found it expedient

way, only to use parol evidence to retroactively disavow their bargain if they later found it expedient to do so. The contracting parties could then argue that the public—because they were not specifically listed as a third-party beneficiary—was powerless to do anything about this sleight-of-hand. This outcome would invite mischief and subject federal jurisdiction to the whims of colluding patent owners. This court should instead look to the express terms of the agreements to determine how rights are divided, and find that Apple's third-party beneficiary status is irrelevant to the unambiguous terms of the Fortress License that vested Fortress with its sublicensing rights by operation of law.

## V. FORTRESS POSSESSED THE RIGHT TO GRANT RETROACTIVE LICENSES

Uniloc's Opposition offers a second new theory that is similarly devoid of legal support. Uniloc argues that, because the Fortress License did not explicitly say whether Fortress's sublicensing rights allowed it to license both past and future infringement, those rights were prospective only. (Opp'n at 1–2.) Uniloc has it backwards: in the absence of express language to the contrary, a sublicensing right includes the right to grant retroactive licenses. In *Canon Inc. v. Tesseron Ltd.*, for example, the court interpreted a license that "limit[ed]" the sublicensing right in some ways but "[did] not restrict the right to sublicense to a grant of prospective licenses." 146 F. Supp. 3d 568, 578 (S.D.N.Y. 2015). The court applied New York contract law—the same law that governs the Fortress License—and held that "[t]he presence of two sublicensing restrictions and the absence of a provision prohibiting retroactive sublicensing demonstrates that these sophisticated parties chose not to include one." *Id.* (citation omitted). The court in *Acceleration Bay LLC v. Activision Blizzard, Inc.* reached the same conclusion on similar facts, holding that a sublicensing right included the right to grant retroactive licenses because "[it] expressly provides [licensee] with the right to issue licenses without limitation, whether prospective or retroactive." No. 16-cv-453, 2017 WL 3668597, at *3 (D. Del. Aug. 24, 2017).

Here, the Fortress License grants Fortress a "sub-licensable" right to "exploit the Licensed Patents in any lawful manner in Licensee's sole and absolute discretion . . . ." (Mot. Ex. E, § 2.1.) Nothing in the License bars Fortress from granting retroactive licenses. To the contrary, it contains only two restrictions: (1) Fortress agreed not to use its rights absent an Event of Default, and (2) Fortress agreed to obtain Uniloc's consent before granting any sublicense imposing financial burdens

1  on Uniloc. (*Id.* §§ 2.1, 2.2.) The presence of these restrictions, and the absence of any bar on
2  retroactive licenses, establishes that Fortress's sublicensing right was not restricted to "prospective"
3  licensing rights. *See Canon*, 146 F. Supp. 3d at 578; *Acceleration Bay*, 2017 WL 3668597, at *3.
4  Uniloc does not cite any legal support for its contrary position, and it should be rejected.

5        Moreover, the duration of the Fortress License confirms the parties intended to give Fortress
6  the right to grant retroactive licenses. The License, and Fortress's sublicensing right, does not end
7  with patent expiration, but extends to at least "the date on which all statutes of limitations have fully
8  run for bringing infringement claims under the Licensed Patents . . . ." (Ex. N, Fortress License §
9  5.2(y).) The only reason to extend Fortress's sublicensing rights beyond expiration is to allow Fortress
10 to grant, after expiration, a license to cover pre-expiration conduct—i.e., a retroactive license. Thus,
11 Fortress's sublicensing right gave it the right to license both past and future acts of Apple, rendering
12 Uniloc's right to exclude Apple illusory at all times.

13 **VI.  DISMISSAL IS THE APPROPRIATE AND REASONABLE OUTCOME**

14       Lacking any factual or legal grounds for its position, Uniloc makes a final appeal to policy.
15 Uniloc suggests that "[i]f neither the patent owner nor anyone else had Article III standing, then no
16 one could enforce the patent and the patent would be infringed with impunity . . . ." (Opp'n at 5.) Not
17 so. If, as here, there is a period of time where the rights in a patent have been divided so that no
18 entities possess the exclusionary rights necessary to sue, then no party can sue *during that time*. But
19 it does not follow that a patent can be "infringed with impunity." The relevant entities can rearrange
20 their rights to give one of them the necessary exclusionary rights. That entity may then file suit,
21 seeking damages for the period of time when no one had standing, subject only to the six-year statute
22 of limitations applicable to any patent case.

23       Further, the situation presented here is unique. In the vast majority of cases, the relevant
24 division of rights involves two entities: a patent owner and an exclusive licensee. The division here,
25 which adds a third party with a sweeping sublicensing right, is hardly common. But Uniloc and
26 Fortress, as sophisticated parties, chose to adopt a unique division of rights in order to further their
27 business objectives. And Fortress benefited from the specific arrangement the parties chose. When
28 Uniloc triggered an Event of Default on March 31, 2017, Fortress obtained its unencumbered

sublicensing right without having to do anything. Instead, Fortress could, as it chose to do, continue to lend money to Uniloc for the purchase of additional patents as collateral while allowing the Event of Default to persist, unwaived, should circumstances—or its mind—change. Having obtained the benefit of this arrangement, Uniloc and Fortress must now accept the standing consequences of their chosen division of rights. *See Morrow*, 499 F.3d at 1341 n.8.

It is neither absurd nor draconian to hold that sophisticated entities that entered into a complex series of business transactions, guided by skilled attorneys, temporarily deprived themselves of standing to sue because they chose to divide their rights in a way that suited their business interests rather than meet standing requirements. Rather, it is the result that the law dictates. Apple's Motion should be granted, and Uniloc can attempt to re-file if it can show that it has fixed the fatal defects that left it without standing to sue in May 2017.

DATED:  November 12, 2020               Respectfully submitted,

                                         */s/ Doug Winnard*
                                         Michael T. Pieja (CA Bar No. 250351)
                                         Alan E. Littmann (*pro hac vice*)
                                         Jennifer Greenblatt (*pro hac vice*)
                                         Doug Winnard (CA Bar No. 275420)
                                         Andrew J. Rima (*pro hac vice*)
                                         Emma C. Ross (*pro hac vice*)
                                         Lauren Abendshien (*pro hac vice*)
                                         GOLDMAN ISMAIL TOMASELLI
                                         BRENNAN & BAUM LLP
                                         200 South Wacker Dr., 22nd Floor
                                         Chicago, IL 60606
                                         Tel: (312) 681-6000
                                         Fax: (312) 881-5191
                                         mpieja@goldmanismail.com
                                         alittmann@goldmanismail.com
                                         jgreenblatt@goldmanismail.com
                                         dwinnard@goldmanismail.com
                                         arima@goldmanismail.com
                                         eross@goldmanismail.com
                                         labendshien@goldmanismail.com

                                         Kenneth Baum (CA Bar No. 250719)
                                         GOLDMAN ISMAIL TOMASELLI
                                         BRENNAN & BAUM LLP
                                         429 Santa Monica Boulevard, Suite 710
                                         Santa Monica, CA 90401
                                         Tel: (310) 576-6900

Fax: (310) 382-9974
kbaum@goldmanismail.com

*Attorneys for Defendant Apple Inc.*

## PROOF OF SERVICE

The undersigned hereby certifies that a true and correct copy of **DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION** has been served on November 12, 2020, to all counsel of record who are deemed to have consented to electronic service.

*/s/ Doug Winnard*
Doug Winnard (CA Bar No. 275420)