UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNILOC USA, INC., et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>APPLE, INC.,<br><br>  Defendant. | No.  C 18-00358 WHA<br>No.  C 18-00360 WHA<br>No.  C 18-00363 WHA<br>No.  C 18-00365 WHA<br>No.  C 18-00572 WHA<br><br>**ORDER RE SEALING** |

## INTRODUCTION

This order addresses the sealing of evidence submitted in a patent infringement suit. Accepting that several courts of appeal have held certain licensing and financial records sealable at times, on the record provided, the sealing motions are **DENIED**.

## STATEMENT

Previous orders detail the background (No. C 18-00358, Dkt. No. 186, No. C 18-00360, Dkt. No. 157). In brief, these patent infringement suits have been funded by an entity called Fortress Credit Co. LLC, which took a broad license in the asserted patents as security and imposed annual monetization goals on plaintiff Uniloc. Accused-infringer Apple later discovered that when Uniloc filed these cases, it had failed to meet its monetization goals for the preceding twelve months, which released the sole condition on Fortress's license, letting it sub-license the asserted patents to the world. After several rounds of briefing and decision, and

a remand by the Court of Appeals for the Federal Circuit to take a fresh look, a December 4 order concluded that Uniloc indeed lacked standing to sue here (No. C 18-00358, Dkt. No. 186).

Several sets of sealing motions now converge here because of the piecemeal manner in which Uniloc's lack of standing has surfaced across these cases. We address both Uniloc's request to seal portions of Apple's most recent motion to dismiss and its requests to seal similar material in the related cases, Nos. C 18-00360 *et seq.*, where Apple first raised the standing issue. The Federal Circuit largely affirmed denial of those sealing requests, but has remanded for our reconsideration of third party confidentiality interests. *Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1364 (Fed. Cir. 2020). The Electronic Frontier Foundation again moves to intervene in opposition to Uniloc's sealing requests. This order follows full briefing and a hearing (held telephonically due to COVID-19).

## ANALYSIS

Federal courts are public tribunals, not private mediators. They belong to the people, not to corporate America. The public has legitimate interests in looking over our shoulders to see why and how we grant relief (or not) and specifically what record justified (or not) that relief. So our court of appeals has recognized a strong presumption of public access to our records. On a dispositive motion, sealing any part of a record requires, without "hypothesis or conjecture," a compelling factual basis which *outweighs the public interest in disclosure*. *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1096–97 (9th Cir. 2016); *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006).

In our present case, a *second* public interest also favors access. The United States Supreme Court "has long recognized that the grant of a patent is a matte[r] involving public rights." A patent is not a private agreement between private parties. Rather, as a creature of statute, *the national government grants* the patent in derogation of the usual free flow of goods and ideas. *See Oil States Energy Servs. v. Greene's Energy Grp.*, 584 U.S. ___, 138 S. Ct. 1365, 1373 (2018) (quotation marks omitted). Thus, the undersigned has recognized that:

> Because [a patentee's] rights flow directly from this government-conferred power to exclude, the public in turn has a strong interest in knowing the full extent of the terms and conditions involved in

> [the patentee's] exercise of its patent rights and in seeing the extent to which [the patentee's] exercise of the government grant affects commerce.
>
> The impact of a patent on commerce is an important consideration of public interest. One consideration is the issue of marking by licensees. Another is recognition of the validity (or not) of the inventions. Another is in setting a reasonable royalty. In the latter context, patent holders tend to demand in litigation a vastly bloated figure in "reasonably royalties" compared to what they have earned in actual licenses of the same or comparable patents. There is a public need to police this litigation gimmick via more public access. *We should never forget that every license has force and effect only because, in the first place, a patent constitutes a public grant of exclusive rights*.

(No. C 18-00360, Dkt. No. 187) (emphasis added).

We turn first to the Federal Circuit's task on remand, to reconsider the "sealing or redaction of the purportedly confidential information of third parties" and to "make particularized determinations as to whether and, if so, to what extent, the materials of each of these parties should be made public." *Uniloc*, 964 F.3d at 1364. Uniloc seeks to seal the details of its patent licensing agreements, taking the form of: (i) tables containing the names of Uniloc's licensees and the dates and dollar amounts of the deals; (ii) brief references to data from that table in an Apple brief; (iii) a licensing agreement between Uniloc and Microsoft; (iv) eight declarations from various licensees requesting the Court keep their license details under seal; and (v) a declaration summarizing similar requests from many licensees.

Uniloc argues that judges, including many in this district, routinely find patent licensing data sealable. Our court of appeals has found a videogame publisher's licensing agreements with a professional athletes' union sealable; and the Federal Circuit has found profit and cost data for patented and infringing goods sealable. But the crux of the problem is not just whether the information falls within categories of sealable information. It is, rather, whether the *particular bases* offered by our third parties outweigh the presumption of public access. If these bases exist here, they come not from Uniloc, but from the third parties. After all, the Federal Circuit affirmed the rejection of Uniloc's requests for sealing and remanded solely for this Court to consider third party interests. *See Uniloc*, 964 F.3d at 1364; *Chrysler*, 809 F.3d at 1096–97; *see, e.g.*, *Apple v. Samsung*, 727 F.3d 1214, 1225–26 (Fed. Cir. 2013); *In re Elect.*

3

*Arts*, 298 Fed. App'x 568 (9th Cir. 2008); *Parrish v. Nat'l Football League Players Ass'n*, No. C 07-0943 WHA, Dkt. No. 498 (N.D. Cal. Oct. 21, 2008) (EA's motion to seal).

Moreover, Uniloc's reliance on the numerous district court orders which have sealed similar information underscores the larger problem of indiscriminate oversealing in patent and commercial cases nationwide. This order readily acknowledges that this Court, among the many Uniloc cites, has at times fallen into the habit, as a concession to the shortness of life, of oversealing information that in truth should be made public. But the culprits seem plain. Our adversarial system collapses when, as often occurs in these suits, *both parties* seek to seal more information than they have any right to and so do not police each other's indiscretion. Perhaps no case better illustrates this collusive oversealing so much as the one upon which Uniloc continually relies, *Apple v. Samsung*. There, *both* Apple and Samsung bombarded the Honorable Lucy H. Koh with excessive and *unopposed* sealing motions, took full advantage of the judge's patience in permitting them to revise and narrow their motions, and then appealed the partial denial of their sealing motions to the Federal Circuit, where they again refused to oppose each other's motions, leaving that task to amici curiae. 727 F.3d 1218–20.

True to form, given the opportunity to oppose Uniloc's oversealing at oral argument here, Apple abandoned the Court in its enforcement of the local rules and circuit precedent, further confirmed that it would not oppose the sealing on appeal, and opted instead to grab its December 4 victory on the standing issue and head for the hills. This is why EFF must be permitted to intervene. Without EFF, the public's right of access will have no advocate. Our court of appeals has permitted similar permissive intervention by parties seeking record access. *See Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 473–74 (9th Cir. 1992). EFF's timely motion to intervene is thus granted.

Uniloc solicited the views of all one hundred nine licensees regarding the sealing of their patent license details. It reports that two agreed to disclosure, eight offered to disclose their identities but asked to keep the remaining details under seal, and twenty three asked to keep all information under seal. All of this is hearsay, and again, moreover, Uniloc's argument *on behalf* of third parties rings hollow. Uniloc's own interests appear sprinkled throughout its

4

argument and, unlike Electronic Arts, who appeared and argued its own confidentiality interests before both the district court and court of appeals, no third party has, despite notice, filed any request or statement on our docket in connection with the instant sealing motions. *Contra In re Elect. Arts*, 298 Fed. App'x 568; *see Parrish*, Dkt. No. 498. Given the Federal Circuit's public remand to more carefully consider their interests, the third parties' silence speaks volumes. We are left to balance the public interest against either stale declarations from nearly two years ago (for those eight who provided them) or Uniloc's hearsay.

That said, the theme among Uniloc's third party licensees who did previously request sealing is a concern that disclosure of their identities and license details will expose them to other non-practicing patent holders. It remains true that information tending to harass may support sealing. *Chrysler*, 809 F.3d at 1097. Nevertheless, the identities of the patent licensees and the dates and natures of their patent licenses should and will be disclosed here. Again, a patent is a *public* grant of rights. A patent owner is a tenant on a plot within the realm of public knowledge, and a licensee is her sub-tenant. The public has every right to account for all its tenants, all its sub-tenants, and (more broadly) anyone holding even a slice of the public grant.

It also remains true that image licensing or product financial information may be sealed where circumstances warrant. *See Apple*, 727 F.3d at 1225–26; *Elect. Arts*, 298 Fed. App'x 568. Again, however, patent licenses carry unique considerations. The public has an interest in inspecting the valuation of the patent rights as revealed by Uniloc's transactions, particularly given secrecy so often plays to the patentee's advantage in forcing bloated royalties. It may even be that disclosure of prior patent licenses better illuminates the parties' positions, offering up-front cost evaluations of potentially infringing conduct and driving license values to a more accurate representation of the technological value of the patent. In addition, the patent license values here may inform reasonable royalties in other courts.

Conclusive here, though, is the fact that the dates and dollar amounts involved in Uniloc's patent licenses "go to the heart of" the primary dispute, that of Uniloc's standing (or lack of) to sue. *Cf. Chrysler*, 809 F.3d at 1098. The dates and amounts of the licenses revealed Uniloc's failure to meet its time-based monetization goals which, in turn, resulted in Uniloc's default,

released the restriction on Fortress's broad license, and divested Uniloc of standing to sue. Uniloc argues that only the aggregate value of its patent licensing revenue over the relevant time period matters to the analysis of the December 4 order. This misses the point. The public owes little deference to this Court's statements of *fact* and has every right to inspect the bases for those statements. Review of the parties' and the Court's calculation of Uniloc's actual monetization requires public access to the underlying amounts and dates of Uniloc's patent licenses. This information will be unsealed in full.

Turning to Apple's most recent motion to dismiss, Uniloc first seeks to seal references to three specific patent licensees in the excerpts of a deposition transcript. As above, this information will be unsealed.

Uniloc next seeks to seal a three-page extract of an internal Fortress memorandum and brief references to it in Apple's motion. Uniloc's counsel describes the memorandum as Fortress's internal deliberations on whether to invest more in Uniloc's litigation campaign. Thus, counsel asserts, disclosure of the memorandum would broadcast Fortress's business model and criteria for investment to the world, placing it at a competitive disadvantage in negotiations with future investment prospects.

But, as EFF correctly notes, this sealing interest is *Fortress's*, not Uniloc's. Yet Fortress has not submitted a declaration in support of its sealing request. Instead, Uniloc filed the hearsay declaration here, merely reporting what Fortress's counsel apparently said (No. C 18-00358, Dkt. No. 173 at ¶¶ 3, 19–22). Rule 79-5 does not require much to seal. But it does require that "*the Designating Party* must file a declaration . . . establishing that all of the designated material is sealable." Civ. L.R. 79-5(e)(1) (emphasis added). Uniloc and Fortress are more than on notice of the requirements of our local rules regarding sealing. Their continued incapacity to follow or take seriously our local rules has already caused the bulk of their sealing headaches herein. *Uniloc*, 964 F.3d at 1361. Their noncompliance with our local rules has struck again. The investment memorandum and references to it in Apple's brief will be disclosed, and the table of licenses will be disclosed also for the reasons above.

6

**CONCLUSION**

EFF's motion to intervene is **GRANTED**. The Court thanks EFF for its most helpful briefing and willingness to vindicate the public's right of access.

Apple's administrative motion to seal its motion to dismiss (No. C 18-00358, Dkt. Nos. 164, 173) is **DENIED**. Uniloc's renewed motion to seal (No. 18-00360, Dkt. No. 222) is **DENIED**. Uniloc waived sealing of Apple's opposition to Uniloc's renewed motion for declaration of subject matter and joinder of Uniloc 2017 (No. C 18-00358, Dkt. Nos. 162, 172). This motion is **DENIED**.

As the Federal Circuit affirmed the denial of Uniloc's previous sealing requests, the motion to place documents in the public record (No. 18-00360, Dkt. No. 220) is **GRANTED**.

The contested denials herein shall be **STAYED** until 28 days after all appeals of this order are exhausted. The parties shall please advise the Court when this period has run and remind the Court to effect the unsealing.

**IT IS SO ORDERED.**

Dated: December 22, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE